

Leah Chavez
6333 Pacific Ave. #355
Stockton, CA 95207
*Pro Se*

# FILED

JUN 10 2024

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

LEAH CHAVEZ,

        Plaintiff,

vs.

EAST BAY DRAYAGE DRIVERS
SECURITY FUND PLAN; EAST BAY
DRAYAGE DRIVERS SECURITY FUND
PLAN BOARD OF TRUSTEES;
CORCORAN ADMINISTRATORS;
CHRIS CORCORAN, AS PLAN
ADMINISTRATOR, AND CHRIS
CORCORAN, INDIVIDUALLY; AND
LORIE E. BRADLEY,

        Defendants.

Case No. **C24-03487**

**COMPLAINT (ERISA)**

**AND**

**ORDER TO SHOW CAUSE RE:
TEMPORARY RESTRAINING
ORDER AND PRELIMINARY
INJUNCTION**

## INTRODUCTION

Plaintiff seeks immediate injunctive relief in the form of an Order to Show Cause

for a Temporary Restraining Order and Preliminary Injunction to prevent Defendant from

terminating Plaintiff's benefits, including critically needed health insurance pending

resolution of this matter.

//

//

COMPLAINT AND OSC RE: TRO AND PRELIMINARY INJUNCTION - 1

**JURISDICTION**

1.     Plaintiff brings this action for monetary and equitable relief pursuant to §§ 502(a)(1) and 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1) and 1132(a)(3). This Court has subject matter jurisdiction over Plaintiff's claims pursuant to ERISA §§ 502(e) and 502(f), 29 U.S.C. §§ 1132(e) and 1132(f), 28 U.S.C. § 1331, and Under 28 U.S.C. § 1367.

2.     This Court also has subject matter jurisdiction over Plaintiff's claims pursuant to the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. §§ 1166(a)(4) and 1162(3).

3.     Additionally, this Court has subject matter jurisdiction over Plaintiff's claims pursuant to the Patient Protection and Affordable Care Act ("ACA"), as incorporated into ERISA by 29 U.S.C. § 1185d, and implemented by 29 C.F.R. § 2590.715-2712.

4.     Moreover, this Court has subject matter jurisdiction over Plaintiff's claims under the Health Insurance Portability and Accountability Act ("HIPAA"), 29 U.S.C. § 1181 et seq., as incorporated into ERISA.

**VENUE**

5.     Venue lies in the Northern District of California pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Defendant East Bay Drayage Drivers Security Fund Plan ("the EBDDSF Plan") is administered in this District, the breaches alleged took place in this District, and Defendants may be found in this District.

## INTRADISTRICT ASSIGNMENT

6.      Pursuant to Civil Local Rule 3-2(c), this action should be assigned to the Oakland Division because a substantial part of the events or omissions which give rise to the claims occurred in Oakland.

## PARTIES

7.      At all relevant times, Plaintiff Leah Chavez has been a beneficiary of The East Bay Drayage Drivers Security Fund Plan 1980 for Active Employees ("EBDDSF Plan"), as defined by ERISA § 3(8), 29 U.S.C. § 1002(8). Ms. Chavez is the spouse of Rudolfo Chavez, a Plan participant.

8.      Defendant The East Bay Drayage Drivers Security Fund Plan 1980 for Active Employees ("EBDDSF Plan") is an employee welfare benefit plan as defined by the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. § 1002(1), sponsored by Teamsters Local 70. At all relevant times, the EBDDSF Plan provided benefits to certain employees of who were members of Teamsters Local 70, including Mr. Chavez.

9.      Defendant Board of Trustees of the EBDDSF Plan ("Board of Trustees") is the governing body responsible for overseeing the administration of the EBDDSF Plan. The Board of Trustees is a fiduciary of the EBDDSF Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that it exercises authority or control respecting management or disposition of the EBDDSF Plan's assets, exercises discretionary authority or discretionary control respecting management of the EBDDSF Plan, and/or

has discretionary authority or discretionary responsibility in the administration of the EBDDSF Plan. The Board of Trustees is composed of individuals appointed to manage and administer the EBDDSF Plan in the best interests of its participants and beneficiaries.

10.     Defendant Corcoran Administrators is a company responsible for administering the EBDDSF Plan. Corcoran Administrators is a fiduciary within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that it exercises authority or control respecting management or disposition of the EBDDSF Plan's assets, exercises discretionary authority or discretionary control respecting management of the EBDDSF Plan, and/or has discretionary authority or discretionary responsibility in the administration of the EBDDSF Plan. Corcoran Administrators is being sued for its role in failing to properly administer the EBDDSF Plan in accordance with ERISA requirements.

11.     Defendant Chris Corcoran is the plan administrator of the EBDDSF Plan. As the EBDDSF Plan administrator, Mr. Corcoran is a fiduciary within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that he exercises authority or control respecting management or disposition of the EBDDSF Plan's assets, exercises discretionary authority or discretionary control respecting management of the EBDDSF Plan, and/or has discretionary authority or discretionary responsibility in the administration of the EBDDSF Plan. Mr. Corcoran is being sued in both his capacity as plan administrator and his individual capacity for actions and omissions that resulted in the improper administration of the EBDDSF Plan and violations of ERISA requirements.

12.     Defendant Lorrie L. Bradley is an attorney who provided legal advice to the EBDDSF Plan, the Board of Trustees, Corcoran Administrators, and Chris Corcoran and is a fiduciary within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that she exercises authority or control respecting management or disposition of the EBDDSF Plan's assets, exercises discretionary authority or discretionary control respecting management of the EBDDSF Plan, and/or has discretionary authority or discretionary responsibility in the administration of the EBDDSF Plan. Ms. Bradley is sued for providing negligent legal advice and breach of fiduciary duty. Specifically, Ms. Bradley advised the EBDDSF Plan and Mr. Corcoran to ignore a valid court order setting aside the November 12, 2019 Judgment of Dissolution as void and to instead rely on the void document in finding that Ms. Chavez was divorced on November 12, 2019, leading to the wrongful termination of Ms. Chavez's benefits. By virtue of her role and the legal responsibilities imposed on her, Ms. Bradley is a fiduciary under ERISA § 3(21), 29 U.S.C. § 1002(21) Additionally, Ms. Bradley may be liable as a co-fiduciary under ERISA § 405, 29 U.S.C. § 1105, for knowingly participating in or enabling breaches of fiduciary duty by other fiduciaries of the EBDDSF Plan.

## FACTS

### Facts about the EBDDSF Plan

13.     The East Bay Drayage Drivers Security Fund Plan 1980 for Active Employees ("EBDDSF Plan"), is an employee welfare benefit plan as defined under Section 3(1) of the Employee Retirement Income Security Act of 1974 (ERISA), 29

U.S.C. § 1002(1). This plan is established and maintained by the East Bay Drayage

Drivers Security Fund to provide comprehensive health and welfare benefits, including

medical, dental, vision, life, accident, and disability insurance, to eligible employees and

their dependents. As such, the EBDDSF Plan is subject to the reporting, disclosure,

fiduciary, and enforcement provisions of ERISA.

14.     Page 3 of the EBDDSF Summary Plan Description ("SPD"), lists "Eligible

dependents who can participate in the Plan include: Your legal spouse". (See attached

**Exhibit A**).

**Facts about the Plaintiff's Marital Status**

15.     Mr. and Ms. Chavez were married on January 5, 2001. At all relevant times

they have remained married.

16.     On November 12, 2019, the San Joaquin County Superior Court issued a

Judgment of Dissolution in error, while the order bifurcating the parties' marital status

was on appeal and they lacked jurisdiction.

17.     On November 21, 2019, the court immediately set aside the Judgment and

Notice of Entry of Judgment as void due to the pending appeal. The court did not have

jurisdiction to issue the Judgment, and it was issued in error by the clerk.

18.     On August 12, 2022, after the appeal was resolved, the case was

immediately removed to federal court under federal question jurisdiction to address the

unconstitutional bifurcation of marital status.  As a result, the state court lost jurisdiction

over the case.

19.     Under California law, a divorce is final once a final judgment of dissolution (i.e., divorce decree) is issued. Until such time, the parties remain "legally married" (Cal. Fam. Code § 2340) There is no judgment of dissolution of the parties' marital status, as can be readily seen in the public records.  Ms. Chavez remains the legal spouse of Mr. Chavez.

**Facts about the Termination of Plaintiff's Benefits**

20.     On September 28, 2023, Corcoran Administrators suddenly rescinded Ms. Chavez's health insurance benefits retroactively back to November 12, 2019, without notifying her first. Ms. Chavez discovered the termination around October 4, 2023, the same day she was informed that she required testing and possibly treatment for life-threatening cancer. Ms. Chavez is still experiencing severe symptoms and urgently needs health coverage to address her condition.

21.     Ms. Chavez was initially not provided any written information about the termination, she found out when the hospital informed her she no longer had health insurance.

22.     On October 4, 2023, she immediately and urgently emailed her husband, Rudolfo Chavez, to find out why her benefits were canceled. She was very upset and believed that Mr. Chavez may have terminated her benefits in retaliation for a bench warrant issued against him by the court for his failure to appear at a contempt matter they were involved in. In the email, she asked Mr. Chavez for a response, clarification on what was going on, any COBRA notices he may have received, and she suggested the

possibility that it was all a mistake. When she received no response, she followed up on October 9, 2023, with another email to Mr. Chavez and waited for a response. After not receiving a response by October 27, 2023, she contacted Corcoran Administrators.

23.     Corcoran Administrators employee Maureen Marshall informed her of the September 28, 2023 termination and stated that on that date, Mr. Chavez provided Corcoran Administrators with a Judgment of Dissolution dated November 12, 2019, attached as **Exhibit B**, and requested that Ms. Chavez be terminated from benefits.

24.     Ms. Chavez informed Ms. Marshall that the document Mr. Chavez provided was void, and had been set aside on the court's own motion by declaration and order of court filed November 21, 2019, attached as **Exhibit C**, because the document had been issued in error.

25.     Ms. Chavez told Ms. Marshall over the phone that she and Mr. Chavez were still legally married, and she emailed Ms. Marshall a copy of the signed court order dated November 21, 2019, setting aside the judgment of dissolution issued in error on November 12, 2019. Ms. Chavez requested an "urgent" review due to her serious health problems. She explained that she was still legally married to Mr. Chavez and requested that her benefits be reinstated. She further explained that under the East Bay Drayage Drivers Security Fund, Summary Plan Description, Plan 1980 for Active Employees, dated January 1, 2012, page 3, it states that a "legal spouse" is an eligible dependent. As such, Ms. Chavez was still an eligible dependent under the EBDDSF Plan and should not have had her benefits terminated.

26.     Ms. Marshall maintained that Ms. Chavez was divorced on November 12, 2019, and as a result that her benefits were terminated.

27.     Ms. Chavez never received notice of the termination, nor did she receive any COBRA paperwork, nor any notices or disclosures on how to file an appeal of her benefits termination.  She received no paperwork whatsoever and no verbal assistance when she called.

28.     Over the next few days Ms. Chavez desperately tried calling Ms. Marshall for more information on her request for review and Ms. Chavez requested the contact information for the legal department.

29.     Ms. Marshall would not provide any additional information or the legal department information to Ms. Chavez. So on October 31, 2023 Ms. Chavez sent Ms. Marshall an email requesting that she forward her email to the legal department. Ms. Marshall replied on November 1, 2023 and stated that although she forwarded the email, the decision had been reviewed by the "Eligibility Requirement team" and was final.

30.     Ms. Chavez called other Corcoran Administrator employees and members of the Board of Trustees to get someone to assist her with how to handle her termination and what steps she could take to get the matter officially reviewed.  She initially got the run around and no one provided a straight answer.

31.     On November 1, 2023, after calling and speaking on the phone to Claudia Herrera, another Corcoran Administrators employee, she informed Ms. Chavez that Maureen Marshall's statement that the benefits cancellation was final did not represent

COMPLAINT AND OSC RE: TRO AND PRELIMINARY INJUNCTION - 9

the final decision on the matter and that she would see to it that the documents and description of the issue were forwarded to the legal department for review.

32.     On or around November 13, 2023, after not hearing from anyone for a few days, Ms. Chavez reached out to Chris Corcoran, the EBDDSF Plan Administrator, by phone and left a message.  She asked to know the status of her request to reinstate her benefits. She later received an email from Mr. Corcoran on November 16, 2023, stating that "[t]he decision by legal counsel supports our assertion that you are no longer married to Mr. Rudolfo Chavez." and informed her she could file a written appeal.

33.     On November 16, 2023 Ms. Chavez then reached out to Marty Frates, EBDDSF Plan Trustee, hoping that he would be able to assist her and could review her case and see the termination was an error and that she was still Mr. Chavez legal spouse and help her get her benefits reinstated quickly due to her urgent health concern.   He requested she send him an email with the information, which she did and captioned the email for "Urgent Review…"

**Facts about the First Internal Benefits Appeal**

34.     On November 17, 2023 Ms. Chavez received correspondence from Corcoran Administrator employee Grace McGroty stating they were using her email from October 27, 2023 as a written appeal from Ms. Chavez and forwarded it to the board for review.  Ms. McGroty stated that Ms. Chavez's appeal would be decided at the next Board of Trustees meeting, on January 12, 2024 and thereafter she would be provided with a decision. This timeframe was in violation of ERISA urgent care timeline which

states that an "urgent care claim" appeal must be decided within 72 hours. (29 CFR § 2560.503-1(f)(2)(i).)

35.     In the meantime, Ms. Chavez, unsure where to turn or what to do, contacted the California Department of Managed Health Care ("DMHC") about her abrupt termination of benefits and her critical health care problems. Based on her urgent health care needs and the fact that benefits were retroactively and totally terminated, the DMHC instructed her to file an Independent Medical Review ("IMR") for "expedited" review with the DMHC. On November 30, 2023, Ms. Chavez filed her IMR. The DMHC conducted an investigation, spoke with Kaiser Hospital, spoke with Ms. Chavez about the circumstances of her case and her dire health situation, and on January 19, 2024, sent a final determination letter. The letter stated, "*Kaiser advised that, at this time, it is unable to reinstate your employer group health plan coverage without receiving the request to reinstate from the third-party administrator, Corcoran Administrators.*"

36.     On January 29, 2024, Ms. McGroty sent Ms. Chavez correspondence from Chris Corcoran stating her first internal appeal was denied, specifically that "[b]*ased on the documents that were provided, the Board of Trustees is upholding the dissolution of marriage on November 12, 2019. Coverage as a dependent was terminated on the same day*" (see attached **Exhibit D**). The letter stated that Ms. Chavez could file a second-level appeal within 45 days of the letter.

37.     Now not only did Corcoran Administrators rely on the void Judgment of Dissolution dated November 12, 2019  to wrongfully terminate her benefits, but now the

letter was stating that, that they were improperly rescinding the termination back to November 12, 2019, in violation of the Affordable Care Act prohibition on health care rescissions under 42 U.S.C. § 300gg-12. The code section states that the only times rescissions are permitted are in cases of fraud or intentional misrepresentation, and even then prior notice is required before coverage is cancelled.

38.     Ms. Chavez immediately emailed Chris Corcoran back that same day (January 29, 2024) to inquire why the letter stated her benefits were terminated on November 12, 2019, when she was previously told they were being terminated July 1, 2023. Mr. Corcoran stated he was unsure regarding the July 1, 2023 date and that coverage was terminated on the date of her divorce and thus retroactively terminated back to November 12, 2019.

39.     Ms. Chavez was extremely panicked and even more stressed upon being told that not only had her coverage been improperly cancelled, but also that her insurance was retroactively cancelled to November 12, 2019. This had the potential to cost her hundreds of thousands of dollars in uninsured medical expenses from years past, which she had not anticipated.

40.     On February 1, 2024 Grace McGroty emailed Ms. Chavez insisting that *"The date of the divorce determines your termination of eligibility. Our records show that the date of dissolution was November 12, 2019, which is also the date of termination on our system. On that day, you were no longer considered a legal spouse or dependent under the Plan."* Ms. Chavez and Chris Corcoran also corresponded about the

termination date, with Mr. Corcoran maintaining the date of termination of coverage was November 12, 2019.

41.     On February 6, 2024 Ms. Chavez requested information from Chris Corcoran as was offered in the first appeal denial letter dated January 29, 2024, to aid her in filing her second level urgent internal appeal.

42.     On March 5, 2024 Chris Corcoran emailed Ms. Chavez and provided some of the information she requested for her second level urgent appeal.

43.     Included with the March 5, 2024 information provided by Chris Corcoran was a cover letter dated March 4, 2024 which listed the information relied on for the denial of the first appeal that "*The Plan Document/Summary Plan Description ("SPD") for Plan 1980 included in this web link contains the "internal rule, guideline or protocol relied upon" to decide your claim. Specifically, that rule is contained at pages 3 and 8 of the SPD: "Dependent Eligibility: Eligible dependents who can participate in the Plan include: Your legal spouse*" (see attached as **Exhibit E**).

44.     Included in the information sent on March 5, 2024, was a COBRA notice, dated October 3, 2023, that was never sent to Ms. Chavez and listed a termination date of November 12, 2019 (see attached as **Exhibit F**). Also included in the information was a second COBRA letter, dated March 5, 2024, with a termination date of July 1, 2023 (see attached as **Exhibit G**). Chris Corcoran referenced the COBRA letters in his cover letter, stating: "*...because Fund [the EBDDSF Plan] was advised of your 2019 divorce in 2023 and this delay is not attributable to you, the COBRA notice retroactive to 2019 has been*

*withdrawn and your COBRA eligibility is effective July 1, 2023. You have until May 4,*

*2024 to elect COBRA. Included with this letter is the revised COBRA notice*".

45.     Ms. Chavez was not provided COBRA notice until *after* she requested

information relevant to her appeal from Chris Corcoran and Corcoran Administrators.

Ms. Chavez then received for the first time the COBRA notice on March 5, 2024, with a

retroactive termination date of July 1, 2023, *still* creating a huge, and expensive, coverage

gap, which according to the cost of coverage in the letter would cost Ms. Chavez

approximately $20,580.80 upfront to obtain COBRA coverage or a she would suffer a

huge debt in unpaid medical bills due to the rescission.

46.     Ms. Chavez absolutely cannot afford the COBRA coverage or to pay out of

pocket for coverage at this time. She remains a stay at home mother of her and Mr.

Chavez minor children, as she was during the marriage, and is not employed outside of

the home.

**<u>Facts about the Second and Final Internal Appeal</u>**

47.     On March 13, 2024 Ms. Chavez submitted her second level "*urgent*" appeal

to Chris Corcoran and Corcoran Administrators.  Chris Corcoran replied to Ms. Chavez's

email that same day and stated "*The Fund will timely respond to your appeal; however,*

*an eligibility appeal is not an "urgent care appeal" as provided in the law or the Plan.*"

48.     Ms. Chavez replied to Chris Corcoran's email stating that: "*it is a "urgent*

*care appeal" as noted in the emails I sent to both you and Marty Frates. And as stated to*

*Maureen Marshall when I called, I was devastated when I was told my health insurance*

*was terminated, on the same day I was informed I needed testing and possibly treatment for cancer. I continue to have serious symptoms, and need immediate health coverage to address this extremely important health issue. So yes, my request is an "urgent care appeal". I respectfully insist on a decision within 72 hours from the submission of my second appeal. I trust you understand the gravity of my health concerns and that you will respond with the urgency they warrant."* Mr. Corcoran never responded to that email.

49.     On April 12, 2024, after not receiving a decision within the legally allotted timeframe of 72 hours (<u>29 CFR § 2560.503-1</u>.) Ms. Chavez again emailed Mr. Corcoran for a decision to her "urgent" appeal.

50.     On April 16, 2024 Mr. Corcoran emailed Ms. Chavez providing a final denial letter, which also stated *"Your appeal is now final, and the Plan has no further levels of appeal. You have a right to bring a civil action under Section 502(a) of ERISA against the Plan, which must be brought within one year of the date of this notice"* (see attached **Exhibit H**).

**Facts about fund attorney Lorrie E. Bradley's involvement in the decision to terminate Plaintiff's benefits**

51.     On November 16, 2023 Chris Corcoran sent an email to Ms. Chavez stating: *"decision by legal counsel supports our assertion that you are no longer married to Mr. Rudolfo Chavez."* From the outset of the issue, Ms. Lorrie E. Bradley, of *Beeson, Tayer & Bodine* law firm, repeatedly and directly instructed the interpretation of the EBDDSF Plan document as it relates to Ms. Chavez's eligibility; finding that the void

November 12, 2019 Judgment of Dissolution was valid grounds to terminate Ms. Chavez coverage under the EBDDSF Plan.

52.     On January 12, 2024 The Board of trustees was provided an Appeal Summary, dated October 27, 2023 (see attached **Exhibit I**), wherein it is states that Ms. Bradley does not believe the Declaration and Order to Set Aside document sent by the Appellant changed anything about the dissolution of the marriage.

53.     On January 29, 2024 Ms. Chavez received the first internal appeal denial letter from Chris Corcoran, based on the Board of Trustees January 12, 2024 meeting where the document labeled "Appeal Summary" was discussed, with Lorrie E. Bradley present at the meeting.  The appeal denial letter stated *"Based on the documents that were provided, the Board of Trustees is upholding the dissolution of marriage on November 12, 2019. Coverage as a dependent was terminated on the same day."*

54.     On March 5, 2024 in a letter from Chris Corcoran (dated March 4, 2024) responding to Ms. Chavez request for information related to her appeal, Mr. Corcoran stated Ms. Chavez could contact Ms. Bradley if she had any questions (see attached **Exhibit E**).

55.     On May 29, 2024 Ms. Chavez contacted Laurie Bradley and cc'd Chris Corcoran.  She again explained that the November 12, 2029 Judgment of Dissolution date being relied on to terminate her benefits was incorrect, and stated that Ms. Bradley's legal advice was *"not legally proper and constitutes direct defiance of the court order."*  Ms. Chavez offered to provide any documents or clarification required to amicably resolve

the matter before the instant lawsuit was filed. Due to the urgent nature of the matter Ms. Chavez requested a response by 5:00 PM.

56.     On May 29, 2024, Chris Corcoran did not respond to Ms. Chavez's email, but he forwarded heavily redacted Board of Trustee minutes, which Ms. Chavez had requested four months prior, on February 6, 2024. As seen in the Board of Director Minutes from the January 12, 2024, Board of Trustees meeting (attached as **Exhibit J**), Ms. Bradley was in attendance and received and reviewed the valid November 21, 2019, Order setting aside the November 12, 2019, void Judgment of Dissolution. Despite this, she persisted in advising the EBDDSF Plan that *"the Order does not provide a basis for reinstatement or override the eligibility terms of the Plan"*, unequivocally determining that Ms. Chavez is divorced (which she is not).

57.     Two days after the deadline for her request had lapsed, at 6:13 PM on Friday evening, May 31, 2024, Ms. Bradley responded, stating *"Thank you for your email detailing your concerns regarding the denial of your appeal. The Fund maintains that all of the documentation provided in your appeal and available in the public court records indicates that you are divorced and therefore ineligible for coverage."* She also stated that if there were any additional documents or evidence Ms. Chavez would like to provide to send it to her attention.

58.     At 9:01 AM on Tuesday, June 4, 2024, Ms. Chavez responded to Ms. Bradley's email (cc'ing Chris Corcoran) stating her genuine confusion as to why Ms. Bradley was advising her client to outright ignore a valid order of the court. Ms. Chavez

reiterated that the November 12, 2019 Judgment of Dissolution was void by order of the court dated November 21, 2019 because it lacked jurisdiction when the Judgment was issued in error, and cited the procedural history of the parties' marriage/divorce status and removal to federal court. Ms. Chavez reiterated that there is no valid judgment of dissolution in existence. She directed counsel to the San Joaquin County public court file which contained all the information discussed. Ms. Chavez explained that due to the fact that her reply email contained only legal clarification of the parties' marital status and due to the critical nature of health concerns and need to file the lawsuit immediately if no resolution was forthcoming, she asked that Ms. Bradley provide a response that her email was received and would be reviewed, by 12 noon (June 4, 2024). A receipt stating her email had been "Read" by the recipient came through at 9:09 AM, but no written response to Ms. Chavez email was provided.

59.    Ms. Chavez, having seen the name of attorney Geoff Piller of *Beeson, Tayer & Bodine* (the same law firm as Lorrie E. Bradley) on the EBDDSF Board of Trustees minutes as in attendance when her appeal was denied, emailed him around 1:01 PM on June 4, 2024. She provided Mr. Piller with the same information she had given to Ms. Bradley and asked if he could explain why her benefits were terminated and if she was missing something. She stated that she would like to avoid an unnecessary lawsuit. Ms. Chavez received a read receipt at 2:36 PM but no written reply.

60.    Corcoran Administrators; Chris Corcoran; the EBDDSF Plan; and the

Board of Trustees all relied on Lorrie E. Bradley's flawed negligent legal advice in

making the decision to terminate Ms. Chavez's benefits.

## FIRST CLAIM FOR RELIEF

### [Claim for Reinstatement of Benefits and Damages Pursuant to ERISA § 510, 29 U.S.C. § 1140, against all Defendants]

61.    Plaintiff incorporates Paragraphs 1 through 60 as though fully set forth here.

62.    Plaintiff has exhausted her administrative remedies.

63.    Interference with Protected Rights (29 U.S.C. § 1140): This section makes

it unlawful for "any person" to interfere with the protected rights of a plan participant.

Plaintiff was a "plan participant," and all Defendants interfered with her federally

protected rights under the EBDDSF Plan when her health coverage was terminated

without notice. This termination was maintained despite a court order stating that the

document relied upon for termination was void. Plaintiff was harmed by the termination

of her benefits while she was still eligible under the EBDDSF Plan as a "legal spouse.

## SECOND CLAIM FOR RELIEF

### [Claim for Reinstatement of Benefits and Damages Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), against all Defendants]

64.    Plaintiff incorporates Paragraphs 1 through 60 as though fully set forth here.

65.    Plaintiff has exhausted her administrative remedies.

66.     ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to her under the terms of a plan, to enforce her rights under the terms of a plan, and/or to clarify her rights to future benefits under the terms of a plan.

67.     ERISA requires the EBDDSF Plan, a health and welfare plan, to provide medical insurance and other benefits to qualified beneficiaries, including the "legal spouse".

68.     Ms. Chavez is the "legal spouse" of Rudolfo Chavez, and as such is entitled to benefits under the EBDDSF Plan, as stated in the SPD on page 3.

69.     By denying Ms. Chavez benefit coverage under the EBDDSF Plan, and by related acts and omissions, including but not limited to refusing to comply with a valid court order (dated November 21, 2019) setting aside the Dissolution Judgment dated November 12, 2019, Defendants have violated, and continue to violate, the terms of the EBDDSF Plan, governing law regarding ERISA's mandatory spousal benefits, and Ms. Chavez's rights under the EBDDSF Plan and the governing law.

## THIRD CLAIM FOR RELIEF

**[Claim for Reinstatement of Benefits and Damages Pursuant to ERISA § 104(b), 29 U.S.C. § 1024(b), against all Defendants]**

70.     Plaintiff incorporates Paragraphs 1 through 60 as though fully set forth here.

71.     Plaintiff has exhausted her administrative remedies.

72.     Reporting and Disclosure (29 U.S.C. § 1024(b)): Participants must receive documents that explain their rights and benefits under the EBDDSF Plan, including the appeals process. Failure to notify a participant of coverage termination or not providing appeal procedures information violates this provision.

73.     Ms. Chavez was not provided disclosures by the EBDDSF Plan Administrator when her benefits were terminated, nor has she been provided with an updated Summary Plan Description (SPD), the last update of the EBDDSF Plan was over 10 years ago, on January 1, 2012, in violation of this provision.

74.     By denying Ms. Chavez benefit coverage under the EBDDSF Plan, and by related acts and omissions, including but not limited to failing to provide disclosure information that describes the appeal process to Ms. Chavez, Defendants have violated, and continue to violate, the terms of the EBDDSF Plan, governing law regarding ERISA's mandatory spousal benefits, and Ms. Chavez's rights under the EBDDSF Plan and the governing law. As a result, Ms. Chavez has suffered significant harm, including but not limited to loss of medical coverage, increased financial burden, and stress related to managing her health care needs without proper support.

**FOURTH CLAIM FOR RELIEF**

**[Claim for Breach of Fiduciary Duty, Reinstatement of Benefits and Damages Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(1)(B), against all Defendants]**

75.     Plaintiff incorporates Paragraphs 1 through 60 as though fully set forth here.

76.     Plaintiff has exhausted her administrative remedies.

COMPLAINT AND OSC RE: TRO AND PRELIMINARY INJUNCTION - 21

77.    ERISA § 404(a), 29 U.S.C. § 1004(a), requires that a fiduciary discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and fiduciaries and defraying reasonable expenses of administering the EBDDSF Plan, and in accordance with the documents and instruments governing the EBDDSF Plan insofar as such documents and instruments are consistent with other provisions of ERISA.

78.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a beneficiary of a plan to file suit to "enjoin any act or practice" that violates Title I of ERISA or the terms of a plan, and/or to obtain "other appropriate relief" to redress such violations. ERISA § 205(a)(2), 29 U.S.C. § 1055(a)(2), is part of Title I of ERISA.

79.    By engaging in the acts and omissions described above, including but not limited to interpreting the EBDDSF Plan in a manner contrary to the EBDDSF Plan itself and applicable federal law, by refusing to comply with a valid court order (dated 11-21-2019) setting aside the Dissolution Judgment dated November 12, 2019, Defendants have violated, and continue to violate, the terms of the EBDDSF Plan, governing law regarding ERISA's mandatory spousal benefits, and Ms. Chavez's rights under the EBDDSF Plan and the governing law, and Defendants have breached their fiduciary duty to Ms. Chavez and have violated Title I of ERISA.

80.    As a result of the breaches of fiduciary duty and violations of Title I of ERISA by Defendant EBDDSF Plan, the Board of Trustees, Corcoran Administrators,

Chris Corcoran, and Lorrie E. Bradley, Plaintiff has suffered harm, including the termination of benefits and adverse health consequences.

## FIFTH CLAIM FOR RELIEF

**[Claim for Breach of Co-Fiduciary Duty, Reinstatement of Benefits and Damages Pursuant to ERISA § 405, 29 U.S.C. § 1105, against Defendant Lorrie E. Bradley]**

81.    Plaintiff incorporates Paragraphs 1 through 60 as though fully set forth here.

82.    Plaintiff has exhausted her administrative remedies.

83.    A co-fiduciary can be held liable for breaches of fiduciary duty by other fiduciaries if the co-fiduciary knowingly participates in, enables, or fails to take reasonable steps to remedy the breach. Ms. Bradley, as a licensed attorney, has a professional responsibility to her clients to act with due care and competence. As the EBDDSF Plan attorney, Ms. Bradley has a duty of care and competence to act in the best interests of the EBDDSF Plan participants and beneficiaries. This includes adhering to court orders and ensuring the proper administration of the EBDDSF Plan in accordance with legal and fiduciary standards.

84.    Ms. Bradley should be held liable as a co-fiduciary under ERISA § 405, 29 U.S.C. § 1105, for knowingly participating in or enabling breaches of fiduciary duty by other fiduciaries of the EBDDSF Plan. This caused injury to Ms. Chavez when her benefits were terminated due to the EBDDSF Plan, the EBDDSF Plan Board of Trustees, Corcoran Administrators, and Chris Corcoran's reliance on Ms. Bradley's legal advice to ignore a valid court order setting aside a dissolution judgment. Instead, Ms. Bradley

advised all other Defendants to rely on the void judgment and improperly terminate Ms.

Chavez's benefits in violation of ERISA and the EBDDSF Plan documents.

85.     As a result, Ms. Chavez suffered harm, including the termination of her

benefits and adverse health consequences.

## SIXTH CLAIM FOR RELIEF

**[Claim for Failure to Provide Plan Information, Reinstatement of Benefits and**

**Damages Pursuant to ERISA § 502(c), 29 U.S.C. § 1132(c), against all Defendants]**

86.     Plaintiff incorporates Paragraphs 1 through 60 as though fully set forth here.

87.     Plaintiff has exhausted her administrative remedies.

88.     Under 29 U.S.C. § 1132(c), a Plan Administrator who fails or refuses to

comply with a request for any information which such administrator is required by

ERISA to furnish to a participant or beneficiary (unless such failure or refusal results

from matters reasonably beyond the control of the administrator) may be personally liable

to such participant or beneficiary.

89.     On or around October 27, 2023 Ms. Chavez requested information on her

benefit termination, including anything required to be provided by law. She was never

given the legally required COBRA continuation covered notice at the outset.  She was not

given the notice until almost 5 months later on March 5, 2024, and she was only given

the COBRA notice after she appealed the benefit termination after her benefits were

terminated without any notice to her.

90.     Once she was provided the COBRA notice on March 5, 2024 it was retroactive to July 1, 2023, injuring her by limiting months she should have had COBRA coverage available for use had she the termination been proper.  Without knowing she had COBRA coverage available to her there was no way she would know she could use it. Thus she would not have seen a doctor, and did not see a doctor, because she was not given notice that the coverage was available until almost 8 months after it became available.

91.     Additionally, by not presenting her with the COBRA notice which also contained other health care coverage information like Covered California, she missed her "special enrollment period", which was triggered by the so-called qualifying event of dissolution of marriage.

92.     By the time Ms. Chavez was given the COBRA notice, her special enrollment period was closed, which was listed in the COBRA notice as open for 30 days from July 1, 2023, for her to opt to elect coverage through the Marketplace.

93.     Ms. Chavez was damaged and continues to be damaged by Defendants failure to provide COBRA and other plan documents detailing health coverage options and the appeal process at the time of termination of benefits, her COBRA coverage ends on 7-1-2026, which cuts her time short by almost 8 months (since she was notified March 5, 2024).

//

//

## SEVENTH CLAIM FOR RELIEF

**[Claim for Reinstatement of Benefits and Damages Pursuant to ERISA 29 CFR**

**2560.503-1, against all Defendants]**

94.    Plaintiff incorporates Paragraphs 1 through 60 as though fully set forth here.

95.    Plaintiff has exhausted her administrative remedies.

96.    Benefit Claims Procedure (29 CFR 2560.503-1): Requires that employee benefit plans establish and maintain a procedure for handling benefit claims and appeals, including a specific timeframe for "urgent care claims". Not providing notice of or following these procedures is a direct violation.

97.    Ms. Chavez was not provided notice by the EBDDSF Plan Administrator when her health care was terminated in violation of ERISA urgent care appeals, while she was embarking on testing and possible treatment for a life threatening illness and required information on "urgent care claims", as she repeatedly told Corcoran Administrators beginning October 27, 2023 when she first contacted them in regards to her abrupt benefits termination, that the matter was a urgent and detrimental to her health.

98.    It wasn't until March 13, 2024 when she filed her second urgent appeal, when she was told by Chris Corcoran that her appeal would not be treated as an urgent appeal, in spite of the fact that she explained she possibly had life threatening cancer and suffered serious symptoms and needed a resolution to the termination of her insurance within the statutory timeframe of three days.

99.     Corcoran Administrators refused to give her an expedited decision, and instead continued to slowly respond and provided her with a decision to her March 13, 2024 appeal submission on April 16, 2024, instead of three days as mandated under ERISA.

100.    Ms. Chavez's health has continued to be in peril and she desperately needs health insurance to attend to her health care needs.

## EIGHTH CLAIM FOR RELIEF

### [Claim for Reinstatement of Benefits Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a0(3), against all Defendants]

101.    Plaintiff incorporates Paragraphs 1 through 60 as though fully set forth here.

102.    Plaintiff has exhausted her administrative remedies.

103.    The Plaintiff asserts a claim under § 502(a)(3) of the Employee Retirement Income Security Act (ERISA), codified at 29 U.S.C. § 1132(a)(3), seeking equitable relief due to the EBDDSF Plan Administrator's improper termination of benefits.

104.    Specifically, the EBDDSF Plan Administrator terminated the Plaintiff's benefits based on a judgment of dissolution that was subsequently declared void by a court order. Despite being provided with the court order setting aside the void judgment, the EBDDSF Plan Administrator failed to reinstate the benefits, thereby violating ERISA and the terms of the EBDDSF Plan. The Plaintiff, Ms. Chavez, seeks reinstatement of benefits as equitable relief to redress this violation and enforce her rights under the EBDDSF Plan.

## NINTH CLAIM FOR RELIEF

**[Claim for Reinstatement of Benefits and Damages Pursuant to COBRA § 606(a)(4), 29 U.S.C. § 1166(a)(4), against all Defendants]**

105.    Plaintiff incorporates Paragraphs 1 through 60 as though fully set forth here.

106.    Plaintiff has exhausted her administrative remedies.

107.    General Notice Requirements (29 U.S.C. § 1166(a)): This section requires plans to provide the spouse of a covered employee with a written notice of their COBRA rights. Failure to provide a COBRA notice upon the qualifying event (e.g., dissolution of marriage) violates this requirement. Ms. Chavez was not provided COBRA notice by Defendants, the EBDDSF Plan, Corcoran or Corcoran Administrators when her health care benefits were terminated. Even when provided the COBRA notice on March 5, 2024 it contained a retroactive termination date of July 1, 2023, creating a huge, and expensive, coverage gap, which according to the cost of coverage in the letter would cost Ms. Chavez approximately $20,580.80 upfront to obtain COBRA coverage or a she would suffer a huge debt in unpaid medical bills due to the rescission, something she could not afford.

## TENTH CLAIM FOR RELIEF

**[Claim for Reinstatement of Benefits and Damages Pursuant to COBRA § 602(3), 29 U.S.C. § 1162(3), against all Defendants]**

108.    Plaintiff incorporates Paragraphs 1 through 60 as though fully set forth here.

109.    Plaintiff has exhausted her administrative remedies.

110. Beneficiaries can file a lawsuit if employers do not provide accurate and timely information about COBRA premiums, including any changes in cost.

111. The monthly COBRA premium cost listed in the COBRA notice sent to Ms. Chavez on March 5, 2024, was $2,058.08 for Core plus benefits. When she received her paperwork after electing COBRA coverage under protest on May 14, 2024, the Core plus benefits were $1,623.09, a $434.99 monthly difference. The vast price difference is shocking and very troubling, considering that Ms. Chavez would not have known the difference existed and would have opted not to elect coverage, but for her desire to know the true final cost total. Ms. Chavez or any other average person would have opted not to elect COBRA coverage given such a high price, only to find out later that it was not as much as the notice stated. The high price would deter people from electing COBRA Continuation coverage insurance in the first place, and the misinformation is another example of the EBDDSF Plan, the Board of Trustees, Corcoran Administrators, and Chris Corcoran violating ERISA and COBRA.

112. As a result of this misinformation, Ms. Chavez suffered harm, including financial hardship due to the unexpected cost, stress from trying to secure her healthcare coverage, and potential loss of medical coverage from being unaware of the correct premium amount.

//

//

//

COMPLAINT AND OSC RE: TRO AND PRELIMINARY INJUNCTION - 29

## ELEVENTH CLAIM FOR RELIEF

**[Claim for Reinstatement of Benefits and Damages Pursuant to 42 U.S.C. § 300gg-12 (Patient Protection and Affordable Care Act, ACA), as incorporated into ERISA by 29 U.S.C. § 1185d, and implemented by 29 C.F.R. § 2590.715-2712, against all Defendants]**

113.    Plaintiff incorporates Paragraphs 1 through 60 as though fully set forth here.

114.    Plaintiff has exhausted her administrative remedies.

115.    Prohibition on Rescissions (29 C.F.R. § 2590.715-2712; as incorporated by ACA): Plans and issuers are prohibited from rescinding coverage unless in cases of fraud or intentional misrepresentation of material fact by the plan participant. Furthermore, this provision mandates at least 30 days' notice before rescission of coverage in cases of fraud or intentional misrepresentation, allowing the individual time to challenge the action. The Defendants, wrongfully rescinded Plaintiff's health insurance coverage without evidence of fraud or intentional misrepresentation of material fact, in violation of 42 U.S.C. § 300gg-12 and 29 C.F.R. § 2590.715-2712.

116.    Ms. Chavez did not engage in fraud or intentional misrepresentation, as Corcoran Administrators acknowledges, but her insurance was initially rescinded dating back over three years to 2019, before being revised on March 5, 2024 to rescind back to July 1, 2023 in the written COBRA notice provided to Ms. Chavez on March 5, 2024.

117.    As a result of this wrongful rescission, Ms. Chavez suffered significant harm, including loss of medical coverage, financial hardship from unpaid medical bills, and stress related to managing her health care needs without insurance.

## TWELFTH CLAIM FOR RELIEF

**[Claim for Reinstatement of Benefits and Damages Pursuant to Under the enhanced framework of the ACA, alongside HIPAA's foundational provisions in ERISA, 29 U.S.C. § 1181 et seq., against all Defendants]**

118.    Plaintiff incorporates Paragraphs 1 through 60 as though fully set forth here.

119.    Plaintiff has exhausted her administrative remedies.

120.    Reporting and Disclosure Requirements (Under the enhanced framework of the ACA, alongside HIPAA's foundational provisions in ERISA, 29 U.S.C. § 1181 et seq.): Vital aspects emphasized in both HIPAA and the ACA aim at preventing coverage gaps and uninterrupted access to health care services.

121.    Compliance with these critical standards is essential to protect federal rights and enable individuals to make informed decisions about health coverage, particularly during significant life events. The sudden termination of Ms. Chavez's health coverage, coupled with the prohibited rescission back to July 1, 2023, deprived her of the opportunity to exercise her rights to continuous, gap-free health coverage in violation of ACA, HIPPA, and ERISA.

//

//

COMPLAINT AND OSC RE: TRO AND PRELIMINARY INJUNCTION - 31

122.   As a result of these violations, Ms. Chavez suffered significant harm, including loss of medical coverage, financial hardship from unpaid medical bills, and stress related to managing her health care needs without insurance.

## THIRTEENTH CLAIM FOR RELIEF

**[Claim for Professional Negligence (State Law), against attorney Lorrie E. Bradley]**

123.   Plaintiff incorporates Paragraphs 1 through 60 as though fully set forth here.

124.   Plaintiff has exhausted her administrative remedies.

125.   This Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367(a) because the state law claim is so related to the federal claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

126.   Defendant Lorrie E. Bradley, as an attorney, owed a duty of care to Plaintiff to provide competent legal advice and representation regarding the ERISA plan. Defendant breached this duty by providing negligent legal advice and failing to adequately represent Plaintiff's interests, as detailed above.

127.   As a direct and proximate result of Defendants' negligence, Plaintiff has suffered damages, including but not limited to the loss of her benefits and out-of-pocket expenses incurred due to the loss of those benefits, financial hardship from unpaid medical bills, and stress related to managing her health care needs without insurance.

//

//

## FOURTEENTH CLAIM FOR RELIEF

**[Claim for Professional Negligence (State Law), against Chris Corcoran, as Plan Administrator and Chris Corcoran, Individually]**

128.   Plaintiff incorporates Paragraphs 1 through 60 as though fully set forth here.

129.   Plaintiff has exhausted her administrative remedies.

130.   This Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367(a) because the state law claim is so related to the federal claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

131.   Defendant Chris Corcoran, as Plan Administrator, owed a duty of care to Plaintiff to administer the East Bay Drayage Drivers Security Fund Plan (EBDDSF) in accordance with applicable laws, regulations, and plan terms.  Defendant Chris Corcoran, in his individual capacity and as Plan Administrator, breached this duty by [specific negligent actions, e.g., improperly terminating Plaintiff's benefits, failing to follow plan procedures, providing incorrect information, etc.].

132.   As a direct and proximate result of Defendant Chris Corcoran's negligence, Plaintiff has suffered damages, including but not limited to the loss of healthcare benefits, emotional distress, and financial hardship.  Defendant Chris Corcoran's actions were willful, wanton, and in reckless disregard of Plaintiff's rights, justifying the imposition of punitive damages to punish Defendant and deter similar conduct in the future.

133.    As a direct and proximate result of Defendants' negligence, Plaintiff has suffered damages, including but not limited to the loss of her benefits and out-of-pocket expenses incurred due to the loss of those benefits, financial hardship from unpaid medical bills, and stress related to managing her health care needs without insurance.

## ORDER TO SHOW CAUSE RE: TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

134.    Plaintiff hereby requests that this Court issue a preliminary injunction and temporary restraining order against Defendants East Bay Drayage Drivers Security Fund Plan (EBDDSF), the EBDDSF Board of Trustees, Corcoran Administrators, Chris Corcoran (individually and as Plan Administrator), and Lorrie Bradley (attorney for negligent legal advice), enjoining them from terminating or denying Plaintiff's benefits and ordering the immediate reinstatement of all Plaintiff's benefits, including healthcare benefits.

135.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), a beneficiary of a plan is authorized to file suit to "enjoin any act or practice" that violates Title I of ERISA or the terms of a plan, and/or to obtain "other appropriate relief" to redress such violations. This provision provides the statutory basis for seeking injunctive relief in this case.

136.    The Plaintiff seeks to enjoin the Defendants from engaging in practices that violate these statutory requirements and the terms of the East Bay Drayage Drivers Security Fund Plan 1980 for Active Employees.

This request is based on the following grounds:

## I.      Likelihood of Success on the Merits:

137.    *Prohibited Rescission*: Defendants' termination of benefits constitutes a prohibited rescission under applicable laws, including the Affordable Care Act (ACA), which prohibits the rescission of coverage except in cases of fraud or intentional misrepresentation (42 U.S.C. § 300gg-12; 29 C.F.R. § 2590.715-2712). Defendants wrongfully rescinded Plaintiff's health insurance coverage without evidence of fraud or intentional misrepresentation. (See attached **Exhibits D, E, F, G, and H.**) Chris Corcoran specifically states that the delayed notification to the Plan of the divorce (which they are not divorced) was not attributable to Ms. Chavez. (See attached **Exhibit E.**)

138.    *Legal Spouse Status*: Under California law, a divorce is final once a final judgment of dissolution is issued (Cal. Fam. Code § 2340). The San Joaquin County Superior Court set aside the Judgment of Dissolution issued on November 12, 2019, rendering it void due to a lack of jurisdiction (Order dated November 21, 2019). Therefore, Ms. Chavez remains the legal spouse of Mr. Chavez and is eligible for benefits as outlined in the EBDDSF Summary Plan Description (SPD), page 3. (See attached **Exhibits A, B, and C.**)

139.    *Plan Terms*: The plan terms support Plaintiff's eligibility for continued benefits. The EBDDSF SPD clearly states that a "legal spouse" is an eligible dependent (page 3), and Defendants' actions in terminating benefits are in direct contravention of these terms. (See attached **Exhibit A.**)

140.    _Failure to Provide COBRA Notice_: Defendants failed to provide Plaintiff with a COBRA notice following the termination of her benefits, as required under the Consolidated Omnibus Budget Reconciliation Act (COBRA). This failure to notify Plaintiff of her right to continue health coverage further demonstrates the Defendants' non-compliance with applicable laws and regulations. The attached COBRA notice dated October 3, 2023, which lists Mr. Chavez's address, not Ms. Chavez's address, was never sent out to either Mr. Chavez or Ms. Chavez. The COBRA notice dated March 5, 2024, which also lists the incorrect address, was emailed to Ms. Chavez over five months after she was terminated from all benefits. Both notices list dates of termination which are prohibited under the Affordable Care Act as prohibited rescissions (42 U.S.C. § 300gg-12; 29 C.F.R. § 2590.715-2712). (See attached **Exhibits F and G**.) Additionally, no written notice was provided to Ms. Chavez prior to the coverage rescission, again in violation of 29 C.F.R. § 2590.715-2712.

## II.    **Irreparable Harm:**

141.    Plaintiff will suffer immediate and irreparable harm if the requested injunction and TRO are not granted. Plaintiff has a potential diagnosis of cancer and is experiencing serious, potentially life-threatening symptoms requiring urgent treatment. Without treatment, Plaintiff could lose her life or become physically disabled.

142.    Plaintiff also suffers from significant other health concerns and a disability that have been severely exacerbated since the termination of her insurance. Due to privacy concerns, specific details regarding these conditions are not included in this filing

but can be provided under seal or during discovery under a protective order if required by the Court.

143.    As a single mother with minor children, Plaintiff cannot afford COBRA or other out-of-pocket healthcare expenses and does not work outside of the home, exacerbating the financial strain on her family. Ms. Chavez has been forced to try at-home remedies and a myriad of over-the-counter medications and devices to alleviate some of her pain. These measures are not providing relief, and they represent an expense she cannot afford. This situation has caused her to borrow money and limit her household food budget to cover some of the costs.

144.    The initial cost of COBRA for Plaintiff amounts to $20,580.80, with $1,623.09 due monthly, a sum that is absolutely unaffordable given her financial situation and would force Ms. Chavez into serious debt and possibly bankruptcy.

**III.    Balance of Hardships:**

144.    The balance of hardships tips decidedly in favor of the Plaintiff. The harm to Plaintiff in the absence of an injunction outweighs any potential harm to Defendants from the issuance of the injunction. Plaintiff faces significant and immediate health risks, financial hardship, and potential loss of life without the reinstatement of her benefits. In contrast, Defendants, as established entities managing the East Bay Drayage Drivers Security Fund Plan, possess substantially greater financial resources and operational capacity to absorb the temporary costs associated with maintaining Plaintiff's benefits.

The financial burden on Defendants to continue providing benefits is minimal compared to the severe and potentially irreversible harm Plaintiff would suffer without them.

### IV.    Public Interest:

145.    Granting the injunction and TRO is in the public interest as it will prevent further harm to Plaintiff, maintain the status quo pending resolution of this matter, and ensure access to necessary medical treatment.

146.    *Access to Healthcare:*  Ensuring the reinstatement of Plaintiff's benefits, including healthcare, supports the public interest in maintaining access to necessary medical care. Access to healthcare is a fundamental public concern, and protecting this access aligns with societal values and public health policies.

147.    *Preventing Financial Hardship:*  Reinstating Plaintiff's benefits helps prevent significant financial hardship. This aligns with the public interest in preventing individuals and families from falling into financial distress, which can have broader economic and social consequences.

148.    *Protecting Vulnerable Populations:*  The Plaintiff is a single mother with minor children. Protecting the benefits of individuals in such vulnerable positions aligns with the public interest in safeguarding the welfare of families and children, who are particularly susceptible to the negative impacts of losing benefits.

149.    *Encouraging Fair Treatment by Benefit Providers:*  Granting the injunction promotes fair and just treatment by benefit providers. It sends a message that arbitrary

termination or denial of benefits will not be tolerated, thereby encouraging compliance with legal and ethical standards among similar entities.

150. *Public Health and Safety:* Ensuring that individuals with serious health conditions like cancer receive the necessary treatment is critical to public health and safety. The broader community benefits when individuals can manage their health conditions effectively and reduce the risk of more severe health crises. Allowing the Plaintiff to access necessary medical treatments prevents the deterioration of their health, which, if left unaddressed, could lead to more severe health conditions requiring emergency medical interventions, further straining public health systems.

151. *Legal Precedent and Rule of Law:* Granting the injunction upholds the rule of law and reinforces legal precedents that protect individuals' rights to benefits and healthcare. This contributes to a just and predictable legal system, which is a cornerstone of public trust and societal stability.

152. *Economic Productivity:* Ensuring that individuals have access to healthcare benefits supports their ability to contribute productively to society. Healthy individuals are more likely to participate in the workforce and community activities, thereby enhancing overall economic productivity and social well-being.

153. *Reduction of Public Assistance Burden:* By reinstating the Plaintiff's benefits, the burden on public assistance programs is reduced. This is in the public interest as it conserves public resources and ensures that such programs can support other individuals in need.

154.   Plaintiff did not delay in bringing this request for a preliminary injunction and TRO, demonstrating the urgency and necessity of immediate relief.

**Timeliness**:

155.   Plaintiff did not delay in bringing this request for a preliminary injunction and TRO, demonstrating the urgency and necessity of immediate relief.

**Privacy Considerations:**

156.   Due to privacy concerns, Plaintiff has not included detailed medical records or specific information regarding her health conditions and disability with this request. Plaintiff is willing to provide the necessary medical records and detailed information under seal or during discovery under appropriate confidentiality protections, as the Court deems necessary, to substantiate the claims made herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A. An order issuing a preliminary injunction and temporary restraining order against Defendants East Bay Drayage Drivers Security Fund Plan (EBDDSF), the EBDDSF Board of Trustees, Corcoran Administrators, Chris Corcoran (individually and as Plan Administrator), and Lorrie E. Bradley, enjoining them from terminating or denying Plaintiff's benefits and ordering the immediate reinstatement of all Plaintiff's benefits, including healthcare benefits.

B. A declaration that the Defendants' actions in terminating Plaintiff's benefits were unlawful and in violation of applicable laws, including but not limited to the Affordable Care Act (ACA) and California law.

C. An order requiring Defendants to provide Plaintiff with all benefits to which she is entitled under the EBDDSF Plan, including but not limited to healthcare benefits, retroactive to the date of termination.

D. An award of compensatory damages in an amount to be determined at trial, including but not limited to damages for emotional distress, financial hardship, and any other harm suffered as a result of the termination of benefits.

E. An award of punitive damages against Chris Corcoran and Lorrie Bradley individually for their wrongful conduct and negligence, in an amount sufficient to punish and to deter similar conduct in the future.

F. For penalties of up to $110 per day for each day the administrator fails to provide the required COBRA notices and other information, pursuant to ERISA § 502(c), 29 U.S.C. § 1132(c).

G. An award of attorneys' fees and costs incurred in bringing this action against all Defendants, including but not limited to fees and costs pursuant to U.S.C. Section 1132(g).

H. An order granting such other and further relief as this Court deems just and proper.

Dated: June 10, 2024

Respectfully submitted,

By: _____

Leah Chavez

*In Pro Per*

Exhibits:

Exhibit A:    EBDDSF Plan SPD

Exhibit B:    Void Judgment of Dissolution, dated November 12, 2019

Exhibit C:    Declaration and Order to Set Aside, dated November 21, 2019

Exhibit D:    Letter from Plan Administrator, Chris Corcoran, dated January 29, 2024

Exhibit E:    Letter from Plan Administrator, Chris Corcoran, dated March 4, 2024

Exhibit F:    COBRA Notice, dated October 3, 2023

Exhibit G:    COBRA Notice, dated March 5, 2024

Exhibit H:    Letter from Plan Administrator, Chris Corcoran, dated April 16, 2024

Exhibit I:    Appeal Summary, dated

Exhibit J:    Board of Trustees Meeting Minutes, from meeting January 12, 2024

# EXHIBIT A

# East Bay Drayage Drivers Security Fund

## Summary Plan Description
## Plan 1980 for Active Employees

### January 1, 2012

# Table Of Contents

Introduction...................................................................................................1

Benefit Essentials...........................................................................................2

*In this section:  general eligibility and enrollment information, when benefit coverage begins and ends, and continuation of coverage*

Summary Of Benefits.....................................................................................15

Medical Benefits...........................................................................................20

*In this section:  descriptions of the Medical Plan, prescription drug benefits, the HMO coverage options, and coordination of benefits information*

Dental Benefits.............................................................................................36

*In this section:  descriptions of the Self-Insured Dental Plan Bright Now!, and the DeltaCare Dental DPO dental plans, including plan benefits, limitations, exclusions and definitions*

Vision Benefits.............................................................................................45

*In this section:  description of the Vision Service Plan, including plan benefits, limitations and exclusions*

Life, Accident and Disability Insurance Benefits.........................................48

*In this section:  descriptions of the Employee Life Insurance, Dependent Life Insurance, Accidental Death and Dismemberment Insurance and Weekly Disability Benefits plans*

Definitions...................................................................................................53

Your Rights Under Federal Law....................................................................60

*In this section:  Plan and administrative information, a Directory Of Benefits, how to file claims and appeal denied claims, and your rights under federal law*

Health Insurance Portability and Accountability Act of 1996 ......................77

**Foreign Language Notice**

This booklet contains a summary in English of your rights and benefits under the East Bay Drayage Drivers Security Fund.  If you have any difficulty in understanding any part of this booklet, you may contact Delta Health Systems, P.O. Box 1147, Stockton, California 95201, telephone number (800) 422-6099.

**Aviso En Español**

Este folleto contiene un resumen en ingles de sus derechos y beneficios bajo el East Bay Drayage Drivers Security Fund.  Si tiene alguna dificultad en comprender cualquier parte de este folleto, puede comunicarse con Delta Health Systems, P.O. Box 1147, Stockton, California 95201, o llamar a los teléfonos (800) 422-6099.

# East Bay Drayage Drivers Security Fund Plan 1980 for Active Employees

Teamsters Local 70 and your employer have worked together to provide you with a comprehensive program of health and welfare benefits. This program for Active employees, established as a result of collective bargaining, is financed by employer contributions to the East Bay Drayage Drivers Security Fund (the "Trust Fund"). The Trust Fund's overall goal in creating and administering this program is to lessen the financial burdens caused by unforeseen illness or injury. Benefits for Retirees are described in a separate booklet.

Please read this booklet carefully. It is intended to be your primary resource for information about your health and welfare benefits. We have tried to present this benefit plan in a comprehensive, straightforward manner so that you may understand the value of your benefits. The Board of Trustees may find it necessary to change the provisions of the Plan from time to time. When this occurs, you will be notified.

This booklet has been designed to provide you with answers to questions you might have about your health and welfare benefits. If you need additional information, you may contact the Administrator's Office by telephone at (800) 422-6099.

The Administrator will provide answers on the telephone on an informal basis.

However, no such oral communication is binding on the Board of Trustees.

Since the last printing of the Summary Plan Description in 1998 the Fund has made some **changes in your Plan** including the following:

- **When last printed in 1998 the medical plan was insured by the Union Labor Life Insurance Company. That contract ended in 2008 and, although certain benefits described in this booklet – like life insurance – remain fully insured by Union Labor Life, if you are not enrolled in an HMO your medical benefits are now "self-insured" by the Trust Fund. A fuller description of what that means can be found on page 20.**

- **The Plan of Benefits described in this booklet is a "grandfathered" plan under the terms of the Patient Protection and Affordable Care Act of 2010 ("PPACA"). This booklet reflects the provisions of that Act applicable to the Plan as of the start of the October 1, 2010 Plan Year.**

- **Conformance of the Plan to the requirements of the PPACA applicable to grandfathered plans – most significantly by**

1

- removing the Plan's *lifetime* medical maximum (page 22).

- The appointment of New Trustees listed on pages 60-61.

- A one year limitations period on any lawsuit brought concerning claims denials and appeals (see page 69).

### An Important Note

This booklet provides a summary of your health and welfare benefits through the Trust Fund. As a summary, certain questions concerning your benefits will require answers not found within this booklet. These questions are resolved by the Fund's Board of Trustees. Only the Board of Trustees is authorized to interpret the Plan described in this booklet. No individual Trustee, Employer or Union representative is authorized to interpret this Plan on behalf of the Board or to act as an agent of the Board.

*The benefit programs and policies described in this booklet are current as of January 1, 2011, unless specifically stated otherwise.*

### Who Is Eligible for Benefits

### Covered Employees

- **Your Initial Eligibility Date**

There are two requirements for initial eligibility – Your Employer makes the required contributions on your behalf *and* your submission to the Administration Office of the Plan's enrollment form. **You first become eligible for the Plan on the first day of the calendar month** following the completion of three (3) calendar months during any twelve (12) month period on your employer's payroll during which your employer makes the monthly contributions required by the collective bargaining agreement on your behalf.

For example, if you are hired in January, are employed for the hours required under your collective bargaining agreement for contributions to be made on your behalf for the months of January, February and March, and your employer makes the contributions required under the collective bargaining agreement on your behalf for those months, you will become eligible for benefits as of April 1 (upon receipt by the Fund of contributions in April for March hours) provided that you have submitted a fully completed enrollment form. **Eligibility for benefits will not begin until the Administrator's Office has received your enrollment form.** Enrollment forms can be obtained from Local 70's Health & Welfare office or from the Fund Administrator's Office. To ensure that you are eligible for benefits as early as possible, submit your enrollment form *before* your employer makes all three months' contributions on your behalf.

If your collective bargaining agreement does not specify the number of hours required for contributions to be made on your behalf, the Plan requires contributions if you are employed **80 hours** or more during any month.

The Fund waives this "three-months of contributions prior to coverage" waiting

2

period if you were (1) previously covered by this Fund, or (2) covered by another Teamster health fund within twelve (12) months of the start of your current employment. If you qualify for this waiver, you become eligible on the first day of the month following the first month in which you work the hours required under your collective bargaining agreement provided that (1) your employer makes the required contribution; (2) you submit the Plan enrollment forms; and (3) you have established to the satisfaction of the Board of Trustees that you are entitled to the waiver.

- **Continuing Your Eligibility**

After you have met the initial eligibility requirements, you will maintain your eligibility from month to month thereafter if:

- You have worked the hours required under the collective bargaining agreement for a contribution to be made on your behalf *and* if your employer makes the required contribution to the Trust Fund on your behalf, *or*

- You are not working but the collective bargaining agreement requires your employer to make payments on your behalf, nevertheless.

Contributions paid for hours worked in one month pay for coverage in the following month. For example, contributions for hours worked in March pay for April coverage.

Unless your collective bargaining agreement specifically states otherwise, paid time, such as but not limited to vacations, sick leave and holidays, is considered time worked for purposes of determining eligibility and your employer's obligation to contribute.

- **Dependent Eligibility**

Eligible dependents who can participate in the Plan include:

- Your legal spouse;

- Your domestic partner (the eligibility requirements for domestic partners are outlined under *"Domestic Partner"* on page 4);

- Your children – from birth or legal adoption, stepchild(ren), a child placed for adoption, children for whom you have been appointed legal guardian by court order, or a child subject to a valid Qualified Medical Child Support Order – under age twenty-six (26) and, if over age eighteen (18), not eligible for coverage in a group health plan through their own employment, or on active duty military, naval or air service; and

- Your unmarried mentally or physically handicapped children age twenty-six (26) or older who are unable to support themselves for as long as they are so disabled and remain dependent on you (proof of the ongoing disability will be required within thirty one (31) days of your child reaching age twenty six (26) and at any other time requested by the Fund).

3

- **Your Dependents' Eligibility Date (for Dependents other than Domestic Partners)**

If you have dependents on the date you first become eligible, your dependents also become eligible on that date. If you acquire a dependent *after* you first become eligible, the dependent becomes eligible:

- On the date you legally marry the dependent;

- On the date you assume legal responsibility for a dependent child who is within the applicable age limits described above;

- On the date that you have fully completed the requirements described under the heading "Application Process for Domestic Partner Coverage."

## Domestic Partners

In addition to a lawful spouse and dependent child(ren), a "domestic partner" is also eligible for coverage. A domestic partner may be of the same or opposite sex and must meet all of the requirements stated below:

- You and your domestic partner are each other's sole domestic partner and have executed a Declaration of Domestic Partnership or have a California *Certificate of Domestic Partnership*;

- Neither of you is married to or legally separated from another person;

- You and your domestic partner are more than eighteen (18) years old;

- You and your domestic partner are legally competent to contract;

- You and your domestic partner are not related by blood to a degree of closeness which would prohibit legal marriage in the State of California; and

- Any other domestic partnership in which either you or your domestic partner participated must have terminated at least six (6) months prior to the date of signing the Declaration of Domestic Partnership (as described below).

- **Eligibility of Domestic Partners**

Your domestic partner qualifies for coverage as a dependent if he or she meets at least one of the following two eligibility tests:

- **Test #1:** Your domestic partner qualifies for coverage if you have a valid *Certificate of Domestic Partnership* issued by the California Secretary of State pursuant to California Family Law Code § 298. Under California law, you are eligible for such a *Certificate* if you and your **same sex** domestic partner meet the following conditions:

  · Share a place of residence;

  · Are jointly responsible for each other's common welfare and financial obligations; and

  · Are unmarried, legally competent in the State of California to enter into a contract, eighteen (18) years or older, and are not blood relatives.

4

You and your **opposite sex** domestic partner are eligible for a *Certificate of Domestic Partnership* provided that either you or your domestic partner is over age sixty two (62).

- **Test #2:** If you and your domestic partner are of the **opposite sex** and you are younger than age sixty two (62), the following rules apply:

  - A six-month waiting period will commence from the date of the filing of the initial application for domestic partner coverage during which time your domestic partner is not eligible for benefits;
  - The Plan will provide you with a document, the *Declaration of Domestic Partnership,* which must be notarized and filed with the Administrator's office within thirty (30) days of the filing of the initial application;
  - Within ninety (90) days of the filing of the initial application, evidence of the existence of the domestic partnership must be submitted to the Administrator's Office in the form of two (2) of the following:
    - Proof of joint bank account;
    - Proof of joint lease or mortgage of mutual residence; or
    - A joint billing statement (e.g., utility bill).
  - Upon completion of the six-month waiting period, a Declaration of Reaffirmation of Domestic Partnership must be filed with the Administrator's Office. These forms can be obtained from the Administrator's Office.

Under Test 1 or 2, the Trust Fund reserves the right to obtain your confirmation from year to year that you remain in the domestic partnership registered with the Administrator's Office.

- **Tax Consequences of Domestic Partner Eligibility**

According to the IRS, if your domestic partner is not your "dependent" for federal income tax purposes (*i.e.,* primarily dependent upon you for support *and* residing in your household), the portion of the employer contribution made on your behalf which funds the domestic partner's coverage is treated as your additional income. The Fund calculates the fair market value of the coverage and reports this amount once annually as your income. Employer taxes attributable to this "income" is paid by the Fund and you must pay the quarterly employee income taxes on the portion of the employer contributions to the Plan determined to be the fair market value of your domestic partner's coverage.

- **Your Domestic Partner's Eligibility Date**

(1) Where your domestic partnership is established through a *Certificate of Domestic Partnership* issued by the California Secretary of State your domestic partner's eligibility (and the eligibility of any children of your domestic partner who qualify for coverage under the terms of the Plan) shall begin on the first day of the month following your enrollment of your domestic partner in the Plan (provided that you remain eligible for coverage as of that date).

5

(2) If your domestic partner's eligibility is not based on a *Certificate of Domestic Partnership,* eligibility for your domestic partner and any eligible children of the domestic partner will commence as of the date of the month immediately following completion of the six-month waiting period described above *provided* that you remain eligible for coverage as of that date (see *"Continuing Your Coverage"* above).

Please note that eligibility of a domestic partner and any dependent children will terminate on the earliest of the following dates:

- The date the domestic partnership, as defined by the Plan, terminates;

- The date a Statement of Termination of Domestic Partnership is signed by either party;

- The date the covered employee's eligibility terminates; or

- The date dependent coverage would otherwise terminate under the terms of the Plan.

- Benefit Options for Newly Eligible Employees

When you first become eligible for the Plan, you must select a medical and dental coverage provider.

- **Medical coverage** – You must choose to enroll in one of the three medical options: HMOs Kaiser Permanente or UnitedHealthcare (formerly known as PacifiCare), or the Fund's Indemnity Plan. If you do not enroll in one of the three options, you will be enrolled in

the default option – the Fund's Indemnity Plan.

- **Dental coverage** – You must enroll in one of the following dental options: the DeltaCare DPO, Newport Dental or the Fund's Dental Plan. These options are described beginning on page 36.

Upon attaining Initial Eligibility you will be automatically enrolled with the providers of the following types of coverage:

- Prescription drug coverage (through CVS Caremark) – However, if you enroll in the UnitedHealthcare medical option your prescription drug coverage is through UnitedHealthcare.

- Vision coverage (through the Vision Service Plan)

- Employee Life Insurance

- Dependent Life Insurance (if applicable for your spouse and/or eligible children)

- Accidental Death & Dismemberment ("AD&D") Insurance

- **Annual Open Enrollment**

After you have completed your first twelve (12) months of coverage, you will have the opportunity to change your medical option during the Plan's annual Open Enrollment. You may change your dental option during any Open Enrollment period.

Open Enrollment is traditionally held during July and any changes become effective August 1 (although the Board of

6

Trustees may change the Open Enrollment period in any given year). You will receive a notice, normally in June of each year, of your options to change and instructions regarding how to secure enrollment literature and change forms. A packet explaining your options and containing a change request form will be sent to you upon your request to the Fund Administrator's Office (therefore, you must send the Administrator's Office a change of address form whenever you change your address).

If you do not send a written change request during Open Enrollment, your existing medical and dental options will be continued for the next benefit year (August 1 through July 31 or the next Open Enrollment, whichever occurs first) and are not subject to change until the next Open Enrollment. This is subject to one exception: Under state law you must live *or* work within fifteen (15) miles or thirty (30) minutes of an HMO hospital and doctor. If you are enrolled in the Kaiser or UnitedHealthcare HMO and move to an area over 30 minutes or 15 miles from the nearest Kaiser facility or UnitedHealthcare contract hospital or doctor you can change your medical option outside of Open Enrollment.

### Qualified Medical Child Support Order

If a Qualified Medical Child Support Court Order ("QMCSO") issued in a divorce or legal separation proceeding requires you to provide health coverage to a child who is not in your custody, the Fund will conform to the order for each month in which you are eligible for coverage. A medical child support order is not "qualified" unless it includes all of the following:

- Name and last known address of the parent who is covered under this Plan;

- Name and last known address of each child to be covered under this Plan;

- Type of coverage to be provided to each child; and

- Period of time the coverage is to be provided.

QMCSOs should be sent to the Administrator's Office. Upon receipt, the Administrator will notify you and describe the procedures for determining whether the order is qualified. As a Dependent covered under the Plan pursuant to a QMCSO, your child will be entitled to information that the Plan provides to other beneficiaries under the Employee Retirement Income Security Act's ("ERISA") reporting and disclosure rules.

If you do not enroll your child as required by the QMCSO, the Administrator will do so for you.

You may not drop health care coverage for the child(ren) unless you submit written evidence that the child support order is no longer in effect. A copy of the Fund's procedures for determination of whether a child support order satisfies the requirements of a QMCSO is available on request.

7

## When Coverage Ends

- ### When Coverage Ends for Plan Participants

Your coverage generally ends on the earliest of the following:

- The date the Plan terminates;

- The end of the month for which the last employer contribution is made on your behalf;

- The date you enter the military, naval or air service on a full-time basis;

- The date your eligibility for coverage ends as described under *"Continuing Your Eligibility"* on page 3;

- The date your employer terminates participation in the Plan; or

- The date you retire, are pensioned, leave voluntarily, or are dismissed from the employment of your employer, or the date you otherwise stop active work for your employer.

In the event you are unable to work because of disability your coverage will continue as follows:

- If your disability is **work-related** your employer may be obligated to continue contributing for your coverage. To determine whether your employer has this obligation, and if so, for how long, see your collective bargaining agreement;

- If (1) your disability is **not work-related**; *or* (2) your disability **is work-related and you remain disabled after you have exhausted any employer-paid extension of**

coverage; the Plan will continue your coverage and your family's coverage without employer or employee contribution for up to three (3) months.

- ### When Coverage Ends for Dependents

Coverage for your Dependents generally ends on the *earliest* of the following:

- The date your Dependent ceases to be eligible as a Dependent under the Plan;

- The date your coverage terminates;

- The date your Dependent enters into the military, naval or air service on an active duty, full-time basis;

- The date the Plan terminates, or terminates coverage for Dependents; or

- The date indicated on a Qualified Medical Child Support Order.

- Certificate of Creditable Coverage

When you lose medical, dental and/or vision coverage under the Plan, the Health Insurance Portability and Accountability Act ("HIPAA") requires that you automatically receive a "Certificate of Creditable Coverage" from the Trust Fund that states how long you were continuously covered under the Plan. You will receive this Certificate even if you elect to continue your coverage through COBRA (as described on page 9).

You may need this Certificate if you become eligible under a group health plan that excludes coverage for certain medical

8

conditions that existed before you enroll in the new group plan. You may also obtain a Certificate upon request from the Administration Office.

**Continuation of Coverage**

- **Self Payment**

You may continue your coverage **for up to six (6) months** under the Plan's self payment provision if your coverage ends because you:

- Resign;

- Terminate employment;

- Are laid off; or

- Go on an approved leave of absence.

If, after the six (6) months of coverage by self payment, you (1) have *not* returned to work, *or* become covered under another group health plan (without limitation to a preexisting condition), and (2) did not become entitled to Medicare during the sixty (60) day period immediately preceding your resignation, layoff or retirement, you may continue coverage (except Life and AD&D Insurance) under COBRA (as described in the following section) for the full COBRA period.

Unlike "COBRA" (described below) your Dependents are not entitled to continue coverage though the Plan's self pay option if you decline this self pay option.

The Board of Trustees determines the self payment rates annually. Self payments are due in the Administrator's Office on the first day of the month for which they are intended to provide coverage and

delinquent if not paid by the 30th day of the month. If a self payment is delinquent for more than thirty (30) days, your right to continue coverage by self payment will terminate.

- **COBRA**

COBRA (Consolidated Omnibus Budget Reconciliation Act) is a federal law that requires the Trust Fund to provide you and your eligible Dependents with the opportunity to continue your health coverage at your expense when your employer-paid health coverage ends. COBRA applies to medical, dental and vision coverage, but not to Life Insurance, AD&D Insurance, loss of time or disability insurance; however, you may convert your Life Insurance coverage to an individual policy as described under *"Conversion to Individual Coverage"* on page 13.

- **Your COBRA "Qualifying Events"**

You become eligible for COBRA when:

- Your employment is terminated; or

- Your work hours are reduced resulting in your loss of coverage (specifically, the failure to work the hours required under the collective bargaining agreement for contributions to be made on your behalf).

If you experience a COBRA Qualifying Event you may elect to continue coverage for yourself and any Dependents enrolled in the Plan prior to your Qualifying Event.

9

- **Your Dependents' COBRA "Qualifying Events"**

Your Dependents become eligible for COBRA for the following reasons. Please note that your domestic partner and his/her eligible dependents are *not* eligible for COBRA.

- Your employment is terminated;

- Your work hours are reduced resulting in your loss of coverage (specifically, the failure to work the hours required under the collective bargaining agreement for contributions to be made on your behalf);

- You die;

- You divorce your spouse (this is a "qualifying event" for your divorced spouse only – it does not result in a loss of coverage or COBRA "qualifying event" for your Dependent children because they do not lose coverage as a result of your divorce); or

- When your Dependent child ceases to be eligible for coverage under the terms of the Plan (e.g., your child reaches the maximum age limitation, or your child is no longer a full-time student).

**Note:** (1) In the event of your death, your divorce, or your Dependent child's reaching the maximum age allowed for Dependents, your spouse, ex-spouse and/or Dependents' COBRA period lasts up to thirty six (36) months; (2) To choose COBRA coverage, you must be covered under the Plan on the day before the qualifying event.   Children born to,

adopted by or placed for adoption with you during the period of your COBRA continuation coverage can be added to your COBRA coverage, as can your spouse if you marry during your COBRA coverage period.

- **COBRA Notification Requirement**

If your Plan coverage ends because of your death, termination or reduced hours, you or your Dependents will receive information from the Administration Office regarding your COBRA coverage rights within thirty (30) days of any of these events.   You will have sixty (60) days to elect COBRA coverage.

**If you divorce or a Dependent is no longer eligible under the Plan's eligibility rules, you or your Dependent must send notice to the Administrator's Office within sixty (60) days of the event that causes loss**

> **If you do not elect COBRA coverage within the 60-day election period, you and/or your Dependents will lose your rights to COBRA coverage.**

of coverage.

- **COBRA Coverage Options**

At the time of your COBRA election you have a one time choice between "core only" and "core plus non-core" benefits:

- "Core coverage" includes medical coverage (in the Trust Fund's Medical Plan or an HMO), prescription drug

10

coverage, and drug and alcohol rehabilitation coverage.

- "Core plus non-core coverage" includes the coverage listed above, plus vision and dental coverage.

- Whether you choose "core plus" or "core" benefits only, the Plan's COBRA premium is a "comprehensive" – rather than single or family – premium. Therefore, if you or your spouse elect and pay for COBRA coverage, your (or your spouse's) COBRA election will cover your eligible Dependents. If, however, a Dependent child has a COBRA qualifying event their COBRA premium is the same but will cover only him/herself.

- **COBRA Coverage Period**

COBRA coverage begins on the date you lose health care coverage because of a qualifying event and typically ends eighteen (18) months later. In some instances, COBRA coverage may last up to twenty nine (29) or thirty six (36) months.

- **Cost of COBRA Coverage**

You (and/or your covered Dependents) must pay the full cost of coverage, plus a 2% administrative fee.

If you or a Dependent are disabled and therefore entitled to more than 18-months of COBRA coverage you will pay 150% of the full cost.

The Board of Trustees will determine the COBRA rate annually. The premium

rates will not change during the twelve (12) months following a rate change unless the Board revises the Plan, or continuing dependent coverage is terminated because there are no longer any eligible dependents under COBRA coverage.

If you elect COBRA coverage, your initial premiums are due by the 45th day following the election date. The initial premium payment must include the premiums for coverage from the date coverage ended. You must pay additional premiums in monthly installments; however, you will be allowed a 30-day grace period for subsequent monthly premium payments.

**Your COBRA coverage will terminate if you do not make your premium payment before this grace period ends.**

- **Extended Coverage Due to a Disability**

If you (or a covered Dependent) are deemed "disabled" by the Social Security Administration when you experience your COBRA "qualifying event" you will be allowed to continue COBRA coverage for an additional eleven (11) months. This brings your total COBRA eligibility to twenty nine (29) months.

To be eligible for this additional continued coverage, you (or any affected Dependent) must notify the Administrator:

- Within sixty (60) days following the date Social Security notifies you that

11

you or any affected Dependent are disabled, but

- No later than the end of your 18-month COBRA coverage period.

You or any affected Dependent must also notify the Administrator within thirty (30) days of the determination that you are no longer disabled. The additional COBRA continuation coverage (i.e., coverage beyond the original 18 months) will end if you or any affected Dependent are no longer disabled.

- **Extended Coverage Due to a *Second* Qualifying Event**

If your Dependents have COBRA coverage due to your termination or reduction in hours worked, and another qualifying event (such as your death or a divorce) occurs during the initial 18-month continuation period, your Dependents are entitled to an additional eighteen (18) months of COBRA continuation coverage.

If you become entitled to Medicare either, (1) *after* you have elected COBRA coverage, your Dependents may continue coverage for up to thirty six (36) months from the date of the original qualifying event;  or (2) within the eighteen (18) months *before* your termination or reduction in hours, your covered Dependents may continue coverage for up to thirty six (36) months from the date you became entitled to Medicare.

- **Extended Coverage for Plan Participants on Military Leave**

If your employer-paid coverage ends because you are called up for military

service on or after December 10, 2004, the Veterans Benefits Improvement Act extends the period during which you can self pay for coverage by an additional six (6) months, for a total of twenty four (24) months of continuation coverage. This extended coverage runs concurrently with any continuation coverage rights under COBRA.

- **When COBRA Coverage Ends**

Your and/or your covered Dependents' COBRA coverage terminates as of the earliest of the following dates:

- The end of the 18-, 29- or 36-month COBRA coverage period;

- The date a COBRA payment is delinquent in excess of thirty (30) days;

- The date your employer terminates its participation in the Plan and its active employees are enrolled in another group health plan;

- The date you or your Dependent becomes covered by another group health plan, unless that plan limits or excludes coverage of a preexisting condition of that person (at the end of any such exclusion or limitation, COBRA coverage will end);

- The date a person on COBRA coverage becomes entitled to Medicare;

- The month that begins thirty (30) days after a disabled person on extended COBRA coverage is no longer disabled; or

- The date the Plan ends.

12

## Keep the Administrator Informed of Address Changes

Keep the Administrator informed of any changes in the addresses of family members. You should also keep a copy, for your records, of any notices you send to the Administrator.

## Extension of Coverage During a Labor Dispute

You may continue your coverage under the Plan by self payment for up to a maximum of six (6) months during a labor dispute, under the following conditions:

- You make a monthly self payment as determined by the Board of Trustees,

- At least 75% of all eligible individuals elect to continue their coverage during the labor dispute, and

- You do not accept other full-time employment.

**Note:** (1) This extension of coverage does not apply to weekly disability benefits during the dispute; and (2) The Plan's self pay period does *not* run concurrently with your COBRA period so you may be entitled to the full COBRA period after the Labor Dispute extension has run.

## Three Month Extension for Short-Term Disability

If you become disabled and cannot work your coverage and your eligible Dependents' coverage will continue during your disability for up to three (3) months from the date your disability causes you to stop active work. This extension will end at the end of these three months or when

you cease to be disabled, whichever occurs first. If at the end of the three month period you remain disabled, you may be entitled to continue coverage through COBRA.

## Twelve Month Extension of Benefits During Total Disability

If you are totally disabled at the time your eligibility ends, *your medical benefits related to your* disability will continue during your disability until the earliest of the following:

- The date your total disability ends;

- The date that you become eligible for other group coverage without limitation as to your disabling condition; or

- The end of the twelve (12) month period following the end of your employer paid coverage.

**This twelve (12) month extension applies to you only and *not* to your eligible Dependents.**

## Conversion to Individual Coverage

- **Medical Coverage**

If you are enrolled in the Fund's Self-Insured Medical Plan at the time your coverage ends there is no basis to convert your group coverage to an individual medical policy. If you are enrolled in an HMO, you may convert your group coverage to an individual policy with the HMO.

Please note that dental, vision, substance abuse, and prescription drug coverage

13

cannot be converted to an individual policy.

- **Life Insurance Coverage**

If your Life Insurance coverage ends or is reduced for any reason, other than due to your age or retirement, or if the Trust Fund no longer offers the group policy, you may convert your Life Insurance from group coverage to an individual policy. Evidence of insurability is not required.

The individual coverage may not be a term insurance policy and it may not be for an amount greater than the benefit under the group coverage. You must pay your own insurance premiums if you convert your policy to individual coverage.

To convert to an individual policy, you must apply in writing to the insurance company within thirty one (31) days from the date your insurance coverage stops. If you are eligible for conversion and do not receive notice at least fifteen (15) days before your 31-day grace period expires, you will have an additional fifteen (15) days from the day you receive the notice. The extension will not exceed ninety (90) days.

If the group coverage is amended so that it will no longer cover you, you may have the option to convert if the insurance policy had been in effect for five (5) years or more.

If you die during the 31-day period following your last day of work for the Company, benefits will still be paid as though you were covered.

If your Dependent's Life Insurance terminates for any reason, he or she will be entitled to convert their coverage on the same basis as you.

14

# BENEFITS SUMMARY

This Benefits Summary is intended as an "at a glance" description of benefits. For a complete explanation of the benefit and any limitations, see the part of this booklet that addresses that benefit.

## THE SELF-INSURED MEDICAL PLAN

| | |
|---|---|
| Annual Deductible<br><br>"Annual" based on calendar year. | **$50 per person; $150 maximum per family**<br><br>**NOTE:** You may carry over any covered charges applied toward the deductible in the last ninety (90) days of a calendar year to satisfy the deductible for the following calendar year. However, your coinsurance (the percentage of covered charges which you are required to pay) may not be used to satisfy the deductible. |
| Annual Out-Of-Pocket Maximum<br><br>"Annual" based on calendar year. | **If you use a PPO Provider:** **$500** in PPO charges (after the deductible is satisfied) except for outpatient mental health treatment.<br><br>**If you use a Non-PPO Provider:** Except as specifically noted below regarding (1) Use of a Non-PPO Hospital for reasons not related to an emergency; or (2) Outpatient mental health, the Annual Out-of-Pocket Maximum is **$500** in Usual, Reasonable & Customary ("UCR") charges (after the deductible is satisfied).<br><br>**If you use a Non-PPO Hospital for reasons other than an Emergency, there is no Out-Of-Pocket Maximum.** Claims are paid at 80% of UCR charges and the 20% you pay will **not** be applied to your Annual Out-Of-Pocket Maximum, except,<br><br>  o  If there is no PPO Hospital within thirty five (35) miles of your residence or the site of your injury, or<br><br>  o  If you file a written request for waiver with the Fund Office and a waiver is deemed valid by the Administrative Office based on your request. This waiver is applicable only once in a Participant or Dependent's lifetime.<br><br>If either of these two exceptions apply a Non-PPO Hospital claim will be paid at 100% of UCR charges subject to the $500 Annual Out-of-Pocket Maximum (after the deductible is satisfied). |
| Maximum Annual or Lifetime Benefit | None |

15

| | |
|---|---|
| Inpatient Hospital Room and Board<br><br>Limited to 365 days per Hospital Confinement. | **If you use a PPO Hospital:  100% of PPO rate.**<br><br>**If you use a Non-PPO Hospital:  80% of UCR charges.**<br><br>*The 20% reduction  applicable to use of a "Non-PPO Hospital" will **not** be applied to your Annual Out-Of-Pocket Maximum.* |
| Convalescent Hospital Room and Board<br><br>Limited to 60 days and must begin within 7 days of a hospital confinement of at least 5 days. | **If you use a PPO Hospital:  100% of PPO rate.**<br><br>**If you use a Non-PPO Hospital:  80% of UCR charges.**<br><br>*The 20% reduction  applicable to use of a "Non-PPO Hospital" will **not** be applied to your Annual Out-Of-Pocket Maximum.* |
| Benefits Payable at **100% of PPO Facility Charges** if you use a PPO facility and **80% of Usual, Reasonable & Customary Charges** ("UCR") if you use a non-PPO facility | ▪ Inpatient Hospital Surgeon<br>▪ Outpatient Surgery<br>▪ Anesthesiologist<br>▪ Inpatient diagnostic Lab Tests and X-Rays<br>▪ Charges for drugs and medicines while hospital confined<br><br>*The 20% reduction  applicable to use of a "Non-PPO Hospital" will **not** be applied to your Annual Out-Of-Pocket Maximum.* |
| Benefits Payable at **100% of PPO Doctor Charges** if you use a PPO doctor and **100% of Usual, Reasonable & Customary Charges** ("UCR") if you use a non-PPO doctor | Second Surgical Opinion |
| Benefits Payable at **80% of PPO Doctor or Facility Charges** if you use a PPO doctor or facility and **80% of Usual, Reasonable & Customary Charges** ("UCR") if you use a non-PPO doctor or facility | ▪ Outpatient Non-Surgical Facility – NOTE: *Includes all covered outpatient services provided including, but not limited to, outpatient X-Ray, lab and other diagnostic services.*<br>▪ Hospital Emergency Room (or Urgent Care Facility) – NOTE: *If you are admitted to a PPO hospital as a result of an emergency room visit the emergency room will be covered at 100% of the PPO rate.*<br>▪ Physician Care (other than Surgeons and Anesthesiologists), including office visits<br>▪ Outpatient Diagnostic Lab Tests and X-Rays<br>▪ Ambulance Service<br>▪ Skilled Nursing Facility or the charges made by a Registered Nurse, Licensed Vocational Nurse, |

16

| | |
|---|---|
| | or Licensed Practical Nurse for private duty nursing<br><br>▪ Chiropractic Care<br><br>▪ Mammographies<br><br>▪ Physical Therapy or occupational therapy services<br><br>▪ Durable medical equipment<br><br>▪ Prosthetics<br><br>▪ Services listed under the heading "*Other Frequently Utilized Medical Services*" on page 25 |
| Supplemental Accident Benefit | If you are treated as a result of an accident, a benefit of up to $500 will be applied to your clams for treatment related to the accident.  Once that $500 supplement is exhausted, your claims will be paid according to the benefit areas described in this Summary. |
| Substance Abuse Treatment Benefits<br><br>– First Course of Treatment per lifetime<br>– Second Course of Treatment per lifetime | Applies to ALL Plan participants, including HMO enrollees.  Up to two courses of treatment per lifetime:<br><br>Subject to pre-authorization by TAP<br><br>Subject to pre-authorization by TAP |
| Infertility Treatment | **Up to $25,000 per couple (lifetime)**<br><br>"Couple" is limited to Plan participant and Spouse or Plan participant and Domestic Partner. |
| Outpatient Treatment of Mental Illness and Mental Health<br><br>▪ For Treatment of **Mental Health** if not diagnosed with a Mental Illness | **If you use a PPO Provider:  50% of PPO rate will be paid for outpatient treatment. Individual sessions will be covered up to a maximum of 50 per calendar year.**<br><br>**If you use a Non-PPO Provider:  50% of UCR charges will be paid for outpatient treatment.  Individual sessions will be covered up to a maximum of 50 sessions per calendar year.**<br><br>*The 50% you pay when you pay for outpatient mental health treatment is **not** applied to your Annual Out-Of-Pocket Maximum.* |

17

| | |
|---|---|
| ■ For Treatment of **Mental Illness** ("mental illness" includes, but is not necessarily limited to, the following diagnoses:  schizophrenic disorder, bipolar disorder; pervasive developmental disorder or autism, anorexia nervosa, and bulimia nervosa) | If you use a PPO Provider:  80% of PPO rate. If you use a Non-PPO Provider:  80% of UCR charges. |
| *NOTE:  All diagnoses for those age 16 and under will be classified as a "mental illness" for purposes of Plan coverage.* | |

## PRESCRIPTION DRUG BENEFITS

| | |
|---|---|
| Through **CVS Caremark** (but if you are enrolled in the UnitedHealthcare HMO you obtain your prescriptions through UnitedHealthcare – see UnitedHealthcare's *Explanation of Coverage*). | **No Deductible** Coverage of Brand Name and Generics at 100% of CVS Caremark's determination of UCR charge. Injectables and other "Specialty" prescriptions are subject to pre-authorization with CVS Caremark's Specialty Drug Program. |

## INDEMNITY DENTAL PLAN

| Self-Insured Dental Option | |
|---|---|
| Deductible | **No Deductible** |
| Percentage Payable | **90% of Usual, Reasonable & Customary ("UCR") charges for all services** |
| Out-of-Pocket Maximum | **There is no dental out-of-pocket maximum** |
| Annual Maximum | **No Annual Maximum** |
| Orthodontia | **70% of UCR up to a lifetime maximum of $3,000 per person** |

## VISION BENEFITS

| Through **Vision Service Plan** ("VSP") | If you use a VSP Provider: |
|---|---|
| The covered amount is subject to a VSP allowance.  Some frames and lenses will exceed this allowance and you will be responsible for the difference. *The amount **not** covered for vision benefits does not apply to your Medical Plan Annual Out Of Pocket Maximum.* | ■ No copayment<br>■ Exams – once in any 12 months<br>■ Frames – one pair in any 24 months – up to $195 and 20% off the amount over $195<br>■ Lenses – one pair in any 12 months – paid in full for (1) single vision, lined bifocal, and lined trifocal lenses; (2) blended, progressive, photochromics, tints and dyes; and (3) polycarbonate lenses for dependent children.  Other lens treatments are not covered.<br>■ Contacts in lieu of glasses – one pair in any 12 months – up to $105 per pair and payment for lens exam (fitting and evaluation) |

|  |  |
|---|---|
|  | ▪ Replacement pair of glasses – subject to an allowance of up to $195 and a $10 copayment |
|  | **If you use a Non-VSP Provider:** |
|  | ▪ No copayment |
|  | ▪ Exams – Once in any 12 months – up to $45 |
|  | ▪ Frames – Once every 24 months – up to $75 |
|  | ▪ Lenses – Single vision – up to $45 per pair |
|  | – Lined bifocal – up to $65 per pair |
|  | – Trifocal –        up to $85 per pair |
|  | ▪ Contacts – up to $105 |

## DISABILITY BENEFITS

| Self-Insured Disability Benefits | **$40 per week, maximum of 26 weeks for Employee only** |
|---|---|

## LIFE AND AD&D INSURANCE

| Through **Union Labor Life Insurance Company** | **Employee:  $7,500 life insurance and $5,000 AD&D** |
|---|---|
|  | **Dependent:  Spouse – $3,500 (life only); Child over 6 months through age 20 – $1,000 (life only);  Child under 6 months – $100** |

19

## THE SELF INSURED MEDICAL PLAN

This section provides a summary of the key provisions of the Fund's Self-Insured Medical Plan. Benefits provided under the Kaiser and UnitedHealthcare options are described in the HMO's *Explanation of Coverage*, which will be provided along with copies of this SPD to HMO enrollees.

### How the Medical Plan Works

The Medical Plan provides comprehensive medical coverage when you are diagnosed and treated for a non-occupational illness or accidental injury.

Your out-of-pocket charges under the Medical Plan are based on three factors –

(1) Have you satisfied the annual individual and family medical deductible?

(2) Have you satisfied your Annual Out-of-Pocket Maximum (if applicable)? and

(3) (For some benefits) Have you used a PPO Hospital, facility, or doctor or a Non-PPO Hospital, facility or doctor?

### How Benefits Are Determined

As shown in the **Benefits Summary** above, there are a few types of payment provisions you should be aware of when determining how much the Medical Plan pays and how much you must pay for covered services: deductibles, out-of-pocket maximums, and lifetime maximums.

- **Deductible**

The deductible is the amount you must pay each calendar year before the Plan begins to pay benefits. There is an individual deductible and a family deductible. Once you have satisfied your deductible, the coinsurance amounts (as described below) will apply, unless otherwise noted.

For families of three or more, once your family members have incurred the first $150 of eligible expenses in a calendar year, the Plan will treat all family members as if they have satisfied the individual deductible.

You can "carry over" any covered charges applied toward your deductible in the last ninety (90) days of a calendar year to satisfy the deductible for the following calendar year.

Note that the following types of out-of-pocket costs will *not* be applied toward your annual deductible:

- Charges for services or treatment which is not covered by the Plan; and/or

- Amounts in excess of the Usual, Reasonable and Customary ("UCR") Charges.

- **Coinsurance**

"Coinsurance" is the percentage of covered expenses paid after you satisfy any applicable deductible and before you reach the annual out-of-pocket maximum. Note that for Out-of-Network providers the "covered expenses" are based on UCR

20

charges; any charges above these amounts are your responsibility and are not part of the amount subject to coinsurance.

The coinsurance percentages apply until you reach your annual out-of-pocket maximum, at which point the Plan pays 100% of covered expenses for the rest of the calendar year.

- **Out-Of-Pocket Maximum**

The out-of-pocket maximum is the maximum amount (in addition to the deductible) you have to pay toward your covered benefits each calendar year. Under the Indemnity Medical Plan, the out-of-pocket maximum is $500 per covered individual.

Your annual out-of-pocket maximum does *not* include:

- Deductibles;
- Charges for services or treatment which are not covered by the Plan; or
- For Non-PPO Hospitals, Doctors and other providers, charges in excess of covered expenses. Generally, this means that Hospital charges in excess of what the Plan determines to be Usual, Reasonable & Customary ("UCR") is *not* subject to your annual out-of-pocket maximum.

- **Choice Of Hospital**

You may use any licensed doctor or hospital you choose. However, how your hospital claim will be paid depends on whether you use a "PPO" or "Non-PPO" hospital. The term "PPO" means "preferred provider organization" and refers to a network of hospitals and doctors that have contracted with the Plan's PPO provider.

- If you have **inpatient surgery, lab tests or X-rays, or an inpatient stay at a PPO hospital** *or* you have **outpatient surgery at a PPO hospital,** the Plan pays in full for all facility charges and services and these services are NOT subject to satisfaction of the annual deductible.

- For **outpatient services other than surgery, lab tests, or X-rays at a PPO hospital**, the annual deductible applies. The Plan pays 80% of the PPO hospital charges (and 100% after you have satisfied the Plan's annual $500 out-of-pocket maximum).

- If you have **inpatient surgery, outpatient surgery, or an inpatient stay at a Non-PPO hospital,** the Plan pays 80% of Usual, Reasonable and Customary ("UCR") charges. The 20% not paid by the Plan DOES NOT count for purposes of your annual out-of-pocket maximum.

- **The list of PPO hospitals and doctors is subject to change. If you want to confirm that a particular hospital or doctor remains on the PPO list, contact Anthem Blue Cross at (800) 274-7767 or consult the Anthem Blue Cross website: www.bluecrossca.com.**

21

- **Lifetime Maximum**

The Plan's $3 million lifetime maximum was terminated effective November 1, 2010. There is no general lifetime maximum for the Self-Insured Medical Plan.

The Plan retains a separate lifetime maximum for treatment of infertility, which is $25,000 per couple.

- **Finding an Anthem Blue Cross PPO Doctor or Hospital**

To find a Doctor or Hospital in the Anthem Blue Cross Network call Anthem Blue Cross at **(800) 274-7767**; or Log onto the Blue Cross website at www.bluecrossca.com.

**Filing Claims**

To have your claims covered you or your doctor or hospital must file a claim with the Plan. In general, claims will be filed automatically by your provider on your behalf. If not, you must send your medical bills and completed claim form to the Plan for reimbursement at the address listed on the back of your ID card. You may obtain a claim form from the Administrator.

When you complete your claim, be sure to follow the form's instructions, and include all required information to ensure timely processing. Contact the Plan directly at the toll-free number listed on your ID card if you need assistance in filing a claim.

Further information regarding claims determinations timeframes and claims appeal procedures can be found in the *"Your Rights And Additional Information"* section on page 60.

- **Pre-Admission Certification**

"Pre-Admission Certification" is a utilization review process which certifies the medical necessity and length of stay for any hospital confinement. Under the Plan, pre-admission certification is required for all non-emergency hospital admissions.

To complete the pre-admission certification process, you (or your medical provider) must notify the Trust Fund's Review Organization (ANTHEM BLUE CROSS) prior to *any* hospital admission by calling (800) 274-7767.

Pre-admission certification only determines the **medical necessity** of a service or supply according to the Plan benefits and provisions: it does *not* determine whether the treatment is **covered by the Plan. The fact that a hospitalization has been pre-admission certified does not mean the service or supply is fully or even partially covered.** To be covered, the hospitalization must also qualify as a covered expense. See *"What The Medical Plan Covers"* below.

For **Emergency Admissions** you must contact ANTHEM BLUE CROSS at the number listed above within seventy two (72) hours of admission.

22

> **Please Note:** At the time of this printing Anthem Blue Cross is the Fund's PPO provider and Pre-Certification Review organization. However, the Board reserves the right to designate another entity and, if so, will duly inform Plan participants and dependents.

## What the Medical Plan Covers

The following is a summary of covered services, and the benefits that are paid for these services. Keep in mind that services or supplies are not covered unless prescribed by a physician and necessary for the care and treatment of an injury or a sickness (unless the covered service listed is specifically for preventive care).

> *REMEMBER* – For purposes of the Medical Plan benefits the percentage payable – 80% in most cases – assumes that you have not yet reached your annual out-of-pocket maximum (generally $500). For many Medical Plan benefits, once you have paid your deductible and your annual out-of-pocket maximum, your claim will be paid at either 100% of the PPO rate (if you use a PPO provider) or 100% of Usual, Reasonable & Customary ("UCR") charges if you use a non-PPO provider.

This information is divided into the following major categories:

- At The Doctor's Office
- At The Hospital
- Surgery
- Maternity Services
- Mental Health Services
- Substance Abuse Treatment
- Supplemental Accident Benefits

- Other Frequently Utilized Medical Services

For a description of the prescription drug benefits available under the Self-Insured Medical Plan, see *"Prescription Drug Benefits."*

- **At The Doctor's Office**

In addition to the Physician's/Doctor's Office benefits listed in the *"Benefits Summary"* above on pages 15-19, please note the following about your Doctor's Office benefit:

### Well Child Care

The Plan pays 80% of covered charges after the deductible is satisfied for dependent children for routine physical exams, immunizations and lab services in connection with physical exams until the dependent reaches age seventeen (17).

### OB-GYN Exams and Pap Smears

The Plan pays 80% of covered charges after the deductible; limited to one routine exam and one Pap smear test for cervical cancer per year.

### Outpatient X-ray and Lab Services

The Plan pays 80% of covered charges after the deductible.

- See *"Benefits Summary"* above on pages 15-19.

**Routine Physical Exams (other than for dependent children)** or exams required by your Employer are not covered.

23

- **At The Hospital**

In addition to the Hospital office benefits listed in the *"Benefits Summary"* above on pages 15-19, please note the following about your Hospital benefit:

For inpatient hospitalizations, Hospital room and board is covered at the standard semi-private room rate or, when medically necessary, in an intensive care unit ("ICU"), a cardiac care unit ("CCU"), or similar specialized unit or room.

For Convalescent Hospitals, room and board for up to sixty (60) days at the Convalescent Hospital's standard semi-private room rate, but only while confined as a registered bed patient. Confinement will not be covered unless it begins within seven (7) days following termination of a Hospital Confinement of at least five (5) days. All periods of Convalescent Hospital confinement during any disability will be considered one confinement.

- **Surgery**

The Plan covers elective and Emergency Surgery. For non-emergency surgery pre-admission certification (as described on page 22) is recommended.

- **Maternity Services**

*Office Visits*

The Plan pays 80% of covered facility charges after the deductible.

*Hospital Services*

The Plan pays 100% of covered charges.

Note: In accordance with federal law, the Plan may not restrict benefits for any hospital length of stay in connection with childbirth for the mother or newborn child to less than:

- Forty eight (48) hours following a normal (vaginal) delivery, or
- Ninety six (96) hours following cesarean section.

However, federal law does not prohibit a hospital or doctor from discharging the mother or newborn earlier with the mother's consent. In addition, the Plan may not require that a provider obtain pre-authorization to prescribe a length of stay that does not exceed the periods (48 or 96 hours) outlined above.

- **Mental Health Services**

**Mental Illness** (see *"Definitions"* section of this SPD) the Plan pays 80%. (NOTE: All mental health diagnoses for dependents under age sixteen (16) are deemed by the Plan as "Mental Illness.")

For purposes of any other mental health treatment if you do not have a condition that meets the Plan's definition of "mental illness" the Plan pays 50% of the PPO Contract Rate for PPO Contract providers and 50% of Usual, Reasonable and Customary ("UCR") charges for outpatient treatment by non-PPO providers. Individual sessions will be covered up to a maximum of fifty (50) visits per year.

- **Substance Abuse Treatment**

*Treatment for alcoholism and chemical dependency for all Plan participants*

24

*and dependents – including HMO enrollees – is provided through the Teamsters Assistance Program ("TAP"). To reach TAP call (510) 562-3600.*

TAP pre-authorization is required for any treatment of alcohol or chemical dependency and such treatment is limited to two (2) courses of treatment per lifetime. A "course of treatment" is the inpatient and/or outpatient treatment prescribed for a diagnosis of alcohol or chemical dependency or abuse.

- **Supplemental Accident Benefits**

If you or your dependent is injured in an accident, the Plan will pay an additional benefit of $500 (in excess of the amounts payable under all other Plan benefits described) per accident for payment of expenses incurred by you or your dependents.

This benefit can be used for any covered expense incurred within ninety (90) days after a non-occupational accident including, but not limited to, hospital confinement, treatment by a physician, surgeon's fees, laboratory and X-rays, and the services of a Registered Graduate Nurse.

This benefit is not payable for sickness, and only applies to hospital and/or medical bills due to an accident.

- **Other Frequently Utilized Medical Services**

For your convenience, the following lists many other commonly prescribed medical services that are covered under the Medical Plan. This list is only a summary and may not reflect all limitations or exclusions.

- **Allergy Injections** – Covered when administered at a physician's office.

- **Ambulance** – Covered for services to and from the nearest facility equipped to provide the required treatment when the service is provided by a licensed professional ambulance and is land transportation, except where an emergency exists and the resulting injuries make use of an air ambulance medically necessary.

- **Chemotherapy**

- **Chiropractic Treatment** – Charges incurred for chiropractic treatment will be paid as shown on the Schedule of Benefits. Covered Medical Expenses include the following procedures:
  (1) Spinal manipulation;
  (2) Adjunctive therapy;
  (3) Vertebral alignment; and
  (4) Spinal column adjustments.

- **Durable Medical Equipment** – Includes the rental or purchase of equipment or FDA-approved devices (at the Plan's discretion) that are medically necessary to aid in a covered person's recovery, mobility and/or the support of life.

- **Hearing Aids** (including cochlear implants) – Required as a result of congenital defect, illness, or injury.

- **Home Health Care** – Covered for a up to a maximum of ninety (90) days following discharge from a Hospital or

25

Convalescent Hospital if provided in the individual's home by a home health care agency. (NOTE: There is no coverage for custodial care.)

- **Hospice Care** – Covered for up to one hundred eighty (180) days of inpatient care provided in a hospice facility or outpatient care provided at the patient's home.

- **Hospice Counseling** – Covered up to $750 per family, as is bereavement counseling, up to $250 per family (when used within three (3) months after the death of the covered family member). Other related services and other charges made by a hospice care agency may also be covered if provided as part of a hospice care program.

- **In-Vitro Fertilization** – Covered up to maximum listed on page 17 upon submission of medical records establishing participant or covered spouse or domestic partner's infertility.

- **Mammograms** – Routine mammograms paid at 80% – limited to one (1) baseline mammogram for women between ages thirty five (35) and thirty nine (39), once every two (2) calendar years for women between ages forty (40) and fifty (50), and once every calendar year after age fifty (50). Non-routine mammograms covered if medically necessary.

- **Mastectomy** – Includes:

  (1) Reconstruction of the breast on which the mastectomy has been performed;

  (2) Surgery and reconstruction of the other breast to produce a symmetrical appearance; and

  (3) Prosthesis and treatment of physical complications for all stages of a mastectomy, including lymphedema.

- **Organ Transplants** – Including coverage of the medically necessary care related to the donor (regardless of whether the donor is a Plan participant or covered dependent).

- **Osteoporosis Treatment** – Covered for all FDA-approved treatment, including bone mass measurement technologies, as deemed medically necessary by a doctor.

- **Physical or Occupational Therapy** – Covered when provided by a licensed or certified physical and/or occupational therapist.

- **Private Duty Nursing** – Covered when provided by a Registered Nurse ("R.N."), a Licensed Vocational Nurse ("L.V.N."), or Licensed Practical Nurse ("L.P.N.").

- **Prostate Specific Antigen ("PSA") Testing**

- **Prosthetics** (external) – Covered for non-dental use, such as artificial limbs or eyes; replacement of such devices will be covered only if required by a physical change, such as the growth of a child, or as ordered by the attending doctor in connection with mastectomy.

- **Radiation Therapy**

- **Second Surgical Opinion** – A "Second Surgical Opinion" means an evaluation by a second Doctor Board Certified in the medical specialization related to the proposed surgery covered by the Plan. The second surgeon's evaluation includes review of all tests and records on which the surgery was recommended and may include a physical exam and/or additional tests.

  Limits applicable to Second Surgical Opinions: The following will not be covered – (1) Surgery or treatment rendered by the second surgeon; (2) More than two Second Surgical Opinions; (3) Second Surgical Opinions rendered without a physical examination.

- **Skilled Nursing Facility** – Coverage for up to one hundred (100) days per calendar year provided while the individual is confined following an illness, injury or hospitalization; includes room and board, and other eligible expenses.

- **Temporomandibular Joint ("TMJ") Dysfunction** – Treatment for TMJ or any other treatment of the face, neck or head for non-cosmetic purposes are covered if the procedure treats a condition caused by congenital deformity, injury or illness; charges for intraoral prosthetic devices are excluded.

**What The Medical Plan Does *Not* Cover**

The services listed below are ***not*** covered by the Medical Plan:

- Any medical treatment, hospital confinement or any portion of medical treatment or a hospital confinement that is not medically necessary.

- Charges in excess of what the Plan determines to be Usual, Reasonable and Customary ("UCR").

- Custodial care.

- Charges incurred for a treatment that is not generally accepted by the medical profession, or is listed as experimental, under investigation, or limited to research:
  1. By the federal Food and Drug Administration ("FDA"), the American Medical Association ("AMA"), the Diagnostic and Therapeutic Technology Assessment ("DATTA"), or the Office of Medical Application of Research of the National Institute of Health Office of Technology Association ("OMT"); or
  2. If a treatment has not been addressed by one of the organizations listed above, the Plan may determine if a treatment is appropriate based on the advice of its medical review department and/or an independent medical reviewer or other medical experts.

- Charges incurred for surgery to the eye to correct a refractive error, such as radial keratotomy, or charges

27

incurred for the purchase or fitting of eyeglasses or contact lenses. However, charges incurred for contact lenses or eyeglasses required immediately following and as a result of cataract surgery will be considered a covered medical expense. Note that such charges may be covered as Vision benefits.

- Charges incurred in connection with treatment that is cosmetic, other than:
  1. Reconstructive surgery to restore tissue damaged by injury or illness, including surgery to one or both breasts to reestablish symmetry following a mastectomy; or
  2. Treatment of a child to correct a congenital disease or anomaly, including an oral defect.

- Charges made by an individual who usually lives in the same household as the covered person, or who is a member of his or her immediate family, or the immediate family of his or her spouse.

- Charges which a covered person is not legally obliged to pay; or treatment which he or she obtains, or is entitled to obtain, under any plan or program without charge. This will include charges for treatment which are provided or paid for by the federal government at a Veteran's Administration facility for:
  1. Injury or illness related to a covered person's military service, or

  2. The covered person, or his or her dependents, if the covered person retired from the armed services.

- Charges incurred as a result of an act of war, whether declared or not, or any related act; charges as a result of participation in a riot of civil disorder.

- Charges incurred as a result of:
  1. An injury which arises out of or in the course of any employment with any employer, or
  2. An illness for which the covered person is either entitled to benefits under any Worker's Compensation law or receives any settlement from a Worker's Compensation or occupational disease carrier.

- Charges arising out of the pregnancy of a dependent child (other than charges related to the complications of pregnancy).

- Drugs or medicines, except while confined to a hospital or that must be administered by a doctor in a clinical setting.

- Hearing aids or eyeglasses.

- Dental services and supplies, unless the expense is necessary for repair or alleviation of damage to natural teeth resulting from an accident.

- Routine nursery care furnished for a newborn child beyond the first forty eight (48) hours following a normal vaginal delivery or the first ninety six (96) hours following delivery by cesarean section.

28

- Treatment of any illness or injury if you are not under the regular care of a doctor.

- Elective abortion, except where the life of the mother is in danger if the procedure is not performed.

- Charges relating to change of sex surgery or any complication resulting there from.

# PRESCRIPTION DRUG BENEFITS

If you are enrolled in the **Self-Insured Medical or Kaiser** options, you are eligible for prescription drug benefits administered by prescription benefits manager, **CVS Caremark**, described here. If you are enrolled in the **UnitedHealthcare** option, your prescription drug coverage is through your HMO and your prescription coverage is described in the UnitedHealthcare *Explanation of Coverage.* The Plan pays benefits for drugs that have been prescribed as a result of an accidental injury, illness or pregnancy.

Prescription drug benefits are available through a pharmacy and through mail order.

## Obtaining Your Retail Prescription Drugs

When your doctor writes a prescription, you may fill it at one of the Plan's participating pharmacies. Call (800) 770-8014 for a list of participating pharmacies or the location of a participating pharmacy near you.

At the participating pharmacy, simply present your CVS Caremark ID card to the pharmacist. The Plan pays for all lawfully prescribed, FDA-approved drugs not found under the heading on page 31, "*What the Prescription Drug Program Does Not Cover*": there is no "formulary" of approved drugs. The Plan pays 100% of the cost of a prescription without copayment.

- **Using The Mail Order Program**

Prescriptions for a supply of "Maintenance" drugs of one hundred (100) days or more can be obtained through the mail order program offered by CVS Caremark. Maintenance drugs are those taken regularly (usually daily), such as blood pressure medication, allergy medications, oral contraceptives, etc.

To obtain drugs through the mail order program, contact CVS Caremark for an order brochure and a patient profile form at (888) 321-2281. Then, complete the required information and enclose it with your doctor's prescription in the postage-paid envelope.

- **Coverage of Injectables and other "Specialty" Drugs**

"Injectables" are any drugs – other than injectable drugs routinely prescribed for diabetes or Epinephrine used for allergic reactions – that are to be administered by injection.

"Specialty" drugs are high cost pharmaceutical products with special administration, handling and/or clinical support requirements. Specialty medications are typically prescribed for complex chronic conditions such as multiple sclerosis and rheumatoid arthritis, rare diseases such as hemophilia or pulmonary arterial hypertension, and diseases more prevalent in the general population, such as cancer. If you have any questions concerning whether your medication is considered a specialty medication subject

30

to these requirements, contact Caremark at (866) 814-5506.

If you are prescribed an Injectable or Specialty drug your doctor should call Caremark toll-free at (866) 814-5506 between 7 a.m. and 7 p.m. Central Time Monday through Friday to speak with an intake representative. Caremark pharmacists will consult with your physician by telephone to explain the medication and its storage requirements, precautions, potential adverse effects, dosing parameters and instructions for use. Caremark pharmacists may contact you throughout the duration of therapy to work with you and/or your doctor to foster proper use of the medication and encourage appropriate management of any possible side effects.

After consultation with your doctor Caremark may suggest alternatives to the Specialty drug; however, the decision regarding whether to prescribe a Specialty or Injectable drug remains your doctor's to make.

- **Coverage of Drugs Available Without a Prescription**

The following drugs, although available without a prescription, are covered only when prescribed in writing by a doctor:

- Diabetic supplies, including: insulin, insulin syringe, needles, sugar test tablets, sugar test tape, acetone test tablets, benedict's solution or equivalent;
- Compounded dermatological preparations, including ointments and lotions prepared by a pharmacist under a doctor's prescription;
- Anti-acids, including: aluminum hydroxide, with magnesium trisilicate, aluminum and magnesium hydroxide gel, calcium carbonate, magnesium carbonate suspension, and dihydroxy-aluminum aminoacetate;
- Colostomy apparatus;
- Eye and ear medications;
- Therapeutic vitamins; and
- Elixir terpin hydrate, epinephrine, ephedrine sulfate, ferrous sulfate.

- **Birth Control Pills**

The Plan covers Birth Control Pills for family planning at a participating pharmacy or through the mail order program.

- **What the Prescription Drug Program Does Not Cover**

There is no "formulary" or list of covered drugs. Generally, a drug will be covered if it has been approved by the Food and Drug Administration ("FDA") and not otherwise excluded by the Plan. The following lists what is not covered under the prescription drug program:

- Immunization agents (unless you establish that you have been exposed or are likely to be exposed to an illness for which there is an immunization);
- Biological serums;
- Blood or blood plasma;
- Drugs prescribed as a result of war or acts of war;

31

- Drugs furnished or payable under any plan or law of any government agency or organization, Worker's Compensation law, or under any insurance plan or similar plan;

- Drugs which can be obtained without a doctor's prescription or that are not dispensed by a licensed pharmacist;

- Drugs or medicines that when taken in accordance with the doctor's direction will exceed the 100-day period without the necessity of a refill; or any refill dispensed after one (1) year from the date of the original prescription;

- Drugs whose primary purpose is to promote or stimulate hair growth;

- Tretinoin in all dosage forms (e.g., Retin-A) for individuals twenty six (26) years of age or older;

- Smoking deterrent medications containing nicotine or any smoking cessation aids in all dosage forms;

- Growth hormones;

- Non-federal legend drugs, unless specifically allowed under the Plan;

- Therapeutic devices or appliances, including hypodermic needles, syringes (except for those used for injectable insulin), syringes (except for those used for covered injectable drugs or vitamins), support garments and other non-medical items, regardless of their intended use;

- Any charge for the administration of a prescription drug (that are not otherwise covered by the Plan's

coverage of Injectables or other Specialty Drugs);

- Drugs labeled "Caution – limited by federal law to investigational use," or experimental drugs, even if a charge is made to the covered person;

- Any drug dispensed during confinement in a hospital, rest home, sanitarium, extended care facility, skilled nursing facility, convalescent hospital, nursing home or similar institution which has on its premises a facility for dispensing pharmaceuticals;

- Infertility medications except to the extent covered under the Plan's Infertility Benefit described on page 26;

- Drugs or medicines prescribed for conditions or treatments not covered by the Plan's medical benefits;

- Investigational or experimental drugs or medicines unless all of the following conditions have been met:

1. The drug is prescribed for the treatment of a life-threatening condition. "Life-threatening" means either or both of the following:
   o Diseases or conditions where the likelihood of death is high unless the course of the disease is interrupted; and/or
   o Diseases or conditions with potentially fatal outcomes, where the end point of clinical intervention is survival.

32

2. The drug has been recognized for treatment of that condition by at least one of the following:

   o The American Medical Association Drug Evaluations;

   o The American Hospital Formulary Service Drug Information;

   o The United States Pharmacopeia Dispensing Information (Volume 1 entitled "Drug Information for the Health Care Professional");

   o Two articles from major peer review medical journals that present data supporting the proposed "off label" use or uses as generally safe and effective (unless there is clear and convincing contradictory evidence presented in a major peer reviewed journal).

- Diet medications, appetite suppressants, dietary or nutritional supplements which can be purchased without a prescription.

33

## THE HMO MEDICAL OPTIONS

The Trust offers medical coverage under two Health Maintenance Organizations ("HMOs") as alternatives to the Self-Insured Medical Plan. They are:

- Kaiser Permanente
- UnitedHealthcare

### How the HMOs Work

HMOs emphasize preventive care, while also offering comprehensive medical coverage. To receive medical care, you and your dependents must use your HMO's doctors and facilities.

- UnitedHealthcare will require you to designate a Primary Care Physician ("PCP") from a list of its approved physicians. Your PCP will coordinate all of the care you receive through the HMO.
- Kaiser Permanente is a "staff model" HMO and may not require you to use a PCP; however, you must obtain all your care at Kaiser's facilities.

Other features of the HMOs include:

- No annual deductibles; the HMOs cover most services (but HMO coverage is subject to different annual out-of-pocket maximums – see the chart on page 35); and
- No claim forms to file (in most instances).

### Payment Provisions

The HMOs generally pay 100% of the cost of most covered services. Refer to your HMO plan booklet for additional details.

### What the HMOs Cover

Many of the services covered under the HMOs have been summarized in the chart, found on the next page. This list is not intended to be exhaustive and any questions should be referred to the Plan booklet (the HMO's "Explanation of Coverage" ("EOC")) you received as an HMO participant or to the HMO directly. HMO Plan booklets are also available at the Administrator's Office.

### What the HMOs Do Not Cover

See the HMO's *Explanation of Coverage* for the list of applicable exclusions. However, it is important to remember that, except in emergencies that occur outside your HMO's service area, you must receive all of your care through your HMO to be eligible for benefits.

If you have any questions about your HMO coverage, contact your HMO directly or refer to the HMO "Explanation of Coverage" booklet you received as an HMO participant.

34

## HMO BENEFITS COMPARISON CHART

| HMO Services | Kaiser Permanente | | UnitedHealthcare | |
|---|---|---|---|---|
| Providers | Must use Kaiser providers | | Must use UnitedHealthcare providers | |
| Annual Deductible | None | | None | |
| Annual Out-of-Pocket Maximum | One person: <br> Two or more persons: | $1,500 <br> $3,000 | Individual: <br> Family (three or more persons): | $800 <br> $2,400 |
| Lifetime Maximum | None | | None | |
| Hospitalization | 100% | | 100% | |
| Diagnostic X-Ray and Laboratory | 100% | | 100% | |
| Doctor Office Visits | 100% | | 100% | |
| Surgery | Outpatient or Inpatient: | 100% | Outpatient or Inpatient: | 100% |
| Pregnancy | Prenatal office visits: <br> Inpatient care: | 100% <br> 100% | Prenatal office visits: <br> Inpatient care: | 100% <br> 100% |
| Home Health Care | 100% (with prior approval) | | 100% | |
| Skilled Nursing Facility | 100% (up to 100 days per benefit period) | | 100% (up to 100 consecutive calendar days) | |
| Hospice Care | 100% | | 100% | |
| Preventive Care | Well child care: <br> Immunizations: <br> Annual GYN: <br> Physical exam: <br> Mammograms: | 100% <br> 100% <br> 100% <br> 100% <br> 100% | Well child care: <br> Immunizations: <br> Annual GYN: <br> Physical exam: <br> Mammograms: | 100% <br> 100% <br> 100% <br> 100% <br> 100% |
| Emergency Room | 100% | | $35 copayment (waived if admitted) | |
| Prescription Drug | Same as Insured Plan described on pages 30-33 | | $5 copayment for up to a 30-day supply from a UnitedHealthcare participating retail pharmacy <br> $5 copayment for up to a 90-day supply from a UnitedHealthcare Mail Service Pharmacy | |
| Mental Health | <u>Outpatient</u>:  100% for individual and group visits up to 20 combined visits per calendar year <br> <u>Inpatient</u>:  100% up to 45 days per calendar year | | <u>Outpatient</u>:  100% up to 30 visits per calendar year <br> <u>Inpatient</u>:  100% up to 30 days per calendar year | |
| Substance Abuse Through TAP *not* the HMO | See page 24 under the heading "*Substance Abuse Treatment*" | | See page 24 under the heading "*Substance Abuse Treatment*" | |

35

## DENTAL BENEFITS

The Trust Fund provides a choice of three dental options:

- The Newport Dental Option (formerly known as "BrightNow!"), or

- The DeltaCare Option, or

- The Self-Insured Dental Program.

This section describes how each dental option works and reviews the major benefit provisions of each plan.

## DENTAL BENEFITS COMPARISON CHART

| Dental Services | Self-Insured Dental Program | DeltaCare | Newport Dental |
|---|---|---|---|
| Providers | Your choice of dentist | Must use DeltaCare USA dentists to receive dental care | Must use Newport dentists to receive dental care |
| Annual Deductible | None | None | None |
| Annual Out-of-Pocket Maximum | None | None | None |
| Annual Maximum | None | None | None |
| Lifetime Maximum | None (except Orthodontia) | None (except Orthodontia) | None |
| Percentage of Claims Covered | 90% of amount Plan determines to be Usual, Reasonable & Customary ("UCR") | Paid in full (subject to the limitations and exclusions of the benefit schedule) | Paid in full (subject to the limitations and exclusions of the Newport benefit schedule) |
| Orthodontia | 70% of UCR up to a lifetime maximum of $3,000 per person | Subject to $350 "start-up" fee; covers up to $1,800 in orthodontia services covered for adults and covered dependent children age 19 or older and up to $1,600 for dependents under age 19 | Co-pays limited to $250 for X-rays and study models and $5 per office visit |
| Preventative Dentistry<br><br>Teeth cleanings, fluoride application, annual exams | Cleanings once in a six month period and dental exam once in a twelve month period | Cleanings once in a six month period and dental exam once in a twelve month period | Cleanings once in a six month period and dental exam once in a twelve month period |

## DENTAL BENEFITS COMPARISON CHART

| Dental Services | Self-Insured Dental Program | DeltaCare | Newport Dental |
|---|---|---|---|
| **Diagnostics**<br><br>Oral exams, X-rays | Unless special need is shown, full-mouth X-rays are covered only once in a 5 year period<br><br>Bitewing X-rays are covered only twice in a 12 month period for children to age 18, or once every 12 months for adults age 18 and over | Full mouth X-rays are limited to one set every 24 consecutive months and include any combination of periapicals, bitewings and/or panoramic film<br><br>Bitewing X-rays are limited to no more than one series of four films in any six month period | X-rays according to the frequency as recommended by the FDA, unless additional X-rays are determined by the treating dentist to be necessary for the dental health in accordance with professionally recognized standards of dental practice |
| **Cosmetic Dentistry** | Generally excluded; however, crowns, jackets, inlays, onlays and cast restorations are covered benefits on the same tooth only once every 5 years | Generally excluded; however, crowns, inlays, onlays and cast restorations are covered benefits on the same tooth only once every 5 years | Excluded by the Plan but 35% discount available through Newport Providers<br><br>Crowns are not covered when a filling can adequately restore the dental health in accordance with professionally recognized standards of dental practice |
| **Endodontics**<br><br>Treatment of teeth, pulp and roots | Generally covered if required in accordance with professionally recognized standards of dental practice | Generally covered if required in accordance with professionally recognized standards of dental practice | Apicoectomies are a covered benefit for the 6 anterior teeth or canine to canine |
| **Periodontics**<br><br>Treatment of the teeth, gums and jaw | Implants (appliances inserted into bone or soft tissue in the jaw, usually to anchor a denture) are not covered by the Plan<br><br>However, if implants are provided along with a covered prosthodontic appliance, the Plan will allow the cost of a standard partial or complete denture toward the cost of the implants and the prosthodontic appliances | Periodontal scaling and root planing are limited to four quadrants during any 12 month period<br><br>Implants (appliances inserted into bone or soft tissue in the jaw, usually to anchor a denture) are not covered | Subgingival scaling and root planing is covered once every 6 months, unless necessary for dental health in accordance with professionally recognized standards of dental practice |

37

## DENTAL BENEFITS COMPARISON CHART

| Dental Services | Self-Insured Dental Program | DeltaCare | Newport Dental |
|---|---|---|---|
| **Prosthodontics**<br><br>Construction or repair of fixed bridges, partial dentures and complete dentures | Prosthodontic appliances are covered only once every 5 years, unless the Plan concludes that there has been such an extensive loss of remaining teeth or a change in supporting tissues that the existing appliance cannot be made satisfactory | Copay of up to $50.00 may apply<br><br>The replacement of an existing inlay, onlay, crown, fixed partial denture (bridge) or a removable full or partial denture is a benefit once every 5 years | Replacement of an existing appliance will be covered if the existing appliance can not be made serviceable consistent with professionally recognized standards of dental practice<br><br>Relines of full or partial dentures are limited to twice per calendar year, unless the treating Dentist determines that additional relines are necessary for the dental health in accordance with professionally recognized standards of dental practice |
| **Oral Surgery**<br><br>Extractions and other surgical procedures, including pre- and post-operative care | Generally covered if required in accordance with professionally recognized standards of dental practice | Generally covered if required in accordance with professionally recognized standards of dental practice | Extractions are a covered benefit when the procedure is performed to remove teeth that are diseased or otherwise unreasonable consistent with professionally recognized standards of dental practice |
| **Sealants**<br><br>Topically applied acrylic, plastic or composite material used to seal developmental grooves and pits in teeth for the purpose of preventing dental decay | Limited to dependent children under age 14<br><br>Applicable to posterior teeth only | Benefits for sealants include the application of sealants only to permanent first and second molars with no decay, with no restorations and with the occlusal surface intact, for first molars through age nine and second molars through age 15<br><br>Benefits for sealants do not include the repair or replacement of a sealant on any tooth within 3 years of its application | 35% discount with Newport Providers |
| **For More Details** | See description of specific benefits below or call the Administration Office with questions | See Evidence of Coverage and Disclosure Form for complete details | See Evidence of Coverage and Disclosure Form for complete details |

38

## How the DeltaCare and Newport Dental Programs Work

The DeltaCare and Newport Dental options provide comprehensive dental coverage and are designed like a medical HMO, meaning that you must use a dentist selected from the DeltaCare or Newport Dental network of dentists.

- **Choice of Provider**

If you choose the DeltaCare Program, you and each covered family member must select and use a DeltaCare dentist. If you choose the Newport Dental Program you and each covered family member must select and use a Newport dentist to receive benefits. Each family member can choose a different dentist but they must be located at the same DeltaCare or Newport facility. You will automatically receive a listing of the DeltaCare or Newport dental offices in your area when you first become eligible for coverage and you may log on at www.deltadentalca.org/pmi or www.brightnow.com for an up-to-date listing.

- **Payment Provisions**

Under the DeltaCare and Newport Dental options, there is no annual deductible and benefits are paid at 100% for most preventive and diagnostic care services. A copayment may be required for routine care and major care.

## What the DeltaCare and Newport Dental Options Cover

Please refer to the "*Dental Benefits Comparison Chart*" on pages 36 to 38 and the DeltaCare or Newport Dental booklets. Plan booklets are also available at the Administrator's Office.

## What the DeltaCare and Newport Dental Program *Do Not* Cover

Please refer to the DeltaCare or Newport Dental booklets for the Plan exclusions and limitations. Plan booklets are also available at the Administrator's Office.

### The Self-Insured Dental Program

- **How The Self-Insured Dental Program Works**

The Program provides comprehensive dental coverage, from preventive and basic care, to major care and orthodontia.

*Choice Of Provider*

You may use any licensed dentist.

*Payment Provisions*

There is no annual deductible and no annual benefit maximum.

The amount the Plan pays is based on "Usual, Reasonable and Customary" charges (see the section of this booklet entitled *"Definitions"* for the Plan's definition of this term). The Plan will reimburse you for the applicable percentage of covered charges which it will base on its determination of Usual, Reasonable and Customary ("UCR") charges.

39

### Predetermination Of Benefits

Because dental services can be costly, the Plan will let you and your dentist know in advance what the Plan will pay for the covered treatment or service and, if so, what the Plan considers UCR charges for the treatment.

If you anticipate that the recommended dental services are likely to cost more than $300 or if the treatment is extensive – for example, involving crowns or bridges – you should file a predetermination of benefits with the Plan so that it is clear what will be paid before the treatment is rendered and the costs incurred. Most dentists are familiar with the process and will assist you, as outlined below:

- After an initial examination, your dentist will recommend any needed treatment. If the treatment is likely to cost more than $300, you and your dentist should proceed with the remaining steps.

- Your dentist must submit an Attending Dentist's Statement, requesting a predetermination from the Plan for the recommended services.

- Your dentist will receive a Notice of Predetermination from the Plan outlining the amount the Plan will pay. (Note that this Predetermination is an estimate only.)

- You should review the information provided by the Plan with your dentist before you schedule any treatment.

**A predetermination does not guarantee benefits will be paid.** The predetermination is only an estimate of the amount the Plan will pay as long as you are eligible during the month in which the dental work is performed and meet all of the Plan's requirements at the time the planned treatment is completed. **If you are eligible when you obtain the predetermination but lose eligibility in the month in which the dental work is performed, the predetermination will not act to extend your eligibility in any way.**

### Filing Claims

You or your dentist must file a claim with the Plan for benefits to be paid and may obtain a claim form from the Plan Administrator.

When you complete your claim, be sure to follow the form's instructions, and include all required information to ensure timely processing. Contact the Plan Administrator directly at the number listed on page 60 of this booklet and your ID card if you need assistance in filing a claim.

Further information regarding claims determinations timeframes and claims appeal procedures can be found in the *"Your Rights and Additional Information"* section on page 60.

- **What The Self-Insured Dental Program Covers**

The following is a summary of the services covered under the Self-Insured Dental Program and is intended to cover

40

treatment intended to prevent and eliminate oral disease, and to repair or replace damaged or missing teeth.

### Diagnostic and Preventive Care

For diagnostic and preventive care services, the Plan pays 90% of the amount determined to be Usual, Reasonable and Customary ("UCR") for that service. Diagnostic and preventive care benefits include:

- **Oral examinations** – Limited to two (2) examinations per 12-month period.

- **Full mouth X-rays** – Unless special need is shown, limited to one (1) set every five (5) years.

- **Bitewing X-rays** – Limited to two (2) series per 12-month period for children to age eighteen (18); limited to one (1) series per 12-month period for adults age eighteen (18) and over.

- **Prophylaxis** (cleanings) – Limited to two (2) examinations per 12-month period.

- **Topical application of fluoride** – Can include prophylaxis.

- **Space maintainers**

### Basic Care

For basic dental services, the Plan pays 90% of UCR charges, including:

- **Oral surgery** – Extractions and other surgical procedures, including pre- and post-operative care.

- **Restorative dentistry** – Amalgam, silicate or composite restorations (fillings) for treatment of carious

lesions (visible destruction of hard tooth structure resulting from the process of dental decay).

- **Endodontics** – Treatment of root pulp, including root canals.

- **Periodontics** – Treatment of the gums and bones that support the teeth.

- **Sealants** – (Limited to dependent children under age fourteen (14)) Topically applied acrylic, plastic or composite material used to seal developmental grooves and pits in teeth for the purpose of preventing dental decay. Applicable to posterior teeth only.

- **Adjunctive general services** – These services include general anesthesia, office visits for observation, office visits after regularly scheduled hours, therapeutic drug injections, treatment of post-surgical complications, and limited occlusal adjustment.

### Major Care

For major dental services, the Plan pays 90% of UCR charges, including:

- **Major restorative dentistry** – Crowns, jackets, inlays, onlays and cast restorations; covered once every five (5) years only if they are provided to treat cavities which cannot be restored with amalgam, silicate or direct composite (resin) restorations.

- **Prosthodontics** – Construction or repair of fixed bridges, partial dentures and complete dentures;

41

covered once every five (5) years only if provided to replace missing, natural teeth.

### Orthodontia

Orthodontia treatment is covered at 70% of the amount of Usual, Reasonable and Customary ("UCR") charges with a lifetime maximum benefit of $3,000 per enrollee. Covered treatment is limited to procedures using appliances or surgery to straighten or realign teeth, which otherwise would not function properly.

- **Self-Insured Dental Program Limitations**

The Indemnity Dental Plan limits coverage of the following:

- **Oral examinations** – No more than twice in a 12-month period.

- **Prophylaxes** (cleanings) – Fluoride treatments, or procedures which include cleanings – no more than twice in a 12-month period.

- Unless special need is shown, **full-mouth X-rays** – No more than once in a five-year period.

- **Bitewing X-rays** – No more than twice in a 12-month period for children to age eighteen (18), or once every twelve (12) months for adults age eighteen (18) and over.

- **Periodontal procedures that include cleanings** – Subject to the same limitations as other cleanings; cleanings of any kind are covered no more than twice in any 12-month period.

- **Crowns, jackets, inlays, onlays and cast restorations for the same tooth** – No more than once every five (5) years.

- **Prosthodontic appliances** – No more than once every five (5) years, unless the Plan concludes that there has been such an extensive loss of remaining teeth or a change in supporting tissues that the existing appliance cannot be made satisfactory.

- **Implants** (appliances inserted into bone or soft tissue in the jaw, usually to anchor a denture) – Are not covered by the Plan. However, if implants are provided along with a covered prosthodontic appliance, the Plan will allow the cost of a standard partial or complete denture toward the cost of the implants and the prosthodontic appliances when the prosthetic appliance is completed. If the Plan makes such an allowance, it will not pay for any replacement for five (5) years following the completion of the service and it will not cover the replacement unless medically necessary.

- If **orthodontic treatment** is begun before you become eligible for coverage, the Plan's payments will begin with the first payment due to the orthodontist following your eligibility date.

- Payments will stop when the first payment is due to the dentist following either a loss of eligibility, or if treatment is ended for any reason before it is completed.

- X-rays and extractions that might be necessary for orthodontic treatment are not covered by "Orthodontic Benefits," but may be covered under "Diagnostic and Preventive" or "Basic Benefits."

- **What The Self-Insured Dental Program Does Not Cover**

The following services are NOT covered:

- Services for injuries covered by Worker's Compensation or employer liability laws.

- Charges in excess of what the Plan determines to be Usual, Reasonable and Customary ("UCR").

- Services that are provided to the enrollee by any federal or state governmental agency, or are provided without cost to the enrollee by any municipality, county or other political subdivision, except Medi-Cal benefits.

- Services for cosmetic purposes or for conditions that are a result of hereditary or developmental defects, such as cleft palate, upper and lower jaw malformations, congenitally missing teeth and teeth that are discolored or lacking enamel.

- Treatment which restores tooth structure that is worn;  treatment which rebuilds or maintains chewing surfaces that are damaged because the teeth are out of alignment or occlusion;  or treatment which stabilizes the teeth.  Examples of such treatment are equilibration and periodontal splinting.

- Prescribed drugs, or applied therapeutic drugs, premedication or analgesia.

- Experimental procedures.

- Charges by any hospital or other surgical or treatment facility and any additional fees charged by the dentist for treatment in any such facility.

- Anesthesia, except for general anesthesia given by a dentist for covered oral surgery procedures.

- Grafting tissues from outside the mouth to tissues inside the mouth ("extraoral grafts"), implants (materials implanted into or on bone or soft tissue), or the repair or removal of implants.

- Services for any disturbance of the jaw joints (temporomandibular joints) or associated muscles, nerves or tissues.

- Charges for replacement or repair of an orthodontic appliance paid in part or in full by this Plan.

- Replacement of existing restoration for any purposes other than restoring active tooth decay or fracture of a restoration.

- Intravenous sedation under age fourteen (14).

- Occlusal guards and complete occlusal adjustment.

## Definitions

The following definitions apply to the Self-Insured Dental Program.

"**Attending Dentist's Statement**" – A form used by your dentist to request payment for dental treatment or predetermination for proposed dental treatment.

"**Benefits**" – Those dental services available under the Plan.

"**Covered Services**" – Those dental services to which the Plan will apply benefit payments.

"**Enrollee**" – An eligible employee or dependent of an eligible employee who is enrolled in the Plan to receive benefits.

"**Maximum**" – The $3,000 lifetime limit the Plan will pay for orthodontic benefits.

"**UCR**" – Usual, Reasonable and Customary charges as defined on page 58.

44

## VISION BENEFITS

Vision benefits are provided through Vision Service Plan ("VSP") Plan "B".

### How The Vision Program Works

You may receive vision care services through VSP or non-VSP doctors but when you use a VSP doctor, you will generally receive greater benefits than you would if you use a non-VSP provider.

### Finding a VSP Provider

To find a Vision Service Plan Optometrist call VSP at (800) 877-7195;  or Log onto the VSP website at www.vsp.com.

### What The Vision Program Covers

- A comprehensive vision **exam** once every **twelve (12) months**,* including a refraction test to determine the need for glasses, binocularity analysis, and testing the overall health of the eyes and related optic structures.

- Additional testing for glaucoma and depth perception.

- Single vision, lined bifocal, lined trifocal or lenticular **lenses** once every **twelve (12) months**.*

- VSP fully covers eyeglass **frames** once every **twenty four (24) months**.* If you select a frame that exceeds the allowed amount, you will be responsible for payment of the difference.

- **Contact lenses** and the contact lens exam (fitting and evaluation) are covered (in lieu of lenses and a frame) once every **twelve (12) months**,*

regardless of whether you use a VSP doctor or not.  If you obtain contact lenses, you will not be eligible for new frames for twenty (24) months.

(* The 12- or 24-month limitation dates from the last date of service.)

See the Vision Benefit summary on page 18.

### When You Visit A Non-VSP Provider

An eye exam or treatment or the purchase of lenses, frames or contact lenses from a provider who is not part of VSP's network, is covered but your out-of-pocket costs are likely to be higher.

When you use a non-VSP provider, you will be reimbursed according to the schedule of benefits shown on page 18.  If the scheduled benefit is not enough to cover the entire cost of the service, you pay the remaining charges.  Note that the same frequency guidelines outlined under *"What the Vision Program Covers"* apply when you visit a non-VSP provider.

### Additional VSP Benefits

If you or your dependents break or lose glasses that have been furnished by the Plan before the applicable twelve (12) or twenty four (24) month limitation, you may obtain a second pair as a replacement.  A $10 deductible and all other Plan limitations apply to this second pair.

- **VSP Member Discounts**

VSP offers two standard discount programs:

45

- Additional pairs of prescription eyeglasses are available at a 20% discount from the doctor's usual and customary retail charges.

- A 15% discount on professional services is available from VSP doctors when contact lenses are purchased.

To take advantage of these discounts, simply return to the same VSP doctor who performed your last covered eye exam within twelve (12) months from the date of the exam.

- **How To Access Vision Care Services**

There are no claim forms to file when you use a VSP doctor. However, if you receive vision services from a non-VSP provider you must submit an itemized statement to VSP along with your bill.

To receive vision benefits, follow these steps:

- To obtain a list of VSP doctors call VSP at (800) 877-7195 or visit the VSP website at www.vsp.com. If you already have a vision provider, check the listing (or call your provider) to see whether he or she is a VSP doctor.

- Make an appointment and tell the optometrist's office that you are covered under VSP through the East Bay Drayage Drivers Security Fund. The VSP doctor will call VSP to verify your (or your dependent's) eligibility and plan coverage. If you are not eligible – for example, if you have already had an exam within the allotted time frame – the doctor's office will contact you to explain why, and to discuss your options.

*When you visit a:*

- **VSP doctor**, the doctor will perform an exam and itemize any non-covered charges that are your responsibility. The remainder of the charges will be paid by VSP.

- **Non-VSP provider**, you must pay the bill in full. Then within **six (6) months** of the date you received service you must mail an itemized receipt, together with the following information, to VSP:

  - Your name, address and Social Security Number
  - The patient's name and relationship to you (if other than you)
  - The patient's date of birth

Send this information to:
VSP
P.O. Box 997100
Sacramento, CA 95899-7100

If the scheduled amount is not enough to cover the full cost of services, you are responsible for the remaining charges.

**What The Vision Program Does Not Cover**

If you select any of the following, you will pay additional charges for:

- Blended lenses

- Contact lenses (except as previously described)

- Multifocal plastic lenses

- Oversize lenses

- Progressive multifocal lenses

- Coated or laminated lenses

- Frames that cost more than the Plan allowance

- Low vision care

- Lenses and frames which are lost or broken, except as permitted under *"Additional VSP Benefits"* on page 45

In addition, the Vision Program does **not cover** the following professional services or materials:

- Orthoptics or vision training and any associated supplemental testing

- Plano (non-prescription) lenses

- Two pair of glasses in lieu of bifocals

- Medical or surgical treatment of the eyes

- Any eye examination, or any corrective eyewear, required by an employer as a condition of employment

## LIFE, ACCIDENT & DISABILITY INSURANCE BENEFITS

The Plan provides for the following types of insurance coverage through an insurance contract with the Union Labor Life Company ("ULLICO"):

- Employee Life Insurance
- Dependent Life Insurance
- Accidental Death & Dismemberment ("AD&D") Insurance
- Weekly Disability Benefits

None of these types of insurance coverage can be continued under the COBRA self-pay provisions of the Plan described on page 9.

### Employee Life Insurance

The Employee Life Insurance benefit of **$7,500** is designed to pay a benefit to your beneficiary if you die while you are covered by the Plan.

- **Payment of Life Insurance Benefits**

Your beneficiary will receive payment after the insurance company approves the death claim. Payments are usually made in a lump sum but your beneficiary may choose to have all or a portion of the proceeds of your benefits paid in monthly installments. The amounts and terms of these installments will be determined at the time the election is made.

Generally, the benefits paid to your beneficiary will not be taxable. Proof of loss must be provided within ninety (90) days of the death or as soon as reasonably possible.

See the claims and appeals procedures, refer to *"Your Rights and Additional Information"* section on page 60.

- **Naming Your Life Insurance Beneficiary**

You name your beneficiary by filling out the form provided by the Administrative Office. If you are married and want to designate a beneficiary other than your spouse, you must first obtain your spouse's written consent. To change your beneficiary, you must submit your request in writing on the form supplied by the Administrative Office. The change request takes effect the day it is received by ULLICO. If you name more than one beneficiary, you must specify the percentage of the benefit you want paid to each person. If you do not, the beneficiaries will share the benefit equally.

If there is no surviving beneficiary or you fail to elect a beneficiary, death benefits will be paid to the first surviving family member, in the order listed below:

- Your spouse;
- Your children (including legally adopted children);
- Your parents;
- Your brothers and sisters;
- The executor or administrator of your estate.

- **Employee Life Insurance While You Are Totally Disabled**

If you become "totally disabled" before age sixty (60), your Life Insurance coverage will continue without payment of premium for as long as you provide yearly proof of total disability or until you reach the age of sixty (60).

For the purposes of this feature, you will be considered "totally disabled" when, due to illness or injury, you are prevented from working in any job for wage or profit, for which you are qualified due to your education, training or experience.

You must apply for extended coverage and provide proof of disability within one (1) year of your last day of work as an active employee. This proof must establish that your total disability has continued for at least nine (9) months from the date you were last actively at work. Once you have been approved for this waiver of premium and continuation of coverage, it will remain in effect for as long as your total disability continues (or until retirement). However, to remain eligible, you must submit satisfactory written proof of continuing total disability once annually.

If you die within one (1) year of your total disability without submitting proof of your disability, and premium payments have been paid until the date of death, benefits will still be paid to your beneficiary upon notice of your death.

Please note that ULLICO reserves the right to have you examined (at its own expense) by a doctor of its choice at any reasonable time during the course of your total disability. However, it will not require such an examination more than once a year.

- **Dependent Life Insurance**

The Dependent Life Insurance benefit is designed to pay a benefit to you or another beneficiary if a dependent dies while you are covered by the Plan. Dependent Life Insurance is **not** a covered benefit for domestic partners and/or their children. Unless you elect otherwise, you (the covered Employee) are automatically the beneficiary for the dependent life insurance benefit.

### Coverage Amounts

The Dependent Life Insurance coverage amount for your *spouse* is **$3,500**.

The Dependent Life Insurance coverage amount for your *children* is:

- Children age 6 months to age 20 – **$1,000**
- Children less than age 6 months – **$100**

### Payment Of Benefits

Payments made after the insured person's death are made in a lump sum, unless you elect to have the proceeds paid in installments under an optional plan that is then being offered by ULLICO. Generally, these benefits paid are not taxable. In order for the beneficiary to receive payment, the insurance company must approve the death claim. Union Labor Life requires proof of loss within ninety (90) days of the death or as soon as reasonably possible.

Dependent life insurance benefits will be paid to the first person or persons listed below:

- You (as the covered employee);
- Your spouse;
- Your children (including legally adopted children);
- Your estate.

Two or more persons entitled to benefits will be paid in equal shares.

## Employee Accidental Death & Dismemberment ("AD&D") Insurance

The Employee AD&D Insurance benefit is designed to pay a benefit to your beneficiary if you die or suffer a dismembering injury due to a covered accident while eligible for the Plan.

- **Payment Of Benefits**

If you die, or lose a limb or sight within ninety (90) days after (and as a result of) a covered accident, upon proof of loss, you or your beneficiary will receive a benefit based on the extent of loss as indicated in the table below.

No benefits are payable due to sickness or accidents that are a result of an injury, which arises out of or in the course of any employment with any employer.

- A "covered loss" means death or permanent loss of:
  - A hand, by the complete severance at or above the wrist joint
  - A foot, by the complete severance at or above the ankle joint
  - An eye, involving irrecoverable and complete loss of sight in the eye

| If You... | The AD&D Insurance Plan Pays... |
|---|---|
| Die | $5,000 |
| Lose both hands or both feet | |
| Lose sight in both eyes | |
| Lose one hand and one foot | |
| Lose either one foot or one hand and sight in one eye | |
| Lose one hand or one foot | $2,500 |
| Lose sight in one eye | |

*No more than $5,000 will be paid for all losses resulting from a single covered accident.*

- **AD&D Insurance Exclusions**

The AD&D Insurance does not cover any loss that is caused directly or indirectly by:

- Bodily or mental illness or disease of any kind
- Ptomaines or bacterial infections (except infections caused by pyogenic organisms which occur with and through an accidental cut or wound)
- Suicide or attempted suicide while sane or insane
- Intentional self-inflicted injury
- Participation in, or the result of participation in, the commission of an assault, felony, riot, or a civil commotion (except for an assault or felony determined to have been committed as an act of defense by the victim of domestic violence)
- War or act of war, declared or undeclared, or any act related to war, or insurrection
- Service in the armed forces of any country while such country is engaged in war

50

- Police duty as a member of any military, naval or air organization
- Travel or flight in or descent from any kind of air craft as a passenger, pilot, crew member or participant in training that is owned, operated, or leased by or on behalf of the policyholder, a participating employer or the armed forces, or being operated for any training or instructional purpose

**Weekly Disability Benefits**

If you become "totally disabled" due to an accidental injury or sickness and are unable to work, the Plan provides a benefit of $40 per week for up to twenty six (26) weeks.

You will be considered "totally disabled" as a result of bodily injury or sickness if your injury or sickness prevents you from engaging in any occupation for which you are qualified by reason of education, training or experience.

- Your weekly disability benefits will begin:
- Immediately after an accidental injury that results in total disability
- After seven (7) days for a condition which results in total disability, but was not caused by an accidental injury
- After four (4) days for a condition covered under Worker's Compensation which results in total disability, but was not caused by an accidental injury

If your disability (other than due to accidental injury) continues for more than

twenty one (21) days, you will receive a weekly disability benefit for the first week of your disability, which was not initially covered.

For weekly disability benefits to be paid, you must be under the direct care of a doctor. No benefits will be paid for disability due to intentionally self-inflicted injury.

If you have more than one (1) disability due to either (1) unrelated causes and separated by your return to work, or (2) related causes, but you have returned to work on a full-time basis for at least two (2) weeks in a row, then each disability will be considered a separate period of disability for determining your maximum benefit.

Disabilities, which do not meet the two conditions above, will be treated as one (1) period of disability and are subject to the maximum period of twenty six (26) weeks.

**Filing Claims for Disability, Life Insurance, and AD&D Insurance**

- **Filing An Initial Claim**

**To submit your claim call the Administration Office at (800) 422-6099 to request a claim form and return it to the Administrative Office. The Claims Administrator will issue a decision within ninety (90) days after receipt of the claim, unless an extension is necessary, in which case a decision will be issued within one hundred eighty (180) days. Written notice of the extension will be provided to you before the end of the**

initial 90-day period and will state the reason(s) for the extension and the date you can expect a decision.

- **Appealing a Denied Claim for Disability, Life Insurance, AD&D Insurance**

You (or your authorized representative) may appeal a denial of the claim. The written appeal must be submitted within sixty (60) days after notice of the denial of the claim to the following address:

> Pat Corcoran
> Delta Health Systems
> P.O. Box 1147
> Stockton, CA 95201-1147

The Administration Office will notify you of the final decision within sixty (60) days after receiving the request for review, unless the Claims Administrator requires an extension and notifies you of that extension before the end of the initial 60-day period, in which case the final decision will be made within one hundred twenty (120) days. The notice of extension will state the reason for the extension and when you can expect a decision.

52

## DEFINITIONS OF IMPORTANT WORDS

The following definitions may be helpful when reviewing this Plan.

### Accident, Accidental Injury

Physical injury resulting from a sudden, violent and external force which was not expected and could not have been reasonably foreseen or avoided.

### Administrator, Administration Office

The office of the Fund's contract administrator, Delta Health Systems, should be used for purposes of any oral or written communications with the Trust Fund.

> Pat Corcoran, Plan Manager
> Delta Health Systems
> P.O. Box 1147
> Stockton, CA 95201
> Phone: (800) 422-6099

### Calendar Year

The period of twelve (12) consecutive months beginning with the first day of January.

### Chiropractic Care

Treatment provided, supervised or directed by a licensed chiropractor (including neuromuscular and physical medicine) incurred while under a licensed chiropractor's care, including such care prescribed by a medical doctor and performed by a physical therapist.

### Complications of Pregnancy

All physical effects suffered which have been directly caused by your pregnancy but which would not, from a medical viewpoint, be considered the effects of a normal pregnancy. These include, but are not limited to, acute nephritis, nephrosis, cardiac decompensation, missed abortion, ectopic pregnancy which terminated, cesarean section, spontaneous termination of pregnancy which occurs during a period of gestation in which a viable birth is not possible, and related medical and surgical conditions.

### Convalescent Hospital

A properly licensed institution that (1) meets the definition of an extended care facility under Title XVIII of the Social Security Act, as amended; (2) is primarily engaged in providing skilled nursing care and related services for injured, disabled or sick persons.

### Cosmetic

Surgery or other treatment performed primarily to alter and reshape normal body structures in order to improve a covered person's looks.

### Covered Charges

For PPO Network Hospitals and Doctors, the Network fee for medically necessary services, supplies and treatment for illnesses or injuries covered by the Plan. For Non-PPO Hospitals and Doctors, the Usual, Reasonable and Customary ("UCR") charges for medically necessary

53

services, supplies and treatments for illnesses or injuries covered by the Plan.

## Custodial Care

Treatment, services or confinement, intended primarily to help the patient with daily living activities. Custodial care includes personal care such as help in walking, getting in and out of bed, bathing, eating (including tube or gastronomy), exercising, dressing, using the toilet or administration of an enema, homemaking, such as preparing meals or special diets, moving the patient, acting as a companion or sitter, and supervising medication which can usually be self-administered.

## Dependent

Your,

- legal spouse or domestic partner; and

- children, step children and legally adopted children, children placed with you for adoption, or children for whom you have been appointed legal guardian by court order, under age twenty six (26).

Effective August 1, 2010, "children" meeting the definition above under age twenty six (26) are under no obligation to be dependent on you (for federal or state tax purposes or otherwise) or enrolled full-time in school to remain eligible for the Plan as a "dependent." However, a child who is covered in his/her own employer-provided health care plan is ineligible for coverage as a dependent in this Plan.

No one other than those described above qualify as dependents.

## Disabled / Totally Disabled

See "Total Disability."

## Domestic Partner

A dependent who meets the eligibility requirements described on pages 4-5.

## Doctor

Also referred to as "physician." An individual licensed as a Doctor of Medicine ("M.D.") or Doctor of Osteopathy ("D.O."). Also includes any licensed or certified health care provider, as required by state law, for services which are:

- Within the scope of the health care provider's license or certificate, and

- A covered medical expense.

## Durable Medical Equipment

Equipment that is:

- Prescribed by an attending doctor,

- Designated for prolonged use,

- Not used primarily for non-medical purposes or used by other family members, and

- Not specifically excluded by the Plan.

## Emergency

The sudden unexpected onset of symptoms or a medical condition that is severe enough to require immediate medical attention without which the person's health would be in jeopardy, would have serious medical consequences, receive damage to bodily functions, or

54

have severe and permanent consequences to any bodily organ or part.

**Expense Incurred**

The fees and prices regularly and customarily charged for medical services and supplies generally furnished for cases of comparable natures and severity in the particular geographic area concerned. An expense is considered to be incurred on the date the service or supply is rendered or obtained.

**Experimental**

Any medical procedure, equipment, treatment or course of treatment, or drug or medicine that has not been,

- Recognized as conforming to safe and accepted medical or health practice;

- Fully subject to scientific assessment as to its effectiveness for the condition in question;

- Fully approved by a federal government agency at the time the services were rendered.

**Generic Drug**

A prescription drug that is not protected by trademark registration, but is produced and sold under the chemical formulation name.

**Home Health Care**

Services provided in a covered person's home under the following conditions:

- The covered person was confined in a hospital or skilled nursing facility

prior to the commencement of home health care services;

- Continued confinement in a hospital or skilled nursing facility would have been required if home health care services were not provided;

- A home health care treatment plan is established and approved by a doctor within fourteen (14) days after discharge from the hospital, and such treatment plan is for the same and related condition for which the covered person was confined; and

- Home health care services commence within fourteen (14) days following discharge from the hospital or convalescent hospital, after a hospital or convalescent confinement of at least five (5) days.

**Home Health Care Agency**

A private or public agency or organization licensed as a home health agency.

**Home Health Care Services**

Home health care services consist of, but are not limited to:

- Part-time or intermittent home nursing care provided by a Registered Nurse or Licensed Practical Nurse under the supervision of a Registered Nurse, if the services of a Registered Nurse are not available;

- Part-time or intermittent home health aide services which consist primarily of medical or therapeutic care for the patient by other than a Registered or Licensed Practical Nurse;

55

- Physical, occupational or speech therapy, if provided by the home health care agency;
- Medical supplies, drugs or medicines prescribed by a doctor and related pharmaceutical services, and laboratory services to the extent such charges or costs would have been covered under the Plan if the covered person had remained in the hospital or a skilled nursing facility.

## Hospice

A health care facility that provides a hospice care program in a separate facility and admits at least two (2), but not more than eight (8), patients who are unrelated, have no reasonable prospect of a cure, and have a life expectancy of not more than six (6) months.

## Hospice Care Program

A coordinated, interdisciplinary program for meeting the special physical, psychological, spiritual and social needs of terminally ill patients and their families.

## Hospice Care Services

Refers to any services that a hospital, related institution, home health care agency, hospice or other licensed facility provides under a hospice care program.

## Hospital

An institution that:

- Is primarily engaged in providing, by or under the supervision of physicians, inpatient diagnostic and therapeutic services for the diagnosis, treatment

and rehabilitation of injured, disabled or sick persons;

- Maintains clinical records on all patients;
- Has bylaws in effect with respect to its staff of physicians;
- Has a requirement that every patient be under the care of a physician;
- Provides 24-hour nursing service rendered or supervised by a registered professional nurse;
- Has in effect a hospital utilization review plan;
- Is licensed pursuant to any state or agency of the state responsible for licensing hospitals; and
- Has accreditation under one of the programs of the Joint Commission on Accreditation of Hospitals.

## Illness

A disorder or disease of the body or mind. "Illness" includes pregnancy, childbirth and related conditions.

## Injury

Bodily harm that is not the result of disease.

## Inpatient

Treatment provided while an individual is confined as a bed patient in a covered facility.

56

**Medically Necessary, Medical Necessity**

To be considered medically necessary, the treatment must be ordered by a doctor to diagnose or treat an injury or illness and is:

- Generally recognized in the treating physician's area of specialization as effective and essential to the treatment of the injury or illness for which it is ordered;

- Appropriate for the symptoms and consistent with the diagnosis;

- The appropriate level of care, and which:
  (1) Is approved in the most appropriate setting, based on the diagnosis and condition, and
  (2) Could not have been omitted without an adverse effect on the covered person's condition or the quality of medical care;

- Based on generally recognized and accepted standards of medical practice in the United States;

- Not considered experimental, investigatory, or primarily limited to research in its application to the injury or illness;

- Not primarily for scholastic, educational, vocational or developmental training;

- Not primarily for the comfort, convenience, or administrative ease of the doctor or other health care provider, or the covered person or his/her family or caretaker; and

- Not custodial care.

**Mental Health Condition, Mental Disorder**

Conditions that affect thinking, perception, mood or behavior. Such conditions are recognized primarily by psychiatric symptoms that appear as distortions of normal thinking or perception, moodiness, sudden or extreme changes in mood, depression or unusual behavior such as depressed behavior, highly agitated or manic behavior, physical manifestations.

Any condition meeting this definition is a mental or nervous illness or disorder, no matter what the cause of the condition might be, either physical, mental or organic, or through environmental cause, or any combination. Any condition meeting this definition is included in it, regardless of whether it produces physical or emotional symptoms.

**Medicare**

The medical benefits program provided by Title XVIII of the federal Social Security Act, as amended.

**Orthodontia**

Movement of and/or straightening of teeth to correct malocclusion.

**Outpatient**

Treatment that is provided when the individual is not confined overnight in a covered facility. This includes outpatient treatment at a covered facility as well as

visits to a doctor or other covered health care provider.

## Qualified Medical Support Order

A medical support order issued by a court of competent jurisdiction or through an administrative process established under state law that has the force and effect of law under that state, and which creates or recognizes the existence of a child's right to, or assigns to a child the right to, receive benefits for which a Plan participant is eligible.

When the Plan receives a child support order it will be reviewed and if the Plan determines that the order is a Qualified Medical Child Support Order ("QMCSO"), the child's enrollment as a dependent in your Plan will be automatic. If the order was issued in the form of a "National Medical Support Notice" and is subsequently determined to be qualified, you (and your child) will automatically be enrolled in the Plan option chosen by the applicable state child support enforcement agency. You may obtain detailed information on the Plan's procedures governing QMCSO determinations, without cost, from the Administrator's Office.

## Totally Disabled, Total Disability

"Totally disabled" has different meanings depending on whether you are covered as a Plan participant ("covered employee") or a dependent.

- If you are a covered employee you will be considered totally disabled while, as a result of bodily injury or illness,

you are prevented continuously from engaging in any occupation for which you are qualified by reason of education, training or experience.

- If you are covered as a dependent you will be considered totally disabled while, as a result of bodily injury or illness, you are unable to engage in your regular and customary activities and are not engaged in any occupation for wages or profit.

## Treatment

A treatment or course of treatment which is ordered and/or provided by a doctor to diagnose or treat an injury or illness including:

- Confinement and inpatient or outpatient services or procedures, and

- Drugs, supplies, equipment or devices.

## ULLICO

The Union Labor Life Insurance Company.

## Usual, Reasonable and Customary ("UCR")

A charge for treatment, which is the lesser of the following:

- The usual charge made by the provider for that treatment, or

- The prevailing charge made by other providers of similar professional standing within the same or a similar geographic area for that treatment.

If the usual or prevailing charge cannot be determined, the Plan will determine

58

what is a reasonable charge, taking into account:

- Any unusual complications of the injury or illness,
- The complexity and degree of professional skill required, and
- Other factors deemed pertinent by the Plan.

**Utilization Review**

Review of your treatment by the Plan's representative after treatment has begun. For hospital visits, acute inpatient care must be necessary for the treatment received or the seriousness of the patient's condition. If safe and effective care is available as an outpatient or in an alternative medical setting, the Plan will pay for the less expensive treatment.

**You**

The words "you" and "your" as used in this booklet are intended to refer to the covered employee/Plan participant.

## YOUR RIGHTS AND ADDITIONAL INFORMATION

This section provides you with important information about the East Bay Drayage Drivers Security Fund.

- **Plan Name & Address**

East Bay Drayage Drivers Security Fund Plan 1980
Pat Corcoran, Plan Manager
Delta Health Systems
P.O. Box 1147
Stockton, CA 95201
Phone: (800) 422-6099

The Plan's Employer Identification Number (for IRS purposes) is 94-6073020.

- **Type Of Plan/Collective Bargaining Agreements**

The Plan is an employee welfare benefit plan and provides medical, dental, vision, prescription drug, and life insurance benefits for eligible employees and dependents, plus accidental death and dismemberment and weekly disability benefits for eligible employees. The Plan is funded and maintained through monthly contributions from participating Employers paid on behalf of eligible employees and their covered dependents pursuant to a collective bargaining agreement. You and/or your dependents may, upon written request, obtain a complete list of Employers and Unions sponsoring the Plan, or information regarding whether a particular Employer or Union participates in the Plan and, if so, their address. A copy of any of the collective bargaining agreements providing for participation in the Plan

may be obtained from the Plan by written request addressed to the address listed above and is available for examination at the Administration Office during regular business hours.

- **Plan Administrator**

The Plan is administered by the Board of Trustees of the East Bay Drayage Drivers Security Fund, which contracts for administrative services with Delta Health Systems, a company that can be reached at the address listed above.

- **Plan Trustees**

As of the date of the printing of this SPD in 2011 the Trustees of the East Bay Drayage Drivers Security Fund are:

*Employer Trustees*

J.C. Kaspar
Kaspar Consulting Services
291 Dauphine Place
Los Altos, CA 94022

Jack Isola
Waste Management of Alameda County
2615 Davis Street
San Leandro, CA 94577

Richard Valle
Tri-CED
33377 Western Avenue
Union City, CA 94587

Denise Gasti
UPS
8475 Pardee Road
Oakland, CA 94621

*Union Trustees*

Marty Frates
Secretary-Treasurer
Teamsters Union Local 70
400 Roland Way
Oakland, CA  94621

Dominic Chiovare
President
Teamsters Union Local 70
400 Roland Way
Oakland, CA  94621

Rob Dias
Recording Secretary
Teamsters Local 70
400 Roland Way
Oakland, CA  94621-2012

Felix Martinez
Business Agent
Teamsters Local 70
400 Roland Way
Oakland, CA  94621-2012

- **Agent For Service Of Legal Process**

You may direct legal process for the Plan to the following agent:

> Pat Corcoran, Plan Manager
> Delta Health Systems
> P.O. Box 1147
> Stockton, CA  95201

> Mailing address:
> 1234 Oak Street
> Stockton, CA  95201

Legal process may also be directed to any member of the Board of Trustees.

- **Plan Year**

The Plan Year for all of the benefit options described herein is November 1 to October 31.

- **Plan Funding and Contributions**

The Plan is funded by monthly contributions from participating employers paid on behalf of eligible employees and their eligible dependents covered under collective bargaining agreements which provide for participation in the Plan.

The employer contribution is determined by the Board of Trustees under the authority of the East Bay Drayage Drivers Security Fund Agreement and Declaration of Trust and the collective bargaining agreements providing for contributions to the Trust Fund.

In certain circumstances, employees may be able to self pay for a period of time when they are not covered by employer contributions.  Plan assets are held in trust and benefits are funded through the Trust Fund.

Medical coverage (other than HMO coverage) and Life and Accidental Death and Dismemberment benefits are funded directly by the Trust Fund.  HMO benefits are insured through the respective HMO plan as are the dental programs offered through DeltaCare and Newport Dental. All other benefits are funded directly by the Trust Fund, although the Fund may use a third party, such as, CVS Caremark (for prescription drugs) or VSP (for vision benefits) to administer (pay claims, etc.) a specific type of benefit.

Plan assets are held in trust for the sole purpose of funding Plan benefits and paying the costs of Plan and Trust administration.

61

- **Discretionary Authority Of The Board Of Trustees**

The Board of Trustees reserves the right to make any determination of fact necessary or proper for the administration of the Fund and the Plan. Further, the Board has the power to construe and interpret the provisions of the Trust Agreement and the Plan including, but not limited to, those provisions of the Trust Agreement and/or the Plan relating to the eligibility of employees, retired employees, their dependents and beneficiaries, to receive benefits. Such determinations will be final and binding upon all parties, including employees, retired employees, their dependents and beneficiaries.

- **Deferral to Past Practice**

The description of benefits contained in this booklet is intended as a summary of benefits and if this summary inadvertently omits reference to any long standing Plan practice, such omission is not intended to indicate the Board of Trustees' intent to terminate such practice. In the event such an omission is discovered the Board will direct whether and how the Plan will conform to the omitted practice.

- **Future of the Plan**

The Fund and Plan were established and are maintained through collective bargaining. The Board of Trustees anticipates the Fund and the Plan will continue for as long as collective bargaining agreements so provide, or

until the bargaining parties elect to discontinue the Plan or the Fund.

The Board of Trustees reserves the right to change or modify the Plan at any time for any reason without specific approval of any person. Any change or modification of the Plan will not affect a claim incurred by an employee or dependent before the effective date of such change or modification.

If the Plan or Fund is terminated, the remaining assets will be used to continue to provide benefits until there are no assets remaining or will be used in a manner consistent with the purposes of the Plan. In no event will termination of the Fund or Plan result in a reversion of assets to any employer.

- **No Guarantee Of Plan Benefits**

Plan benefits are not guaranteed and there is no liability on the part of the Board of Trustees to provide payment over and above the amounts collected and available for such purposes. The Trustees reserve the right to change or discontinue the types and amounts of benefits described in this booklet and the eligibility rules in any manner in which they, in their sole discretion, determine to be prudent. The nature and amount of Plan benefits are always subject to the actual terms of the Plan as it exists at the time the claim occurs.

The benefits available to active employees and retired employees may be changed or eliminated at any time by action of the Trustees.

## DIRECTORY OF BENEFITS

| Name & Type of Program | Who is Responsible for the Cost of Claims? | Who Processes Your Claims? |
|---|---|---|
| East Bay Drayage Drivers Security Fund Medical Plan – medical benefits | East Bay Drayage Drivers Security Fund | Delta Health Systems<br>P.O. Box 1147<br>Stockton, CA  95201<br>(800) 422-6099 |
| CVS Caremark – prescription drug plan | East Bay Drayage Drivers Security Fund | CVS Caremark<br>367 Billy Mitchell Road<br>Salt Lake City, UT  84116<br>(801) 961-6186 |
| Kaiser Permanente HMO Plan – group health plan providing medical benefits | Kaiser Permanente<br>P.O. Box 1164<br>Oakland, CA  94606 | Kaiser Permanente<br>P.O. Box 1164<br>Oakland, CA  94606<br>(800) 464-4000 |
| UnitedHealthcare HMO Plan – group health plan providing medical and prescription drug benefits | UnitedHealthcare<br>P.O. Box 30968<br>Salt Lake City, UT  84130 | UnitedHealthcare<br>P.O. Box 30968<br>Salt Lake City, UT  84130<br>(800) 624-8822 |
| East Bay Drayage Drivers Security Fund – dental benefits | East Bay Drayage Drivers Security Fund | Delta Health Systems<br>P.O. Box 1147<br>Stockton, CA  95201<br>(800) 422-6099 |
| Newport Dental Plan – group dental plan providing dental benefits | Newport Dental Plan<br>888 West Ventura Blvd.<br>Camarillo, CA  93010 | Newport Dental Plan<br>888 West Ventura Blvd.<br>Camarillo, CA  93010<br>(800) 497-6453 |
| DeltaCare Dental Health Care Program – group dental plan providing dental benefits | PMI Dental Health Plan<br>12898 Towne Center Drive<br>Cerritos, CA  90703 | PMI Dental Health Plan<br>12898 Towne Center Drive<br>Cerritos, CA  90703<br>(800) 632-8555 |
| Vision Service Plan – group health plan providing vision benefits | East Bay Drayage Drivers Security Fund | Vision Service Plan<br>3333 Quality Drive<br>Rancho Cordova, CA  95670<br>(800) 852-7600 |
| Weekly Disability Plan – provides weekly disability benefits | East Bay Drayage Drivers Security Fund | Delta Health Systems<br>P.O. Box 1147<br>Stockton, CA  95201<br>(800) 422-6099 |
| Life and AD&D Insurance Plans – life insurance and accidental death plans | Union Labor Life Insurance Company<br>180 Montgomery Street, Suite 1100<br>San Francisco, CA  94101 | Union Labor Life Insurance Company<br>180 Montgomery Street, Suite 1100<br>San Francisco, CA  94101<br>(866) 795-0680 |

## CLAIMS & APPEAL
## PROCEDURES

You and your dependents must file an application or claim for benefits by completing the necessary forms (unless otherwise indicated). Claim forms are available from the Administrator or from Local 70.

Information about the Claims Administrator for each benefit provided by the Plan, including address and telephone number, can be found in the *"Directory of Benefits"* on page 63.

A claim will be considered to have been filed upon receipt by the Claims Administrator's Office (or other address listed on the claims form) provided that it contains all the necessary supporting documentation. If the form does not contain all necessary supporting documentation you will be informed what is missing and required to process the claim.

**Claims for benefits must be submitted in writing within ninety (90) days after the first date of service** (unless another date is given in this SPD). **Failure to submit a claim within ninety (90) days will not invalidate or reduce any claim if it is shown that it was not reasonably possible to submit the claim within ninety (90) days but was furnished as soon as reasonably possible. HOWEVER, IN NO EVENT, EXCEPT IN THE ABSENCE OF LEGAL CAPACITY, SHALL A CLAIM BE ACCEPTED LATER THAN ONE (1)** **YEAR FROM THE FIRST DATE OF SERVICE.**

### Filing Claims For Health Care Benefits (Medical, Dental, Vision, Prescription Drug)

To file claims for any of the Plan's health care benefits, follow the procedures as described in this section. The claims procedure you follow will depend on whether your claim for benefits is a claim involving urgent or concurrent care, a pre-service claim or a post-service claim.

- **Pre-Service and Urgent Care Claims**

A "Pre-Service Claim" is any claim for services not yet performed and which are not for urgent or concurrent care. An "Urgent Care Claim" is a claim for medical care or treatment where delay could seriously jeopardize your life or health or your ability to regain maximum function, or would, in the opinion of your physician, subject you to severe pain that can only be effectively managed through the requested course of treatment.

### *Filing An Initial Pre-Service Claim*

The Claims Administrator will issue a decision within fifteen (15) days after receipt of the claim. If an extension is necessary, then a decision will be issued within thirty (30) days. You will receive written notice of the extension before the end of the initial 15-day period, which will state the reason(s) for the extension and the date you can expect a decision. If an extension is necessary because you failed to submit the necessary information, the

notice will describe the required information, and you will have up to forty five (45) days to provide the requested information. The time period in which a decision will be issued is delayed from the date the extension was sent out until you respond. If you do not provide the requested information within the 45-day period, your claim will be denied.

### Filing An Urgent Care Claim

The Claims Administrator will issue a decision within seventy two (72) hours after receipt of the claim. If your claim is incomplete or you failed to follow the correct claims procedure, you will be notified within twenty four (24) hours after receipt of the claim. You will then have up to forty eight (48) hours to complete the claim. The Claims Administrator will issue a decision within forty eight (48) hours after your deadline to complete the claim, or after receiving your completed claim, if sooner. If you do not provide the requested information within the 48-hour period, your claim will be denied.

- **Appealing A Denied Pre-Service or Urgent Care Claim**

You (or your authorized representative) may appeal the denial of the claim. You (or your authorized representative) must file an appeal within *one hundred eighty (180) days* after your receipt of the notice of adverse decision. If you are appealing the denial of a Pre-Service Claim, the appeal must be made in *writing*. If you are appealing the denial of an Urgent Care Claim, you may request expedited

review by telephone or in writing, and submit information in support of your appeal by facsimile and/or telephone, as appropriate. You should include the reasons you believe the claim was improperly denied and all additional facts and documents you consider relevant in support of your appeal. If you don't appeal on time, you may lose your right to file suit in a state or federal court, because you have not exhausted your internal administrative appeal rights (which is generally a requirement before you can sue in state or federal court).

The Board of Trustees will make the decision on appeal. They will not defer to the initial adverse benefit determination and will consider all comments, documents and records, and other information you submit, even if they were not submitted or considered during the initial claim decision. Their decision on your appeal will be made based on the record, including any additional documents and comments you submit.

If your claim was denied on the basis of a medical judgment (such as the absence of medical necessity or the use of an experimental or investigational treatment), the Board will consult a health care professional with training and experience applicable to the relevant field of medicine. Upon request, you can obtain the name of any professional consulted and the advice (if any) given concerning your claim (even if the Board did not rely on this advice in making its decision).

You will receive notice of the decision on your appeal within *thirty (30) days* for

65

Pre-Service Claims and within *seventy two (72) hours* for Urgent Care Claims.

- **Post-Service Claims**

Any claim for health care benefits under the Plan that is not an Urgent Care Claim, a Pre-Service Claim, or a Concurrent Care Claim is considered a "Post-Service Claim."

### Filing An Initial Post-Service Claim

The Claims Administrator will issue a decision within thirty (30) days after receipt of the claim, unless an extension is necessary, in which case a decision will be issued within forty five (45) days. Written notice of the extension will be provided to you before the end of the initial 30-day period and will state the reason(s) for the extension and the date you can expect a decision.  If an extension is necessary because you failed to submit the necessary information, the notice will describe the required information, and you will have forty five (45) days to provide the requested information. The time period in which a decision will be issued is delayed from the date the extension was sent out until you respond. If you do not provide the requested information within the 45-day period, your claim will be denied.

### Appealing A Denied Post-Service Claim

You (or your authorized representative) may appeal a denial of the claim. You (or your authorized representative) must file a *written* appeal within *one hundred eighty (180) days* after your receipt of the notice of adverse decision.  You should include the reasons you believe the claim was improperly denied and all additional facts and documents you consider relevant in support of your appeal.  If you do not appeal on time, you may lose your right to file suit in a state or federal court, because you have not exhausted your internal administrative appeal rights (which is generally a requirement before you can sue in state or federal court).

The Board of Trustees will make the decision on appeal.  They will not defer to the initial adverse benefit determination and will consider all comments, documents, and records and other information you submit, even if they were not submitted or considered during the initial claim decision.  Their decision on your appeal will be made based on the record, including any additional documents and comments you submit.

If your claim was denied on the basis of a medical judgment (such as the absence of medical necessity or the use of an experimental or investigational treatment), the Board will consult a health care professional with training and experience applicable to the relevant field of medicine.  Upon request, you can obtain the name of any professional consulted and the advice (if any) given concerning your claim (even if the Board did not rely on this advice in making its decision).

Appeals of Post-Service Claims will be considered at the next regularly scheduled meeting of the Board of Trustees following receipt of the appeal. If, however, your request for review is

66

received within thirty (30) days of the *next* regularly scheduled Board meeting, your appeal will be decided at the *second* regularly scheduled Board meeting following receipt of your appeal. In special circumstances, review of your appeal may be delayed until the *third* regularly scheduled Board meeting following receipt of your appeal. You will be notified in writing if an extension is necessary. You will be notified of the decision on your appeal as soon as possible but no later than five (5) days after a decision on your appeal is reached.

- **Concurrent Care Claims**

In the case of a Concurrent Care Claim, where health care treatment is reduced or terminated before the end of the approved period of time or number of treatments, the Claims Administrator will notify you sufficiently in advance of the reduction or termination to allow you to appeal the decision and have the appeal decided before the benefit is reduced or terminated.

If an ongoing course of treatment was previously approved for a specific period of time or number of treatments, and you request to extend treatment in a non-urgent circumstance, your request will be considered a new claim and decided according to post-service or pre-service timeframes, whichever applies.

**Claims Appeals (other than Life or AD&D Insurance)**

- **Initial Denial Of A Claim**

If your claim is denied, in whole or in part you will receive written notice of an adverse decision which includes, (1) the specific reasons for the denial; (2) reference to the specific Plan provisions on which the denial is based; (3) if applicable, a description of any additional information required and why that information is required to perfect your claim; (4) a statement concerning your right to bring a civil action under ERISA following an adverse decision on appeal of the denial of your claim; and (5) the Plan's appeal procedures, including applicable time limits and your right to submit written comments, documents, and other information relating to the claim and request in writing to review or receive copies, free of charge, of Plan documents, records, or other relevant and non-privileged information.

The claims denial will also notify you of any internal rule, guideline, or similar criterion relied on by the Administration Office in its denial of your claim and that, upon request, you will be provided with a copy, free of charge, of such rule, guideline, or similar criterion. If your claim is denied based on a medical necessity or the use of experimental or investigational treatment other similar exclusion or limit, you will be provided, free of charge at your request, an explanation of how that exclusion or limit

and any clinical judgments apply to your claim.

The time period applicable to appeal of a denied claim depends on whether it is a "pre-service," "post-service," or "concurrent care" claim. See the discussion of "pre, post [and] concurrent" care claims above to determine how soon you must file an appeal and how long the Board of Trustees have to consider your appeal.

- **Denial Of A Claim On Appeal**

If your claim is denied on appeal, you will receive written notice stating the information described above under the heading *Initial Denial of a Claim*. You will be notified in writing if an extension is necessary. You will be notified of the decision on your appeal as soon as possible but no later than five (5) days after a decision on your appeal is reached.

If your final appeal is ultimately denied in whole or in part you have the right to file a lawsuit under ERISA (see page 73). Any such lawsuit concerning an appeal denied in whole or part on or after October 1, 2011 must be filed within one (1) year from the date of the Fund's notice of denial of the appeal or other final adverse determination, and also within any statute of limitations which may apply.

## Coordination Of Benefits

If you or your dependent is entitled to any benefits under another medical plan, the Coordination of Benefits ("COB") provision ensures that the total amount of benefits paid will not be more than 100% of the expense you incurred.

In no event will the amount of benefits paid under this Plan exceed the amount that would have been paid if there were no other plan involved. If you have dual coverage under this Plan (because you are eligible as an individual and as a dependent or as a dependent of two insured individuals), the total amount of benefits payable because of your dual coverage cannot exceed the total amount of expense covered by the Plan.

When a claim is made, the *primary* plan pays its benefits without regard to any other plan. Then, the *secondary* plan adjusts its benefits so that the total benefit will not be greater than the allowable expense. When determining whether this Plan or another group plan is the primary payer, the following will apply:

- The plan that covers you or your dependent as an employee pays benefits before the plan that covers you or your dependent as a dependent.

- The plan that covers you as an active employee will pay benefits before a plan that covers you as a laid-off or retired employee.

- The plan that covers you as an active employee or dependent will pay benefits before the plan that covers you under COBRA continuation coverage.

- In the case of a dependent child, the plan that insures the parent whose birthday (month and day) occurs

68

earlier in the calendar year will pay benefits first. When parents have the same birthday (month and day), the plan that has covered the dependent longer pays first (this rule does not apply if the other plan does not have this provision; in this case, the other plan shall determine the order of benefit payments).

- If you are separated or divorced, the order of payment for your dependents is:

  1. The plan of the natural parent with custody will pay benefits first;

  2. The plan of the stepparent with custody pays benefits before the plan of a natural parent without custody;

  3. The plan covering the natural parent without custody then pays.

  Note that the plan of the parent determined by a Qualified Medical Child Support Order ("QMCSO," see *Definitions* on page 58) to be financially responsible for health care expenses of the child pays first.

If these rules do not decide which plan's benefits are payable first, the plan that has covered the person for the longest time will be primary.

The Trust Fund has the right to obtain from and release to any insurance company, claims administrator, organization, or person, any benefit information necessary to determine whether the coordination provision applies.

- **If You Are Covered by the Plan *and* by Medicare**

If you (or your spouse) are eligible for coverage under Medicare while still receiving coverage under the Plan, your benefits may be affected.

In general, Medicare is the primary payer only for retirees age sixty five (65) and older. If you reach age sixty five (65) and are still an active employee covered under the Medical Plan and are eligible for Medicare, Medicare will be considered the secondary payer of benefits while the Medical Plan will be primary.

Medicare is also the secondary payer for an:

- Active employee's spouse who is over the age of sixty five (65);

- Active employee's covered dependent who is eligible for Medicare due to a disability (regardless of age); and

- Individual receiving treatment for end stage renal disease (up to the first thirty (30) months of treatment).

If you are entitled to Medicare benefits (either as result of turning age sixty five (65) or total disability), you may elect to have Medicare as the primary plan by so notifying the Plan. If you do so, your medical coverage under this Plan will end.

To determine the amount of reduction for purposes of coordination, the Plan will include all benefits for which the participant or dependent is eligible under Medicare Parts A and B. Such benefits will be considered payable under

69

Medicare, whether or not the participant or dependent has registered for Part A or enrolled in Part B.

## Right Of Reimbursement In Cases Of Third Party Liability

The Trust reserves the right to recover claim payments made under any of its Plans on behalf of an employee or dependent where the claim results from or is related to an injury or illness that is the responsibility of a third party. You are obligated to reimburse the Trust in full for any claims paid relating to such injury or illness. If you recover any amount from a third party and fail to repay the Trust for the claims it has paid, the Plan will deduct the amount paid from any of your future benefit claims as a set off.

What is a "third party" and when are they responsible for your injuries or illness? Here are some examples:

- If you are in an auto accident and the other driver is at fault the third party is the other driver and his/her insurance company.

- If you are in an auto accident and the other driver is uninsured, your auto insurance policy's "uninsured motorist's" provision is a third party for this purpose.

- If you are injured in an auto accident and covered under a "no fault" provision of your own insurance policy, your policy is the third party.

- If you are injured on the job, your employer's workers' compensation policy is the third party.

- If you fall in a store because there was a spill near a shelf that no one bothered to clean up, the store is the third party.

THE PLAN WILL PAY CLAIMS FOR EXPENSES INCURRED BECAUSE OF AN ILLNESS OR INJURY FOR WHICH A THIRD PARTY IS (OR MAY BE) RESPONSIBLE. BY SUBMITTING THE CLAIM FOR PAYMENT BY THE PLAN, YOU (OR YOUR SPOUSE OR CHILD, IF HE OR SHE SUFFERS THE ILLNESS OR INJURY) ARE DEEMED UNDER THE PLAN TO HAVE AGREED TO EACH OF THE FOLLOWING CONDITIONS:

- If you or your dependents sue or recover compensation, reimbursement, damages or any other payment of any kind from the third party for the illness or injury, the Fund has an equitable lien (a "security interest") on any amount(s) you or your dependents receive or may become entitled to receive from the third party (or the third party's insurance company) up to the amount of the Plan benefits paid because of the illness or injury. You must advise the third party that this is a condition of the Plan.

- You or your dependents will furnish the Fund with a copy of any complaint you or your dependents file to recover damages from a third party within no more than two days of the date of filing.

70

- If you or your dependents receive payment(s) of any kind from the third party (or from the third party's insurance company), you and/or your dependents will promptly reimburse the Fund for any claims paid because of the illness or injury. If you or your dependents sue or recover payment of any kind from a third party for an illness or injury (whether or not these payments are characterized in any way as compensation for your injuries or for health care claims), the Fund shall have an equitable lien and the right of first reimbursement out of the amount recovered. This Plan is not subject to the "Make Whole Doctrine": The Fund's right of first reimbursement shall apply even if the amount you or your dependents receive from the third party is less than your actual loss resulting from the illness or injury.

- This Plan is not subject to the "Common Fund Doctrine" with respect to attorney's fees and other costs of litigation and assumes no responsibility for any expenses incurred to obtain a settlement, award, remedy, recovery, or payment of any kind from a third party – including legal costs and attorneys fees. Expenses related to any recovery from a third party shall not reduce the amount due the Fund pursuant to its equitable lien on your recovery.

- If you or your dependents do not sue the third party for the illness or injury, the Fund reserves the right to sue the third party for the amount of Plan benefits paid on your or your dependents' behalf.

- You and your dependents will help the Fund recover the Plan benefits from the third party by taking reasonable steps to secure payment from the third party and/or assisting the Fund to recover payment from the third party.

- Your and your dependents will sign any papers reasonably related to the Fund's recovery from the third party including but not limited signing the Fund's form which memorializes the Fund's lien claim on your third party recovery.

- You and your dependents will not do anything to interfere with the Fund's rights to recover Plan benefits from the third party.

- You and your dependents will tell the Fund immediately when you receive payment from a third party in connection with the illness or injury by calling the number listed on page 60 of this SPD.

- If you or your dependents have uninsured motorist or under-insured motorist coverage under an automobile liability insurance policy that applies to an illness or injury caused or contributed to by a third party, the conditions described above also apply to your rights under that insurance policy.

If you or your dependents fail or refuse to assist the Fund in recovering damages from a third party, the Fund may:

- Offset what is paid on your and/or your dependents' future claims against the claims paid for which the Fund should have been reimbursed because of the illness or injury caused by the third party until the Fund is completely reimbursed for the cost of these claims (including but not limited to costs incurred in collection); and

- File a lawsuit against you or your dependents to fully recover the amount the Fund should have been reimbursed; and/or

- Take any other action deemed appropriate by the Board of Trustees.

If you or your dependents do not receive payment from a third party to reimburse you for an illness or injury caused by the third party, you do not have to reimburse the Fund for any benefits properly paid to you or your dependents. If you do receive payment from the third party, you do not have to pay the Fund more than the amount the third party paid to you or your dependents.

If you have any questions about how to comply with these third party liability rules, contact the Administrative Office.

**Right Of Reimbursement In Cases Of Payment in Error or Fraud**

In the event you or a dependent receive (1) a benefit payment in excess of the amounts provided for in this Plan, or (2) payment for claims or expenses not covered by this Plan, or (3) payment for benefits based on misrepresentation of the facts or fraud, the erroneous payments shall be repaid by you, your dependent, or the provider of services upon demand by the Trust Fund. If such amounts are not promptly repaid the Trust Fund reserves the right to deduct the amount erroneously paid from any of your or your dependents' future claims, to file suit, or to take any other action to recover such payments the Board of Trustees deems appropriate.

# YOUR RIGHTS
# UNDER FEDERAL LAW

## Your Rights Under ERISA

The Employee Retirement Income Security Act ("ERISA") was enacted in 1974 to protect the interests of participants and beneficiaries in certain employee benefit plans.

As a participant in the Plan, you have certain rights and protections under ERISA. ERISA provides that you, as a participant or beneficiary in each plan, are entitled to:

- Receive information about your plan and benefits
- Continue group health plan coverage after losing coverage
- Prudent actions by plan fiduciaries
- Enforce your rights
- Assistance with your questions

ERISA provides that all participants in an ERISA-subject plan are entitled to:

- Examine, without charge, at the Plan Administrator's principal office – and at other specified locations such as worksites and union halls – all documents governing the Plan, including insurance contracts, collective bargaining agreements, and a copy of the latest annual report (Form 5500 series) filed by the Plan with the U.S. Department of Labor and available at the public disclosure room of the Employee Benefits Security Administration.

- Obtain copies of documents governing the operation of the Plan and other Plan information by writing to the appropriate Plan Administrator (there may be a reasonable charge for the copies).

- Receive a summary of the Plan's annual financial report (if any) – the Plan Administrator is required by law to furnish each Plan participant with a copy of this summary annual report.

- Continue health care coverage (either for yourself, or your spouse and/or dependent children) if there is a loss of coverage under the Plan due to a qualifying event, though you or your dependents will have to pay for this coverage.

- A reduction in, or elimination of, exclusionary periods of coverage for pre-existing conditions that apply under your medical plans, if you have creditable coverage from another plan. You should be provided a certificate of creditable coverage, free of charge, from your health plan or health insurance issuer when you lose coverage under the Plan, when you become entitled to elect COBRA continuation coverage, or when your COBRA continuation coverage ceases, if you request it before losing coverage, or if you request it up to twenty four (24) months after losing coverage. Without evidence of creditable coverage, you may be subject to a pre-existing condition exclusion for twelve (12) months (18 months for late

73

enrollees) after your enrollment date in your coverage.

In addition to creating rights for Plan participants, ERISA imposes obligations on those responsible for the operation of the Plan. The people who operate the Plan ("fiduciaries") must do so prudently and in the interest of all Plan participants and beneficiaries.

No one – neither your employer nor any other individual – may fire you or otherwise discriminate against you in any way to prevent you from obtaining a benefit or exercising your rights under ERISA. However, this rule neither guarantees continued employment, nor affects your employer's right to terminate your employment for other reasons.

If your claim for a benefit is denied in whole or in part, you will receive a written explanation of the reason for the denial and you have the right to have the Plan Administrator review and reconsider your claim, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the rights listed above. For instance, if you request a copy of the Plan document or the latest annual report from the Plan Administrator and do not receive them within thirty (30) days, you may file suit in a federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive them, unless they were not sent because of reasons beyond the Administrator's control.

If your claim for benefits is denied in whole or in part, and you have been through the Plan's appeals procedure, you may sue in a state or federal court. In addition, if you disagree with the Plan Administrator's decision concerning the qualified status of a Domestic Relations Order or Medical Child Support Order, you may file suit in a federal court.

Similarly, if you believe that any Plan fiduciary is misusing Plan money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court. The court will decide who should pay court costs and legal fees. If you win, the court may order the person you sued to pay these legal expenses. If you lose, the court may order you to pay the court costs and legal fees (if, for example, it finds your claim is frivolous).

If you have questions about one of the plans, you should contact the Plan Administrator. If you have any questions about this statement or your rights under ERISA, you should contact the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory. You may also contact the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You also may obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of

the Employee Benefits Security Administration at (866) 444-3272.

## Your Rights Under the Mothers & Newborns Protection Act

Federal law bars group health plans and health insurance issuers from restricting coverage for a hospital stay in connection with childbirth for the mother of a newborn child to less than forty eight (48) hours following a vaginal delivery or less than ninety six (96) hours after a cesarean section. However, federal law does not prohibit the mother or newborn's doctor, after consulting with the mother, from discharging the mother and newborn earlier.

## Your Rights Under the Family Medical Leave Act

The Family Medical Leave Act provides that in certain situations certain employers are required to grant leave to employees and that in such situations the employer is required to continue medical coverage for the covered employee for up to **three (3) months**.

It is not the role of the Trustees or Plan to determine whether an individual employee is entitled to leave with continuing medical care under the federal statute, any state statute or the provisions of a collective bargaining agreement. Disputes as to the entitlement to leave with continuing medical benefits must be resolved by the employer, employee and where applicable, the local union.

To the extent that Participants are entitled to leave with continuing medical coverage pursuant to the federal act, state legislation or provisions contained within a collective bargaining agreement, the Plan will provide continuing medical coverage so long as required monthly contributions are received from the contributing employer. Rights under this section do not affect your rights under COBRA or rights to continuing medical care pursuant to the disability extension features contained within the Plan.

## Your Rights Under USERRA

If you enter the U.S. military (except for reserve training), coverage for you and your dependents ends, unless you elect to continue coverage under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA").

If you are engaged in full-time military service for more than thirty (30) days, you will no longer be eligible for life insurance benefits; however, you will have the option to convert your term life insurance policy into an individual policy. The U.S. Armed Forces may also provide coverage.

If you elect to continue coverage under USERRA, coverage may not extend beyond the earlier of:

- Eighteen (18) months beginning on the date the military leave of absence begins, or

- Twenty four (24) months beginning after a military leave if you first made your election to continue coverage

because of military service on or after December 10, 2004, or

- The day after the date you fail to apply for or return to work within the time required by USERRA.

- Your USERRA rights to continue coverage will run concurrently with your COBRA rights described on pages 9-13 of this booklet.

## HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT OF 1996

### Your Health Information And Privacy

The health benefit options offered under the Plan use health information about you and your covered dependents only for the purposes of providing treatment, paying claims, and related functions. The Plan's Privacy Notice is printed here.

To protect the privacy of health information, access to your health information is limited to such purposes. Effective April 14, 2003, the health benefit plan options offered under the Plan will comply with the applicable health information privacy requirements in Title II of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the applicable federal regulations issued by the Department of Health and Human Services. Specific procedures related to the security of electronically transmitted Protected Health Information ("ePHI") effective April 20, 2005 are also described below.

### Health Insurance Portability

The Health Insurance Portability and Accountability Act of 1996 requires this Plan to provide you with a certificate of creditable coverage which may help you avoid part or all of a pre-existing condition limitation a succeeding group plan may impose. Please call the Administration Office if you have any questions about the certificate of creditable coverage.

### Privacy Rule

The Plan has been amended to conform to the "Privacy Rule" as described as follows.

- **Use And Disclosure Of Health Information**

The Plan may use your health information, that is, information that constitutes protected health information ("PHI") as defined in the Privacy Rule of the Administrative Simplification provision of the Health Insurance Portability and Accountability Act of 1996, for purposes of making or obtaining payment for your care and conducting health care operations. The Plan has established a policy to guard against unnecessary disclosure of your health information.

THE FOLLOWING IS A SUMMARY OF THE CIRCUMSTANCES UNDER WHICH AND PURPOSES FOR WHICH YOUR HEALTH INFORMATION MAY BE USED AND DISCLOSED:

**To Make or Obtain Payment.** The Plan may use or disclose your health information to make payment to or collect payment from third parties, such as other health plans or providers, for the care you receive. For example, the Plan may provide information regarding your coverage or health care treatment to other health plans to coordinate payment of benefits.

The Plan may also disclose health information over the telephone to your spouse, another family member, or a personal representative (such as a Union business agent or Employer representative), for purposes of making or obtaining information about treatment or claims if you provide your oral authorization to the Plan to speak to this person on your behalf. If you do not wish the Plan to release your health information to your spouse, family member or personal representative without prior *written* authorization, please follow the instructions under the Right to Make Restrictions found in this notice.

**To Conduct Health Care Operations.** The Plan may use or disclose health information for its own operations to facilitate the administration of the Plan and as necessary to provide coverage and services to all Plan Participants. For example, the Plan may use your health information to conduct case management, quality improvement and utilization review, and provider credentialing activities or to engage in customer service and grievance resolution activities.

**For Treatment.** The Plan does not provide treatment. However, the Plan may use or disclose your health information to support treatment and the management of your care. For example, the Plan may disclose that you are eligible for benefits to a health care provider who contacts the Plan to verify your eligibility.

**For Treatment Alternatives.** The Plan may use and disclose your health information to tell you about or recommend possible treatment options or alternatives that may be of interest to you.

**For Distribution of Health-Related Benefits and Services.** The Plan may use or disclose your health information to provide to you information on health-related benefits and services that may be of interest to you.

**Public Health Risks.** The Plan may disclose medical information about you for public health activities. These activities generally include the following:

- To prevent or control disease, injury or disability;

- To report births and deaths;

- To report child abuse or neglect;

- To report reactions to medications or problems with products;

- To notify people of recalls of products they may be using;

- To notify a person who may have been exposed to a disease or may be at risk for contracting or spreading a disease or condition;

- To notify the appropriate government authority if the Plan believes a patient has been the victim of abuse, neglect or domestic violence. The Plan will only make this disclosure if you agree or when required or authorized by law.

**For Disclosure to the Plan Sponsor.** The Plan sponsor represents that adequate separation exists between the Plan and Plan sponsor so that PHI will be

78

used only for Plan administration. As a jointly trusteed multiemployer trust fund which contracts with a third party administrator, the Plan sponsor has no employees. No person under the control of the Plan sponsor has access to your PHI. The Plan may disclose your health information to the Plan sponsor for Plan administration functions performed by the Plan sponsor on behalf of the Plan. Such administration shall include, but is not limited to, the following purposes: appeals of adverse benefit determinations, financial oversight, data analysis, COBRA administration, coordination of benefits, and plan design. The Plan also may provide summary health information to the Plan sponsor so that the Plan sponsor may solicit premium bids from other health plans or modify, amend or terminate the Plan.

As a condition for obtaining PHI from the Plan and other insurers and HMOs participating in the Plan, the Plan sponsor agrees to:

- Use or disclose any PHI received from the Plan only as permitted by the Privacy Rule or as required by law.

- Require each of its subcontractors or agents to whom the Plan sponsor may provide PHI to agree to the same restrictions and conditions that apply to the Plan sponsor with respect to PHI.

- Bar the use or disclosure of PHI for employment-related actions or decisions or in connection with any other employee benefit plans sponsored by the Plan sponsor.

- Report to the Plan any use or disclosure of PHI that is inconsistent with the uses or disclosures authorized by the Privacy Rule of which it becomes aware.

- Make your PHI available for purposes of your request for inspection or copying.

- Make PHI available to the Plan to permit you to amend or correct PHI contained in the designated record set that is inaccurate or incomplete and incorporate such amendments as is allowed under the Privacy Rule.

- Make available the information required to provide an accounting of disclosures in accordance with the Privacy Rule.

- Make its internal practices, books and records relating to the use and disclosure of PHI available to the Plan and to the Secretary of the U.S. Department of Health and Human Services ("DHHS") for the purpose of determining the Plan's compliance with the Privacy Rule.

- If feasible, return to the Plan or destroy all PHI received from the Plan in any form and retain no copies of such information when no longer needed for the purpose for which the disclosure was made. If return or destruction is not feasible, the Plan sponsor agrees to restrict and limit further uses and disclosures to the purposes that make the return or destruction infeasible.

- Use best efforts to request only the minimum necessary type and amount of PHI to carry out the functions for which the information is requested.

**When Legally Required.** The Plan will disclose your health information when it is required to do so by any federal, state or local law.

**Organ and Tissue Donation.** If you are an organ donor, the Plan may release medical information to organizations that handle organ procurement or organ, eye or tissue transplantation or to an organ donation bank, as necessary to facilitate organ or tissue donation and transplantation.

**To Conduct Health Oversight Activities.** The Plan may disclose your health information to a health oversight agency for authorized activities including audits, civil administrative or criminal investigations, inspections, licensure or disciplinary action. The Plan, however, may not disclose your health information if you are the subject of an investigation and the investigation does not arise out of or is not directly related to your receipt of health care or public benefits.

**In Connection With Judicial and Administrative Proceedings.** As permitted or required by state law, the Plan may disclose your health information in the course of any judicial or administrative proceeding in response to an order of a court or administrative tribunal as expressly authorized by such order or in response to a subpoena, discovery request or other lawful process,

but only when the Plan makes reasonable efforts to either notify you about the request or to obtain an order protecting your health information.

**For Law Enforcement Purposes.** As permitted or required by state law, the Plan may disclose your health information to a law enforcement official for certain law enforcement purposes, including, but not limited to, if the Plan has a suspicion that your death was the result of criminal conduct or in an emergency to report a crime.

**To Coroners, Medical Examiners and Funeral Directors.** The Plan may release your health information to a coroner or medical examiner. This may be necessary, for example, to identify a deceased person or determine the cause of death. The Plan may also release your health information to funeral directors as necessary to carry out their duties.

**In the Event of a Serious Threat to Health or Safety.** The Plan may, consistent with applicable law and ethical standards of conduct, disclose your health information if the Plan, in good faith, believes that such disclosure is necessary to prevent or lessen a serious and imminent threat to your health or safety or to the health and safety of the public. Any disclosure would be to someone able to help prevent the threat.

**For Specified Government Functions.** In certain circumstances, federal regulations require the Plan to use or disclose your health information to facilitate specified government functions

80

related to the military and veterans, national security and intelligence activities, protective services for the president and others, and correctional institutions and inmates.

**For Worker's Compensation.** The Plan may release your health information to the extent necessary to comply with laws related to worker's compensation or similar programs.

- **Authorization To Use Or Disclose Health Information**

Other than as stated above, the Plan will not disclose your health information without your written authorization. If you authorize the Plan to use or disclose your health information, you may revoke that authorization in writing at any time.

- **Your Rights With Respect To Your Health Information**

You have the following rights regarding your health information that the Plan maintains:

**Right to Request Restrictions.** You may request restrictions on certain uses and disclosures of your health information. You have the right to request a limit on the Plan's disclosure of your health information to someone involved in the payment of your care. However, the Plan is not required to agree to your request. If you wish to make a request for restrictions, please contact the Privacy Officer at the Plan Administration Office.

**Right to Receive Confidential Communications.** You have the right to request that the Plan communicate with you in a certain way if you feel the disclosure of your health information could endanger you. You may be required to provide a statement that disclosure of your health information could endanger you. For example, you may ask that the Plan only communicate with you at a certain telephone number or by email. If you wish to receive confidential communications, please make your request in writing to the Privacy Officer at the Plan Administration Office. The Plan will attempt to honor your reasonable requests for confidential communications.

**Right to Inspect and Copy Your Health Information.** You have the right to inspect and copy your health information. A request to inspect and copy records containing your health information must be made in writing to the Privacy Officer at the Plan Administration Office. If you request a copy of your health information, the Plan may charge a reasonable fee for copying, assembling costs and postage, if applicable, associated with your request. The Plan may deny your request in limited situations.

**Right to Amend Your Health Information.** If you believe that your health information records are inaccurate or incomplete, you may request that the Plan amend the records. That request may be made as long as the Plan maintains the information. A request for

an amendment of records must be made in writing to the Privacy Officer at the Plan Administration Office. The Plan may deny the request if it does not include a reason to support the amendment. The request also may be denied if your health information records were not created by the Plan, if the health information you are requesting to amend is not part of the Plan's records, if the health information you wish to amend falls within an exception to the health information you are permitted to inspect and copy, or if the Plan determines the records containing your health information are accurate and complete.

**Right to an Accounting.** You have the right to request a list of disclosures of your health information made by the Plan for any reason other than for treatment, payment or health operations. The request must be made in writing to the Privacy Officer at the Plan Administration Office. The request should specify the time period for which you are requesting the information, but may not start earlier than April 14, 2003. Accounting requests may not be made for periods of time going back more than six (6) years. The Plan will provide the first accounting you request during any 12-month period without charge. Subsequent accounting requests may be subject to a reasonable cost-based fee. The Plan will inform you in advance of the fee, if applicable.

**Right to a Paper Copy of this Notice.** You have a right to request and receive a paper copy of this Privacy Notice at any time, even if you have received this Privacy Notice previously or agreed to receive the Privacy Notice electronically. To obtain a paper copy, please contact the Privacy Officer at the Plan Administration Office.

**Duties Of The Plan**

The Plan is required by law to maintain the privacy of your health information and to provide to you this Privacy Notice of its duties and privacy practices. The Plan is required to abide by the terms of this Privacy Notice, which may be amended from time to time. The Plan reserves the right to change the terms of this Privacy Notice and to make the new privacy practice provisions effective for all health information that it maintains. If the Plan changes its policies and procedures, the Plan will revise the Privacy Notice and will provide a copy of the revised notice to you within sixty (60) days of the change. You have the right to express complaints to the Plan and to the Secretary of the Department of Health and Human Services if you believe that your privacy rights have been violated. Any complaints to the Plan should be made in writing to the Privacy Officer at the Plan Administration Office. The Plan encourages you to express any concerns you may have regarding the privacy of your information. You will not be retaliated against in any way for filing a complaint.

**Contact Person**

The Privacy Officer is the contact person for all issues regarding patient privacy

and your privacy rights. You may contact him/her at:

Privacy Officer
East Bay Drayage Security Drivers Fund
c/o Delta Health Systems
P.O. Box 1147
Stockton, CA 95201
(800) 422-6099

**Effective Date**

The Plan's privacy policies and procedures became effective April 14, 2003.

**Security Rule Effective Date**

The following are the Plan's security rules with regard to the creation, receipt, maintenance, storage and transmission of Protected Health Information ("PHI") via electronic means ("ePHI").

**Use and Disclosure of ePHI.** The Fund and its Plans may use and disclose ePHI, including ePHI for treatment, payment and operations, and such other uses and disclosures as are permitted and required under the HIPAA Privacy Rule and Security Rule, and the representatives of the Fund shall have access to such PHI, including ePHI, as is necessary for them to perform their duties for the Fund and its Plans.

**Trustees' Use and Disclosure of ePHI.** To the extent permitted by law, the Trustees may receive, use and disclose ePHI, if, in the sole discretion of the Trustees, such ePHI is necessary for the Trustees to perform their fiduciary or administrative duties as Trustees. In all cases, the Trustees shall receive, use and disclose the minimum amount of ePHI necessary for the Trustee to perform his or her functions under the Fund, and shall safeguard such ePHI as required by the Privacy and Security Rules. Each Trustee who receives ePHI from the Fund shall keep such information in strict confidence and shall not use or further disclose the ePHI received from the Fund other than as permitted or required by law and this Agreement or upon the express written permission of the Participant who is the subject of the ePHI.

**Procedures.** The Fund will implement administrative, physical and technical safeguards that reasonably and appropriately protect the confidentiality, integrity, and availability of the ePHI that it creates, receives, maintains, or transmits on behalf of the Fund, and will ensure the "adequate separation" within the meaning of 45 C.F.R. §164 504(f)(2)(iii) of the data.

# EXHIBIT B

FL-180

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| CLAIRE OSBORN 197948<br>LAW OFFICE OF CLAIRE OSBORN<br>5250 CLAREMONT AVENUE, SUITE 150<br>STOCKTON, CA 95204<br>TELEPHONE NO.: (209) 463-4693   FAX NO. *(Optional)*: (209) 463-5729<br>E-MAIL ADDRESS *(Optional)*: claire@osborn.legal<br>ATTORNEY FOR *(Name)*: RUDOLFO CHAVEZ | FILED<br>19 NOV 12  PH 4:05<br>ROSA JUNQUEIRO, CLERK<br>BY _____<br>DEPUTY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN JOAQUIN
STREET ADDRESS: 180 EAST WEBER AVENUE
MAILING ADDRESS: SAME AS ABOVE
CITY AND ZIP CODE: STOCKTON CA 95202
BRANCH NAME: FAMILY LAW DIVISION

MARRIAGE OR PARTNERSHIP OF
PETITIONER: RUDOLFO CHAVEZ

RESPONDENT: LEAH CHAVEZ

NOV 0 8 2019  *FCS*

| JUDGMENT | | | CASE NUMBER: |
|---|---|---|---|
| [X] DISSOLUTION | [ ] LEGAL SEPARATION | [ ] NULLITY | FL-2014-5424 |

[ ] Status only
[ ] Reserving jurisdiction over termination of marital or domestic partnership status
[ ] Judgment on reserved issues
Date marital or domestic partnership status ends: **NOV 1 2 2019**

1. [ ] This judgment [ ] contains personal conduct restraining orders [ ] modifies existing restraining orders.
   The restraining orders are contained on page(s) _____ of the attachment. They expire on *(date)*:

2. This proceeding was heard as follows: [ ] Default or uncontested [ ] By declaration under Family Code section 2336
   [X] Contested [ ] Agreement in court
   a. Date: 08/21/2019   Dept.: 7C   Room:
   b. Judicial officer *(name)*: LINDA L. LOFTHUS   [ ] Temporary judge
   c. [X] Petitioner present in court   [X] Attorney present in court *(name)*: CLAIRE OSBORN
   d. [X] Respondent present in court   [ ] Attorney present in court *(name)*:
   e. [ ] Claimant present in court *(name)*:
   f. [ ] Other *(specify name)*:   [ ] Attorney present in court *(name)*:

3. The court acquired jurisdiction of the respondent on *(date)*: 09/16/2014
   a. [X] The respondent was served with process.
   b. [ ] The respondent appeared.

THE COURT ORDERS, GOOD CAUSE APPEARING

4. a. [X] Judgment of dissolution is entered. Marital or domestic partnership status is terminated and the parties are restored to the status of single persons
      (1) [X] on *(specify date)*: **NOV 1 2 2019**
      (2) [ ] on a date to be determined on noticed motion of either party or on stipulation.
   b. [ ] Judgment of legal separation is entered.
   c. [ ] Judgment of nullity is entered. The parties are declared to be single persons on the ground of *(specify)*:

   d. [ ] This judgment will be entered nunc pro tunc as of *(date)*:
   e. [ ] Judgment on reserved issues.
   f. The [ ] petitioner's [ ] respondent's  former name is restored to *(specify)*:
   g. [ ] Jurisdiction is reserved over all other issues, and all present orders remain in effect except as provided below.
   h. [ ] This judgment contains provisions for child support or family support. Each party must complete and file with the court a *Child Support Case Registry Form* (form FL-191) within 10 days of the date of this judgment. The parents must notify the court of any change in the information submitted within 10 days of the change, by filing an updated form. The *Notice of Rights and Responsibilities—Health-Care Costs and Reimbursement Procedures and Information Sheet on Changing a Child Support Order* (form FL-192) is attached.

Page 1 of 2

JUDGMENT
(Family Law)

Family Code, §§ 2024, 2340, 2343, 2346
www.courts.ca.gov

CHAVEZ, Rudolfo

# EXHIBIT C

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN JOAQUIN**
**FAMILY LAW BRANCH**

FILED

19 NOV 21   PM 3: 22

ROSA JUNQUEIRO, CLERK

BY _____ DEPUTY

Rudolfo Chavez

**Petitioner,**

Case No. FL-2014-5424

Leah Chavez

**Respondent,**

**DECLARATION AND ORDER TO SET ASIDE**

I, Tracy Razzari, Legal Process Clerk of the Superior Court, County of San Joaquin, do declare that on November 12, 2019 I filed the Judgment and Notice of Entry of Judgment and that should not have been done as the case is pending Appeals and should be set aside.

Dated: November 21, 2019

_____
Deputy Clerk

Based upon the above Declaration of Tracy Razzari and good cause appearing,

**IT IS HEREBY ORDERED** that the Judgment and Notice of Entry of Judgment filed on November 12, 2019 is set aside.

Dated: **NOV 2 1 2019**

_____
Judicial Officer of the Superior Court
LINDA L. LOFTHUS

EXHIBIT D

# East Bay Drayage Drivers Security Fund
P O Box 5030
Walnut Creek, CA 94596

Phone (855) 263-7242  Phone (925) 954-1439

January 29, 2024

Sent via email: 1register1@gmail.com

**Re: Request for Reinstatement of Eligibility through the East Bay Drayage Drivers Security Fund**

Dear Ms. Chavez,

The East Bay Drayage Drivers Security Fund is in receipt of your **letter of appeal** dated **October 27, 2023 requesting reinstatement of coverage through the East Bay Drayage Drivers Security Fund.** The Board of Trustees reviewed your letter and documents on January 12, 2024, and made the determination to deny your appeal.

**Based on the documents that were provided, the Board of Trustees is upholding the dissolution of marriage on November 12, 2019. Coverage as a dependent was terminated on the same day.**

If you disagree with this decision, you may file another <u>written</u> appeal within 45 days after you receive this letter.  You should include the reasons you believe the claim was improperly denied and all additional facts and documents you consider relevant in support of your appeal.  If you do not appeal on time, you may lose your right to file suit in a state or federal court because you have not exhausted your internal administrative appeal rights (which is generally a requirement before you can sue in state or federal court).  However, after receiving an adverse determination upon review, you have the right to bring a civil action under section 502(a) of ERISA.

You may receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim for benefits under the Plan.

The decision on appeal will consider all comments, documents, and records and other information you submit, even if they were not submitted or considered during the initial claim decision.  If the claim was denied on the basis of a medical judgment (such as the absence of medical necessity or the use of an experimental or investigational treatment) the Plan will consult a health care professional with training and experience applicable to the relevant field of medicine. The health care professional consulted will have no connection to the adverse determination on appeal, nor be the subordinate of that individual.  Upon request and free of charge, you can obtain the name of any medical or vocational expert consulted and the advice (if any) given concerning the claim (even if the Board did not rely on this advice in making its decision).

You may receive, upon request and free of charge, reasonable access to, and copies of, any documents in the Fund's possession that are relevant to your appeal, including a copy of the internal rule, guideline or protocol mentioned above that was relied on to decide your claim.

The decision on appeal will not afford deference to this initial adverse benefit determination, and the appeal will be conducted by an appropriate named fiduciary who is neither the individual who made this adverse determination that is subject of the appeal, nor the subordinate of that person.

If the decision was based on the absence of medical necessity or the use of experimental or investigational treatment (or any similar reason), an explanation of the scientific or clinical judgment for the determination as applied to the Plan and your claim is available upon request and free of charge.

The members of the Plan's Board of Trustees will make the decision on appeal. They will not defer to this initial determination and will consider all comments, documents, and records and other information you submit, even if they were not submitted or considered during the initial claim decision. Their decision on your appeal will be made based on the record, including any additional documents and comments you submit.

Appeals will be heard at the next regularly scheduled meeting of the Board of Trustees following receipt of the appeal. If, however, your request for review is received within 30 days of the next regularly scheduled Board meeting, your appeal will be decided at the second regularly scheduled Board meeting following receipt of your appeal. You will be notified in writing if an extension is necessary. You will be notified of the decision on your appeal as soon as possible but no later than five days after a decision on your appeal is reached.

Sincerely,

Chris Corcoran
Plan Manager

Cc: File

# EXHIBIT E

# East Bay Drayage Drivers Security Fund

P O Box 5030
Walnut Creek, CA 94596

Phone (855) 263-7242  Phone (925) 954-1439

March 4, 2024

To:      Ms. Leah Chavez

EMAIL:   1register1@gmail.com

*Re: **East Bay Drayage Drivers Security Fund – Document Request – Appeal of Eligibility Denial***

Dear Ms. Chavez:

The East Bay Drayage Drivers Security Fund has received your email request for documents dated February 6, 2024 related to your appeal of the denial of your eligibility as a covered spouse submitted on October 27, 2023.

Your email copies of any and all,

[D]ocuments, records, and other information relevant to (my) claim for benefits under the Plan.', including but not limited to any and all information included in my file, and identity and contact information for any and all people, including personnel and consultants, who worked on my matter, and the audit trail information (who accessed my file, when, and what changes were made). Please identify when and who first provided a copy of the Notice of Entry of Judgment dated November 12, 2019 and any other documents or correspondence they provided, and include copies of any and all documents or correspondence they provided and received; including a copy of the email, letter, fax etc. from when the Notice of Entry of Judgment dated November 12, 2019 and any other documents were provided and to whom they were provided to. Please include documentation with the date when service providers, such as Kaiser, received notification that my benefits were terminated, and what termination date was given to them, when and by whom. Please include any and all external and internal correspondence related to my matter including emails, faxes, documents, comments, statements, records, etc. received from, sent to, or discussed with any person (including myself) or entity that provided or received any information on my matter. Please include information communicated by any and all methods of communication related to my matter including but not limited to written, verbal (including phone calls and voicemails), or electronic communication.

Also per the appeal denial letter dated January 29, 2024, please provide any and all relevant Plan documentation 'including a copy of the internal rule, guideline or protocol… relied on to decide (my) claim' and the effective termination date. Please include a copy of the minutes from the Board of Trustees meeting when the decision denying my appeal was made.

The applicable Regulations (29 CFR § 2560.503-1(h)) provide, in relevant part, that an appellant is entitled to,

> [R]easonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits. Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section; [and]

> [R]eview that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

In response to your request, the Fund has made available documents conforming to the Regulatory requirements at a secure web link below.
https://app.box.com/s/amkcik6o33oufyysz0mnauo4yl1xw3oz Please contact our office if you have any difficulties accessing the documents.

Included in these documents is the documentation of the date when Kaiser was notified that your benefits were terminated.

The Plan Document/Summary Plan Description ("SPD") for Plan 1980 included in this web link contains the "internal rule, guideline or protocol relied upon" to decide your claim. Specifically, that rule is contained at pages 3 and 8 of the SPD: "Dependent Eligibility: Eligible dependents who can participate in the Plan include: Your legal spouse" and "When Coverage Ends for Dependents: Coverage for your Dependents generally ends on the earliest of the following: The date your Dependent ceases to be eligible as a dependent under the Plan."

The link also contains the COBRA notice sent to you dated October 3, 2023. The SPD provides on page 10 under "Your Dependents' COBRA 'Qualifying Events'" that "Your Dependents become eligible for COBRA for the following reasons: You divorce your spouse (this is a "qualifying event" for your divorced spouse only – it does not result in a loss of coverage or COBRA "qualifying event" for your Dependent children because they do not lose coverage as a result of your divorce)."

You have also asked when the Fund first became aware of documents related to your 2019 divorce. The Fund first received notice of your divorce from your ex-husband in September 2023. Under the terms of the Plan (see the eligibility provisions of the above-referenced SPD) eligibility for benefits terminates on the loss of spousal status. Had the Fund been timely informed of your divorce it would have issued a timely COBRA notice. However, because Fund was advised of your 2019 divorce in 2023 and this delay is not attributable to you, the COBRA notice retroactive to 2019 has been withdrawn and your COBRA eligibility is effective July 1, 2023. You have until May 4, 2024 to elect COBRA. Included with this letter is the revised COBRA notice.

The Fund is not required under law or the terms of the Plan to provide you with the names of individuals requested.

Please contact Fund Counsel Lorrie Bradley at lbradley@beesontayer.com if you have any questions concerning this letter.

Sincerely,

Chris Corcoran
Fund Manager

EXHIBIT F

East Bay Drayage Drivers
P.O. Box 3216
Hayward, CA 94540-3216

LEAH CHAVEZ
2215 87TH AVE
OAKLAND, CA  94621

Date of Notice: 10/03/2023

Dear EBDDSF Participant:

Enclosed is your EBDDSF COBRA Notice and Election Form.  You are receiving this
Notice because your health care coverage in the EBDDSF Plan ended or will end on
11/12/2019 unless you elect to continue your health care coverage.  This is due to
Divorce.

Please read the Notice carefully, and share the Notice with any family member who is
also covered under the Plan, as failure to respond may impact their rights to
continued coverage.

**You must elect to continue coverage under your EBDDSF Plan within 60 days of the date
of this notice, by 12/02/2023, or you will lose your right to do so.**

EAST BAY DRAYAGE DRIVERS SECURITY FUND
Administrator
3313 Vincent Road, Suite 216                    Phone: 1-855-263-7242
Pleasant Hill, CA 94523                         FAX:   1-925-405-0569

**COBRA NOTICE AND ELECTION FORM**

                                                Case: 13009
                                                UNITED PARCEL SERVICE
                                                ID: EB1006850
                                                DATE OF NOTICE: 10/03/2023
                                                DATE COVERAGE LOST: 11/12/2019


**IMPORTANT INFORMATION: COBRA Continuation of Coverage and other Health Coverage Alternatives**


Dear LEAH CHAVEZ:

**This notice has important information about your right to continue your health care coverage in the East Bay Drayage Drivers Security Fund (the Plan), as well as other health coverage options that may be available to you, including coverage through the Health Insurance Marketplace at www.HealthCare.gov or call 1-800-318-2596.  You may be able to get coverage through the Health Insurance Marketplace that costs less than COBRA continuation coverage.**  Please read the information in this notice very carefully before you make your decision.  If you choose to elect COBRA continuation coverage, you should use the election form provided later in this notice.  **You must submit your Election Form within 60 days of the date of this Notice to enroll in continued coverage.**

**Why am I getting this notice?**

You are receiving this Notice and Election Form because the EBDDSF Administrative Office has been informed your coverage under the Plan will end on 11/12/2019 due to:

    [  ] End of employment        [  ] Reduction in hours of employment
    [  ] Death of employee        [ X ] Divorce or legal separation
    [  ] Entitlement to Medicare  [  ] Loss of dependent child status

Federal law requires that most group health plans (including this Plan) give employees and their families the opportunity to continue their health care coverage through COBRA continuation coverage when there's a "qualifying event" that would result in a loss of coverage under an employment-based plan.

**What's COBRA continuation coverage?**

COBRA continuation coverage is the same coverage that the Plan gives to other participants or beneficiaries who aren't getting continuation coverage.  Each "qualified beneficiary" (described below) who elects COBRA continuation coverage will have the same rights under the Plan as other participants or beneficiaries covered under the Plan.

**Who are the qualified beneficiaries?**

Each person ("qualified beneficiary") listed below has a right to elect COBRA continuation coverage:

**Coverage will terminate on 11/12/2019**
LEAH CHAVEZ, SPOUSE

You may also elect COBRA continuation coverage on behalf of all beneficiaries, or on behalf of your minor children.

**Are there other coverage options besides COBRA Continuation Coverage?**

Yes. Instead of enrolling in COBRA continuation coverage, there may be other more affordable coverage options for you and your family through the Health Insurance Marketplace, Medicaid, Medicare, or other group health plan coverage options (such as a spouse's plan) through what is called a "special enrollment period" that is generally open for 30 days. Some of these options may cost less than COBRA continuation coverage.

You should compare your other coverage options with COBRA continuation coverage and choose the coverage that is best for you. For example, if you move to other coverage you may pay more out of pocket than you would under COBRA because the new coverage may impose a new deductible.

When you lose job-based health coverage, it's important that you choose carefully between COBRA continuation coverage and other coverage options, because once you have made your choice, it can be difficult or impossible to switch to another coverage option.

**If I elect COBRA continuation coverage, when will my coverage begin and how long will the coverage last?**

If elected, COBRA continuation coverage will begin on 11/13/2019 and can last until 11/12/2022.

Continuation coverage may end before the date noted above in certain circumstances, like failure to pay premiums, fraud, or the individual becomes covered under another group health plan.

**Can I extend the length of COBRA continuation coverage?**

If you elect continuation coverage, you may be able to extend the length of continuation coverage for up to an additional eleven (11) months if a qualified beneficiary is determined to be disabled, or if a second qualifying event occurs. You must notify the EBDDSF's Administrator, Corcoran Administrators ("Corcoran"), of a disability determination or a second qualifying event within sixty (60) days of the

event's occurrence to extend the period of continuation coverage.  If you don't provide notice of a disability or second qualifying event within the sixty day period, it will affect your right to extend the period of continuation coverage.

If a qualified beneficiary has extended coverage due to a disability determination by the Social Security Administration (SSA), the qualified beneficiary must notify EBDDSF's Administrative Office if the SSA determines the beneficiary is no longer disabled.

For more information about extending the length of COBRA continuation coverage visit http://www.dol.gov/ebsa/publications/cobraemployee.html.

**How much does COBRA continuation coverage cost?**

COBRA continuation coverage will cost:      Core: **$1397.53/per month**
                                        Core Plus: **$1623.09/per month**

Other coverage options may cost less.  If you choose to elect continuation coverage, you don't have to send any payment with the Election Form.  Additional information about payment will be provided to you after the Election Form is received by the Plan.  Important information about paying your premium can be found at the end of this notice.

Your first COBRA payment must be made no later than 45 days after the date COBRA is elected (if mailed, the date the Election Form is postmarked).  If the first payment is not timely made in full, all COBRA rights will be lost.  After you make the first payment, COBRA payments are due on the first day of the month and are considered late if not received within 30 days of the due date.  If you make any of your COBRA payments after the end of the grace period, you will lose all of your EBDDSF COBRA rights.

**You may be able to get coverage through the Health Insurance Marketplace that costs less than COBRA continuation coverage.**  You can learn more about the Marketplace below.

**What is the Health Insurance Marketplace?**

The Marketplace offers "one-stop shopping" to find and compare private health insurance options.  In the Marketplace, you could be eligible for a new kind of tax credit that lowers your monthly premiums and cost-sharing reductions (amounts that lower your out-of-pocket costs for deductibles, coinsurance, and copayments) right away, and you can see what your premium, deductibles, and out-of-pocket costs will be before you make a decision to enroll.  Through the Marketplace you will also learn if you qualify for free or low-cost coverage from Medicaid or the Children's Health Insurance Program (CHIP).  You can access the Marketplace for your state at www.HealthCare.gov.

Coverage through the Health Insurance Marketplace may cost less than COBRA continuation coverage.  Being offered COBRA continuation coverage won't limit your eligibility for coverage or for a tax credit through the Marketplace.

**When can I enroll in Marketplace coverage?**

You always have 60 days from the time you lose your job-based coverage to enroll in the Marketplace.  That is because losing your job-based health coverage is a "special enrollment" event.  **After 60 days your special enrollment period will end and you may**

not be able to enroll, so you should take action right away. In addition, during what is called an "open enrollment" period, anyone can enroll in Marketplace coverage.

If you waive your right to enroll in COBRA continuation coverage, you may revoke your waiver before the end of the 60-day period. This revocation must be received in writing by the Administrative Office before the end of the 60-day election period.

To find out more about enrolling in the Marketplace, such as when the next open enrollment period will be and what you need to know about qualifying events and special enrollment periods, visit www.HealthCare.gov.

**If I sign up for COBRA continuation coverage, can I switch to coverage in the Marketplace? What about if I choose Marketplace coverage and want to switch back to COBRA continuation coverage?**

If you sign up for COBRA continuation coverage, you can switch to a Marketplace plan during a Marketplace open enrollment period. You can also end your COBRA continuation coverage early and switch to a Marketplace plan if you have another qualifying event such as marriage or the birth of a child through something called a "special enrollment period." But be careful - if you terminate your COBRA continuation coverage early without another qualifying event, you will have to wait to enroll in Marketplace coverage until the next open enrollment period, and could end up without any health coverage in the interim.

Once you have exhausted your COBRA continuation coverage and the coverage expires, you will be eligible to enroll in Marketplace coverage through a special enrollment period, even if Marketplace open enrollment has ended.

If you sign up for Marketplace coverage instead of COBRA continuation coverage, you cannot switch to COBRA continuation coverage once your election period ends.

**Can I enroll in another group health plan?**

You may be eligible to enroll in coverage under another group health plan (like a spouse's plan), if you request enrollment within 30 days of the loss of coverage.

If you or your dependent chooses to elect COBRA continuation coverage instead of enrolling in another group health plan for which you are eligible, you will have another opportunity to enroll in the other group health plan within 30 days of losing your COBRA continuation coverage.

**Can I enroll in Medicare instead of COBRA continuation coverage after my group health plan coverage ends?**

In general, if you do not enroll in Medicare Part A or B when you are first eligible because you are still employed, after the initial enrollment period for Medicare Part A or B, you have an 8-month special enrollment period[1] to sign up, beginning on the earlier of:

* The month after your employment ends; or
* The month after group health plan coverage based on current employment ends.

---

1 https://www.medicare.gov/sign-up-change-plans/how-do-i-get-parts-a-b/part-a-part-b-sign-up-periods
These rules are different for people with End Stage Renal Disease (ESRD).

If you don't enroll in Medicare Part B and elect COBRA continuation coverage instead, you may have to pay a Part B late enrollment penalty and you may have a gap in coverage if you decide you want Part B later.  If you elect COBRA continuation coverage and then enroll in Medicare Part A or B before the COBRA continuation coverage ends, the Plan may terminate your continuation coverage.  However, if Medicare Part A or B is effective on or before the date of the COBRA election, COBRA coverage may not be discontinued on account of Medicare entitlement, even if you enroll in the other part of Medicare after the date of the election of COBRA coverage.

If you are enrolled in both COBRA continuation coverage and Medicare, Medicare will generally pay first (primary payer) and COBRA will pay second.  If you are eligible for Medicare, COBRA may pay as if secondary to Medicare, even if you are not enrolled in Medicare.

For more information visit https://www.medicare.gov/medicare-and-you.

**What factors should I consider when choosing coverage options?**

When considering your options for health coverage, you may want to think about:

* Premiums: EBDDSF charges up to 102% of total plan premiums for COBRA coverage. Other options, like coverage on a spouse's plan or through the Marketplace, may be less expensive.
* Provider Networks: If you are currently getting care or treatment for a condition, a change in your health coverage may affect your access to a particular health care provider.  You may want to check to see if your current health care providers participate in a network as you consider options for health coverage.
* Drug Formularies: If you are currently taking medication, a change in your health coverage may affect  your costs for medication - and in some cases, your medication may not be covered by another plan.  You may want to check to see if your current medications are listed in drug formularies for other health coverage.
* Severance payments: If you lost your job and got a severance package from your former employer, your former employer may have offered to pay some or all of your COBRA payments for a period of time.  In this scenario, you may want to contact the Department of Labor at 1-866-444-3272 to discuss your options.
* Service Areas: Some plans limit their benefits to specific service or coverage areas - so if you move to another area of the country, you may not be able to use your benefits.  You may want to see if your plan has a service or coverage area, or other similar limitations.
* Other Cost-Sharing: In addition to premiums or contributions for health coverage, you probably pay copayments, deductibles, coinsurance, or other amounts as you use your benefits.  You may want to check to see what the cost sharing requirements are for other health coverage options.  For example, one option may have much lower monthly premiums, but a much higher deductible and higher copayments.

**For more information**

This notice doesn't fully describe continuation coverage or other rights under the Plan.  More information about continuation coverage and your rights under the Plan is available in your summary plan description or from the Plan Administrator.

If you have questions about the information in this notice, your rights to coverage, or if you want a copy of your summary plan description, contact Fund office at 3313 Vincent Rd., #216, Pleasant Hill, CA 94523 at (925) 954-1439 or (855) 263-7242. Hours 9:00 a.m - 5:00 p.m.

For more information about your rights under the Employee Retirement Income Security Act (ERISA), including COBRA, the Patient Protection and Affordable Care Act, and other laws affecting group health plans, visit the U.S. Department of Labor's Employee Benefits Security Administration (EBSA) website at http://www.dol.gov/ebsa or call their toll-free number at 1-866-444-3272. For more information about health insurance options available through the Health Insurance Marketplace, and to locate an assister in your area who you can talk to about the different options, visit www.HealthCare.gov.

**Keep Your Plan Informed of Address Changes**

To protect your and your family's rights, keep the Plan Administrator informed of any changes in your address and the addresses of family members.  You should also keep a copy of any notices you send to the Plan Administrator.

```
**************************************************************************
*                          AVISO EN ESPANOL                           *
*                                                                      *
* Esta noticia contiene un resumen en ingles de sus derechos y beneficios bajo el *
* East Bay Drayage Drivers Security Fund (EBDDSF).  Si tiene alguna dificultad en *
* comprender cualquier parte de esta noticia puede communicarse con East Bay *
* Drayage Drivers Security Fund, 3313 Vincent Road, Suite 216, Pleasant Hill, CA *
* 94523, o llamar al (925) 954-1439 or (855) 263-7242. Las horas de la oficina son *
* de 9:00 a.m. a 5:00 p.m. Una traduccion en espanol esta a su disposicion en la *
* oficina de su union o lugar de trabajo.                              *
**************************************************************************
```

**EAST BAY DRAYAGE DRIVERS SECURITY FUND – NOTICE OF COBRA EVENT FORM**
3333 Vincent Road, Suite 203 A  Pleasant Hill, CA 94523

This form should be completed by an employee, dependent or an authorized representative to notify the EBDDSF Administrative Office of the employee's death or divorce, a child's loss of dependent status under EBDDSF provisions, a determination of disability or cessation of disability, or the employee's enrollment in Medicare (Part A or Part B). The occurrence of any of these events may extend the COBRA coverage period available to you. This notice must be provided according to the deadlines described below. Additional information may be requested by the EBDDSF Administrative Office. Such additional information must be provided within 15 business days of the request or your notice will be deemed incomplete and your COBRA rights will be lost.
**WARNING: If your notice is late or is incomplete, COBRA Coverage may be lost.**

**Complete the following:**

Name of Employee (the employee or former employee who was covered by the Plan): _____

Last 4 digits of Social Security Number: _____

Address of Employee: _____

Name of Qualified Beneficiary(ies): _____

_____

Address of Qualified Beneficiary(ies) (if different): _____

_____

(If you need additional space to include all qualified beneficiaries or addresses, please attach another sheet of paper.)

**Event Description (check one and complete) – Unless otherwise noted, provide notice of these events within 60 days after the date of the event.**

❑  Divorce of Employee and Spouse. Date of Divorce: _____. Attach a copy of the divorce decree.

❑  Employee's child ceased to be an eligible dependent under the terms of the Plan because (check one):
    ❑ Attainment of Plan limitation age (19 or 25 for students)  ❑ Marriage
    ❑ Loss of student status  ❑ Other (explain): _____

    Date of event causing loss of eligibility: _____

❑  Death of former employee who was covered under COBRA at the time of death. Date of death: _____
    Attach a copy of the death certificate.

❑  Coverage under another group health plan. Date of coverage: _____

❑  Coverage of qualified beneficiary under Medicare (Attach a copy of the Medicare card showing the date of entitlement).

    Date of Medicare enrollment: _____

❑  Disability determination by the Social Security Administration (you must include a copy of the determination letter).

    ❑ Determination of Disability. **Provide notice within 60 days of determination and within first 18 months of COBRA**

    ❑ End of Disability. **Provide notice within 30 days of determination.**

    Date of SSA determination: _____

**Certification, Signature, and Date:**

I certify that the above information is true and correct.

I am the (check one):  ❑ Employee or former employee  ❑ Spouse or former spouse  ❑ Former dependent child  ❑ Other

_____    _____
Signature                         Date

_____    _____
Print Name                    Telephone Number

_____
Address

**Mail or hand deliver completed form to address above. Oral, faxed and electronic notices are not permitted.**

**For Plan Use Only**  Date Notice of COBRA Event received: _____  Date of postmark, if mailed: _____

914337 (1105-0004)

EXHIBIT G

East Bay Drayage Drivers
P.O. Box 3216
Hayward, CA 94540-3216

LEAH CHAVEZ
2215 87TH AVE
OAKLAND, CA  94621

Date of Notice: 03/05/2024

Dear EBDDSF Participant:

Enclosed is your EBDDSF COBRA Notice and Election Form.  You are receiving this
Notice because your health care coverage in the EBDDSF Plan ended or will end on
07/01/2023 unless you elect to continue your health care coverage.  This is due to
Divorce.

Please read the Notice carefully, and share the Notice with any family member who is
also covered under the Plan, as failure to respond may impact their rights to
continued coverage.

**You must elect to continue coverage under your EBDDSF Plan within 60 days of the date
of this notice, by 05/04/2024, or you will lose your right to do so.**

EAST BAY DRAYAGE DRIVERS SECURITY FUND
Administrator
3333 Vincent Road, Suite 203-A
Pleasant Hill, CA 94523

Phone: 1-855-263-7242
FAX:   1-925-405-0569

**COBRA NOTICE AND ELECTION FORM**

Case: 13009
UNITED PARCEL SERVICE
ID: EB1006850
DATE OF NOTICE: 03/05/2024
DATE COVERAGE LOST: 07/01/2023

**IMPORTANT INFORMATION: COBRA Continuation of Coverage and other Health Coverage Alternatives**

Dear LEAH CHAVEZ:

**This notice has important information about your right to continue your health care coverage in the East Bay Drayage Drivers Security Fund (the Plan), as well as other health coverage options that may be available to you, including coverage through the Health Insurance Marketplace at www.HealthCare.gov or call 1-800-318-2596.  You may be able to get coverage through the Health Insurance Marketplace that costs less than COBRA continuation coverage.**  Please read the information in this notice very carefully before you make your decision.  If you choose to elect COBRA continuation coverage, you should use the election form provided later in this notice.  **You must submit your Election Form within 60 days of the date of this Notice to enroll in continued coverage.**

**Why am I getting this notice?**

You are receiving this Notice and Election Form because the EBDDSF Administrative Office has been informed your coverage under the Plan will end on 07/01/2023 due to:

[   ] End of employment          [   ] Reduction in hours of employment
[   ] Death of employee          [ X ] Divorce or legal separation
[   ] Entitlement to Medicare [   ] Loss of dependent child status

Federal law requires that most group health plans (including this Plan) give employees and their families the opportunity to continue their health care coverage through COBRA continuation coverage when there's a "qualifying event" that would result in a loss of coverage under an employment-based plan.

**What's COBRA continuation coverage?**

COBRA continuation coverage is the same coverage that the Plan gives to other participants or beneficiaries who aren't getting continuation coverage.  Each "qualified beneficiary" (described below) who elects COBRA continuation coverage will have the same rights under the Plan as other participants or beneficiaries covered under the Plan.

**Who are the qualified beneficiaries?**

Each person ("qualified beneficiary") listed below has a right to elect COBRA continuation coverage:

**Coverage will terminate on 07/01/2023**
LEAH CHAVEZ, SPOUSE

You may also elect COBRA continuation coverage on behalf of all beneficiaries, or on behalf of your minor children.

**Are there other coverage options besides COBRA Continuation Coverage?**

Yes.  Instead of enrolling in COBRA continuation coverage, there may be other more affordable coverage options for you and your family through the Health Insurance Marketplace, Medicaid, Medicare, or other group health plan coverage options (such as a spouse's plan) through what is called a "special enrollment period" that is generally open for 30 days. Some of these options may cost less than COBRA continuation coverage.

You should compare your other coverage options with COBRA continuation coverage and choose the coverage that is best for you.  For example, if you move to other coverage you may pay more out of pocket than you would under COBRA because the new coverage may impose a new deductible.

When you lose job-based health coverage, it's important that you choose carefully between COBRA continuation coverage and other coverage options, because once you have made your choice, it can be difficult or impossible to switch to another coverage option.

**If I elect COBRA continuation coverage, when will my coverage begin and how long will the coverage last?**

If elected, COBRA continuation coverage will begin on 07/01/2023 and can last until 07/01/2026.

Continuation coverage may end before the date noted above in certain circumstances, like failure to pay premiums, fraud, or the individual becomes covered under another group health plan.

**Can I extend the length of COBRA continuation coverage?**

If you elect continuation coverage, you may be able to extend the length of continuation coverage for up to an additional eleven (11) months if a qualified beneficiary is determined to be disabled, or if a second qualifying event occurs. You must notify the EBDDSF's Administrator, Corcoran Administrators ("Corcoran"), of a disability determination or a second qualifying event within sixty (60) days of the

event's occurrence to extend the period of continuation coverage.  If you don't provide notice of a disability or second qualifying event within the sixty day period, it will affect your right to extend the period of continuation coverage.

If a qualified beneficiary has extended coverage due to a disability determination by the Social Security Administration (SSA), the qualified beneficiary must notify EBDDSF's Administrative Office if the SSA determines the beneficiary is no longer disabled.

For more information about extending the length of COBRA continuation coverage visit http://www.dol.gov/ebsa/publications/cobraemployee.html.

**How much does COBRA continuation coverage cost?**

COBRA continuation coverage will cost:        Core: **$1850.93**/per month
                                        Core Plus: **$2058.08**/per month

Other coverage options may cost less.  If you choose to elect continuation coverage, you don't have to send any payment with the Election Form.  Additional information about payment will be provided to you after the Election Form is received by the Plan.  Important information about paying your premium can be found at the end of this notice.

Your first COBRA payment must be made no later than 45 days after the date COBRA is elected (if mailed, the date the Election Form is postmarked).  If the first payment is not timely made in full, all COBRA rights will be lost.  After you make the first payment, COBRA payments are due on the first day of the month and are considered late if not received within 30 days of the due date.  If you make any of your COBRA payments after the end of the grace period, you will lose all of your EBDDSF COBRA rights.

**You may be able to get coverage through the Health Insurance Marketplace that costs less than COBRA continuation coverage.**  You can learn more about the Marketplace below.

**What is the Health Insurance Marketplace?**

The Marketplace offers "one-stop shopping" to find and compare private health insurance options.  In the Marketplace, you could be eligible for a new kind of tax credit that lowers your monthly premiums and cost-sharing reductions (amounts that lower your out-of-pocket costs for deductibles, coinsurance, and copayments) right away, and you can see what your premium, deductibles, and out-of-pocket costs will be before you make a decision to enroll.  Through the Marketplace you will also learn if you qualify for free or low-cost coverage from Medicaid or the Children's Health Insurance Program (CHIP).  You can access the Marketplace for your state at www.HealthCare.gov.

Coverage through the Health Insurance Marketplace may cost less than COBRA continuation coverage.  Being offered COBRA continuation coverage won't limit your eligibility for coverage or for a tax credit through the Marketplace.

**When can I enroll in Marketplace coverage?**

You always have 60 days from the time you lose your job-based coverage to enroll in the Marketplace.  That is because losing your job-based health coverage is a "special enrollment" event.  **After 60 days your special enrollment period will end and you may**

not be able to enroll, **so you should take action right away**.  In addition, during what is called an "open enrollment" period, anyone can enroll in Marketplace coverage.

If you waive your right to enroll in COBRA continuation coverage, you may revoke your waiver before the end of the 60-day period.  This revocation must be received in writing by the Administrative Office before the end of the 60-day election period.

To find out more about enrolling in the Marketplace, such as when the next open enrollment period will be and what you need to know about qualifying events and special enrollment periods, visit www.HealthCare.gov.

**If I sign up for COBRA continuation coverage, can I switch to coverage in the Marketplace?  What about if I choose Marketplace coverage and want to switch back to COBRA continuation coverage?**

If you sign up for COBRA continuation coverage, you can switch to a Marketplace plan during a Marketplace open enrollment period.  You can also end your COBRA continuation coverage early and switch to a Marketplace plan if you have another qualifying event such as marriage or the birth of a child through something called a "special enrollment period."  But be careful - if you terminate your COBRA continuation coverage early without another qualifying event, you will have to wait to enroll in Marketplace coverage until the next open enrollment period, and could end up without any health coverage in the interim.

Once you have exhausted your COBRA continuation coverage and the coverage expires, you will be eligible to enroll in Marketplace coverage through a special enrollment period, even if Marketplace open enrollment has ended.

If you sign up for Marketplace coverage instead of COBRA continuation coverage, you cannot switch to COBRA continuation coverage once your election period ends.

**Can I enroll in another group health plan?**

You may be eligible to enroll in coverage under another group health plan (like a spouse's plan), if you request enrollment within 30 days of the loss of coverage.

If you or your dependent chooses to elect COBRA continuation coverage instead of enrolling in another group health plan for which you are eligible, you will have another opportunity to enroll in the other group health plan within 30 days of losing your COBRA continuation coverage.

**Can I enroll in Medicare instead of COBRA continuation coverage after my group health plan coverage ends?**

In general, if you do not enroll in Medicare Part A or B when you are first eligible because you are still employed, after the initial enrollment period for Medicare Part A or B, you have an 8-month special enrollment period[1] to sign up, beginning on the earlier of:

   * The month after your employment ends; or
   * The month after group health plan coverage based on current employment ends.

---

1 https://www.medicare.gov/sign-up-change-plans/how-do-i-get-parts-a-b/part-a-part-b-sign-up-periods
These rules are different for people with End Stage Renal Disease (ESRD).

If you don't enroll in Medicare Part B and elect COBRA continuation coverage instead, you may have to pay a Part B late enrollment penalty and you may have a gap in coverage if you decide you want Part B later.  If you elect COBRA continuation coverage and then enroll in Medicare Part A or B before the COBRA continuation coverage ends, the Plan may terminate your continuation coverage.  However, if Medicare Part A or B is effective on or before the date of the COBRA election, COBRA coverage may not be discontinued on account of Medicare entitlement, even if you enroll in the other part of Medicare after the date of the election of COBRA coverage.

If you are enrolled in both COBRA continuation coverage and Medicare, Medicare will generally pay first (primary payer) and COBRA will pay second.  If you are eligible for Medicare, COBRA may pay as if secondary to Medicare, even if you are not enrolled in Medicare.

For more information visit https://www.medicare.gov/medicare-and-you.

**What factors should I consider when choosing coverage options?**

When considering your options for health coverage, you may want to think about:

* <u>Premiums</u>: EBDDSF charges up to 102% of total plan premiums for COBRA coverage.  Other options, like coverage on a spouse's plan or through the Marketplace, may be less expensive.
* <u>Provider Networks</u>: If you are currently getting care or treatment for a condition, a change in your health coverage may affect your access to a particular health care provider.  You may want to check to see if your current health care providers participate in a network as you consider options for health coverage.
* <u>Drug Formularies</u>: If you are currently taking medication, a change in your health coverage may affect  your costs for medication - and in some cases, your medication may not be covered by another plan.  You may want to check to see if your current medications are listed in drug formularies for other health coverage.
* <u>Severance payments</u>: If you lost your job and got a severance package from your former employer, your former employer may have offered to pay some or all of your COBRA payments for a period of time.  In this scenario, you may want to contact the Department of Labor at 1-866-444-3272 to discuss your options.
* <u>Service Areas</u>: Some plans limit their benefits to specific service or coverage areas - so if you move to another area of the country, you may not be able to use your benefits.  You may want to see if your plan has a service or coverage area, or other similar limitations.
* <u>Other Cost-Sharing</u>: In addition to premiums or contributions for health coverage, you probably pay copayments, deductibles, coinsurance, or other amounts as you use your benefits.  You may want to check to see what the cost sharing requirements are for other health coverage options.  For example, one option may have much lower monthly premiums, but a much higher deductible and higher copayments.

**For more information**

This notice doesn't fully describe continuation coverage or other rights under the Plan.  More information about continuation coverage and your rights under the Plan is available in your summary plan description or from the Plan Administrator.

If you have questions about the information in this notice, your rights to coverage, or if you want a copy of your summary plan description, contact Fund office at 3333 Vincent Rd., #203-A, Pleasant Hill, CA 94523 at (925) 954-1439 or (855) 263-7242. Hours 9:00 a.m - 5:00 p.m.

For more information about your rights under the Employee Retirement Income Security Act (ERISA), including COBRA, the Patient Protection and Affordable Care Act, and other laws affecting group health plans, visit the U.S. Department of Labor's Employee Benefits Security Administration (EBSA) website at http://www.dol.gov/ebsa or call their toll-free number at 1-866-444-3272. For more information about health insurance options available through the Health Insurance Marketplace, and to locate an assister in your area who you can talk to about the different options, visit www.HealthCare.gov.

**Keep Your Plan Informed of Address Changes**

To protect your and your family's rights, keep the Plan Administrator informed of any changes in your address and the addresses of family members.  You should also keep a copy of any notices you send to the Plan Administrator.

```
*************************************************************************
*                          AVISO EN ESPANOL                            *
*                                                                      *
* Esta noticia contiene un resumen en ingles de sus derechos y beneficios bajo el *
* East Bay Drayage Drivers Security Fund (EBDDSF).  Si tiene alguna dificultad en *
* comprender cualquier parte de esta noticia puede communicarse con East Bay *
* Drayage Drivers Security Fund, 3333 Vincent Road, Suite 203-A, Pleasant Hill, CA *
* 94523, o llamar al (925) 954-1439 or (855) 263-7242. Las horas de la oficina son *
* de 9:00 a.m. a 5:00 p.m. Una traduccion en espanol esta a su disposicion en la *
* oficina de su union o lugar de trabajo.                              *
*************************************************************************
```

**EAST BAY DRAYAGE DRIVERS SECURITY FUND – NOTICE OF COBRA EVENT FORM**

3333 Vincent Road, Suite 203 A  Pleasant Hill, CA 94523

This form should be completed by an employee, dependent or an authorized representative to notify the EBDDSF Administrative Office of the employee's death or divorce, a child's loss of dependent status under EBDDSF provisions, a determination of disability or cessation of disability, or the employee's enrollment in Medicare (Part A or Part B).  The occurrence of any of these events may extend the COBRA coverage period available to you.  This notice must be provided according to the deadlines described below.  Additional information may be requested by the EBDDSF Administrative Office.  Such additional information must be provided within 15 business days of the request or your notice will be deemed incomplete and your COBRA rights will be lost.

**WARNING:  If your notice is late or is incomplete, COBRA Coverage may be lost.**

**Complete the following:**

Name of Employee (the employee or former employee who was covered by the Plan): _____

Last 4 digits of Social Security Number: _____

Address of Employee: _____

Name of Qualified Beneficiary(ies): _____

Address of Qualified Beneficiary(ies) (if different): _____

(If you need additional space to include all qualified beneficiaries or addresses, please attach another sheet of paper.)

**Event Description (check one and complete) – Unless otherwise noted, provide notice of these events within 60 days after the date of the event.**

❑   Divorce of Employee and Spouse.  Date of Divorce: _____.  Attach a copy of the divorce decree.

❑   Employee's child ceased to be an eligible dependent under the terms of the Plan because (check one):
   ❑ Attainment of Plan limitation age (19 or 25 for students)     ❑ Marriage
   ❑ Loss of student status     ❑ Other (explain): _____

   Date of event causing loss of eligibility: _____

❑   Death of former employee who was covered under COBRA at the time of death.  Date of death: _____
   Attach a copy of the death certificate.

❑   Coverage under another group health plan.  Date of coverage: _____

❑   Coverage of qualified beneficiary under Medicare (Attach a copy of the Medicare card showing the date of entitlement).

   Date of Medicare enrollment: _____

❑   Disability determination by the Social Security Administration (you must include a copy of the determination letter).

   ❑ Determination of Disability.  **Provide notice within 60 days of determination and within first 18 months of COBRA**

   ❑ End of Disability.  **Provide notice within 30 days of determination.**

   Date of SSA determination: _____

**Certification, Signature, and Date:**

I certify that the above information is true and correct.

I am the (check one):    ❑ Employee or former employee     ❑ Spouse or former spouse     ❑ Former dependent child     ❑ Other

_____          _____
Signature                                               Date

_____          _____
Print Name                                             Telephone Number

_____
Address

**Mail or hand deliver completed form to address above.  Oral, faxed and electronic notices are not permitted.**

**For Plan Use Only**  Date Notice of COBRA Event received: _____     Date of postmark, if mailed: _____

914337 (1105-0004)

# EXHIBIT H

# East Bay Drayage Drivers Security Fund
P O Box 5030
Walnut Creek, CA 94596

Phone (855) 263-7242  Phone (925) 954-1439

April 16, 2024

Sent via email: 1register1@gmail.com

       Re: *Appeal Concerning Eligibility*

Dear Ms. Chavez,

The East Bay Drayage Drivers Security Fund is in receipt of your email dated March 13, 2024 appealing the denial of your eligibility in the Plan as a divorced spouse. Your appeal is denied for the reasons explained below.

The East Bay Drayage Drivers Security Fund Plan 1980 Summary Plan Description limits eligibility of dependents other than children to "your legal spouse" or "your domestic partner." As a result of your divorce in 2019, you ceased to meet the Plan requirements for eligibility for coverage.

Your email asserts that your appeal is an "Urgent care" appeal. The Affordable Care Act established certain specific types of appeals, including Urgent care appeals. An Urgent Care appeal is defined under applicable law as,

> A claim involving urgent care is any claim for medical care or treatment with respect to which the application of the time periods for making non-urgent care determinations could seriously jeopardize the life or health of the claimant or the claimant's ability to regain maximum function, or -- in the opinion of a physician with knowledge of the claimant's medical condition -- would subject the claimant to severe pain that cannot be adequately managed without the care or treatment that is the subject of the claim.[*]

While you may consider your eligibility appeal to be urgent, it is not an Urgent care appeal as that term applies to group health plan appeals.

Please note that you remain eligible for the Plan by self-payment based on the COBRA enrollment materials sent to you in March 2024. If you have any questions concerning your COBRA eligibility, please contact me.

You may receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim for benefits under the Plan.

Your appeal is now final, and the Plan has no further levels of appeal. You have a right to bring a civil action under Section 502(a) of ERISA against the Plan, which must be brought within one

---

[*] https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/faqs/benefit-claims-procedure-regulation#:~:text=A%20claim%20involving%20urgent%20care,in%20the%20opinion%20of%20a

year of the date of this notice. You may receive, upon request and free of charge, reasonable access to, and copies of, any documents in the Fund's possession that are relevant to your appeal, including a copy of the internal rule, guideline or protocol mentioned above that was relied on to decide your claim.

Should you have any questions, please contact me directly at 925-954-1439.

Sincerely,

Chris Corcoran
Plan Manager

# EXHIBIT I

**EAST BAY DRAYAGE DRIVERS SECURITY FUND**
**PO BOX 5030**
**Walnut Creek, CA 94596**
925-954-1439       925 405-0659 (fax)

Appeal Date:                                          **October 27, 2023**

Appeal Number:                                       **2023-05**

---

**SUMMARY:**

On October 27, 2023, the Appellant wrote to the Board appealing for reinstatement of coverage through the East Bay Drayage Drivers Security Fund. The Appellant was initially covered as a dependent under her husband, but their marriage was dissolved and her coverage was terminated on November 12, 2019. The Appellant is claiming that the divorce decree was reversed on November 21, 2019 by the court, and her coverage should not have been terminated.

The member sent the Administration Office a Judgment and Notice of Entry of Judgment that was filed on November 12, 2019 by Judge Loftus, dissolving his marriage with the Appellant. However, the Appellant has a Declaration and Order to Set Aside signed by Judge Loftus on November 21, 2019. This document calls for the reversal of the judgment made on November 12 on the grounds that the divorce "case is pending Appeals and should be set aside." The Appellant claims the decision on her marital status is still under appeal, so she should still be covered as a dependent under the Fund.

Along with the divorce decree, the member sent the Administration Office a marriage certificate for his new wife dated August 11, 2022 and she has been covered under the plan as his dependent since then. Ms. Bradley from Beeson, Tayer & Bodine reviewed the documents, confirming the validity of the marriage certificate and the eligibility for coverage of the member's spouse. Ms. Bradley does not believe the Declaration and Order to Set Aside document sent by the Appellant "changes anything about either the dissolution of the first marriage or the second marriage."

The Appellant is asking for an exception to be granted coverage under the East Bay Drayage Drivers Security Fund due to the documents she has provided showing the reversal of her divorce.

**How does the Board wish to respond to this member's request?**

OUTCOME OF APPEAL:          APPROVE _____   DENY _____

# EXHIBIT J

**East Bay Drayage Drivers Security Fund
Board of Trustees Meeting**

**January 12, 2024**
**Offices of Teamsters Local 70, Oakland, CA**

| **UNION TRUSTEES** | **EMPLOYER TRUSTEES** |
|---|---|
| Dominic Chiovare | Rich Murphy |
| Mark Hawkins | Greg Ong |
| Felix Martinez | Deb Ostendorp |
| Marty Frates (arrived at 9:51 AM) | |

**ALSO PRESENT:** Geoff Piller, Legal Counsel
Lorrie Bradley, Legal Counsel
Brandon Hayden, Consultant
Monica Abarca, Administrator
Patrick Worley, Investment Manager
Allie Valdez, HealthLinx
Allison Kellogg, HealthLinx
Michael Finnerty, Consultant

**ABSENT:** Chris Corcoran, Administrator
Lou Pellegrini, Employer Trustee



East Bay Drayage Drivers Security Fund
January 12, 2024
Page 7 of 9



**Appeal 2023-05**

Ms. Bradley reviewed an October 27, 2023 letter from a Plan participant's former spouse appealing the termination of her dependent eligibility and seeking the reinstatement of dependent eligibility. She noted that the appeal is based on the appellant's Declaration and Order to Set Aside negated her dissolution of marriage from the member. Ms. Bradley advised that the Order does not provide a basis for reinstatement or override the eligibility terms of the Plan.  Following discussion,

**MOTION** duly made and seconded to deny Appeal 2023-05. Motion carried.